IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE SUBPOENA:

SPARTANBURG REGIONAL HEALTHCARE
SYSTEM, on behalf of itself and others
similarly situated,

      Plaintiff,

v.

HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC., and
HILL-ROM COMPANY, INC.,

      Defendants.

Civil Action No. *05 Mc-10234 KBC*

## AFFIDAVIT OF AMANDA J. METTS, ESQ.

I, Amanda J. Metts, hereby depose and state as follows:

1.     I am an attorney in good standing in the Commonwealth of Massachusetts, Board

of Bar Overseers No. 639850. I am counsel of record for nonparty Bain & Company

("Bain").

2.     Plaintiff Spartanburg Regional Healthcare System ("Spartanburg") served a third-

party subpoena (the "Subpoena") on Bain on March 28, 2005 in an action pending before

the U.S. District Court for the District of South Carolina and captioned, *Spartanburg*

*Regional Healthcare System, on behalf of itself and others similarly situated, v.*

*Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action

No. 7:03-2141-26. A true and accurate copy of the Subpoena is attached hereto as Exhibit

A.

3.     A true and accurate copy of the Complaint in the underlying civil action is attached hereto as Exhibit B.

4.     Bain objected to the breadth of the Subpoena in writing pursuant to Fed. R. Civ. P. 45 on April 8, 2005. A true and accurate copy of Bain's Objection is attached hereto as Exhibit C.

5.     Notwithstanding its objections, on April 29, 2005, Bain produced all post-1999 documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products, the specific category of documents identified by Plaintiff in the Subpoena, and which reasonably related to the underlying litigation. A true and accurate copy of Bain's April 29, 2005 production cover letter is attached hereto as Exhibit D.

6.     On May 13, 2005, Bain produced all pre-1999 documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products in electronic format. A true and accurate copy of Bain's May 13, 2005 production cover letter is attached hereto as Exhibit E.

7.     In a letter dated June 3, 2005, Spartanburg raised several issues regarding Bain's production and demanded further production. A true and accurate copy of the June 3, 2005 letter is attached hereto as Exhibit F.

8.     Bain's June 8, 2005 response to that letter is attached hereto as Exhibit G.

9.     In a letter dated June 20, 2005, Spartanburg responded to Bain's June 8, 2005 letter and reiterated the same issues and demands raised in the June 3, 2005 letter. By its June 20, 2005 letter, Spartanburg also demanded electronic re-production of all previously-produced post-1999 documents. A true and accurate copy of the June 20, 2005 letter is attached hereto as Exhibit H.

10.  Bain re-produced all previously-produced post-1999 spreadsheets and databases in their electronic format on June 30, 2005. A true and accurate copy of Bain's June 30, 2005 production cover letter is attached hereto as Exhibit I.

11.  In its letters of June 3, 2005 and June 20, 2005, Spartanburg also requested production of documents relating to the concepts of "joint incentives" and "bundling," regardless of what products were being bundled. See Exhibits F and H.

12.  Bain produced documents that relate to bundling/joint incentives, including those that did not expressly mention or discuss hospital beds, specialty beds, and/or architectural products, on August 19, 2005. Bain did not, however, produce documents relating to bundling/joint incentives of identifiable, unrelated products such as funeral services, medical technologies and in-patient IT solutions, which in no way relates to the subject matter of the underlying litigation. A true and accurate copy of Bain's August 19, 2005 production letter is attached hereto as Exhibit J.

13.  On August 29, 2005, in an effort to resolve what had previously been identified as the remaining outstanding issues with respect to Bain's production, I participated in a telephone conference with Spartanburg's counsel. On the call, counsel requested a number of additional categories of documents, some for the very first time. The categories include, *inter alia*:

(a)  all documents, regardless of subject matter, from Bain's first engagement for Hillenbrand;

(b)  all documents concerning joint incentives and bundling, no matter that the products being bundled are unrelated to Hospital Beds, Specialty Beds, and/or Architectural Products;

(c)  all blank templates from Bain's general computer system that Bain used in any of its work for Hillenbrand;

-3-

(d)     Bain's "compensation records" in connection with its work for Hillenbrand; and

(e)     all documents that do not make reference to any product at all.

Signed under the pains and penalties of perjury this 31st day of August 2005.

Amanda J. Metts

CHI99 4520824-1.054168.0065

-4-

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

SPARTANBURG REGIONAL HEALTHCARE SYSTEM,
ON BEHALF OF ITSELF AND OTHERS SIMILARLY
SITUATED,

v.

HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC.,
AND HILL-ROM COMPANY, INC.,

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: Civil Action 7:03-2141-26*
*Pending in the District Court for the District of South Carolina,
Spartanburg Division

TO:   Custodian of Records for Bain & Company        Registered Agent: Corporation Service Company
      131 Dartmouth St.                               84 State Street
      Boston, MA  02116                               Boston, MA  02109

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify
    in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date and time specified below to testify in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
    date and time specified below (list documents or objects):   See the Attached Exhibit 1.

| PLACE   Bain & Company | DATE AND TIME |
|---|---|
| 131 Dartmouth St. | April 18, 2005/9:00 a.m. |
| Boston, MA  02116 |  |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _ℳ_ 𝒾𝒹𝓁 𝒢    ATTORNEY FOR THE PLAINTIFF | 3/28/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
John G. Felder, Jr.
McGowan, Hood, Felder & Johnson
3710 Landmark Drive, Suite 114
Columbia, SC  29204        803-779-0100

(See Rule 45 Federal Rules of Civil Procedure Parts C & D on Reverse)

7134752v1

## EXHIBIT 1

### SUBPOENA FOR PRODUCTION OF DOCUMENTS

## I. DEFINITIONS

1.    "Architectural Products" means any head wall unit which is designed for use in any Patient Care Setting (as defined below) and/or any in-room furniture used in any Patient Care Setting, such as overbed tables, end tables, chairs, cabinets, or any other furniture used in Patient Care Settings.

2.    "Group Purchasing Organization" ("GPO") means any organization as well as their affiliated and/or related organizations, owners, members, and shareholders, that negotiates pricing and/or other terms and enters into agreements with manufacturers and/or distributors of medical related products and services. Such Group Purchasing Organizations shall include, not by way of limitation, Novation, Premier, Premier Purchasing Partners, MedAssets, Amerinet, Healthtrust, Broadlane, Consorta, HealthCare Purchasing Partners International, Innovatix, AllHealth, Hospital Purchasing Service, Yankee Alliance, National Capital Area Shared Services, GNYHA Ventures, NJHA Corporate Services, Shared Services Healthcare, Coordinated Healthcare Services, Health Affiliated Services/Hendrick Medical Center, Mid-Atlantic Group Network of Shared Services and National Purchasing Alliance.

3.    "Hill-Rom" means Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., their predecessors, including but not limited to, Support Systems International, Inc. ("SSI"), Mediq, or Mediq/PRN, or successors in interest, any parent, subsidiary, affiliate and division, and any present or former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 1**

expense reports, budgets, press releases, periodicals, newsletters, notations, papers, memoranda, interoffice communications, handbooks, summary plan descriptions, agreements, contracts, books, records, minutes of meetings, memorials of any type of personal or telephone conversations, meetings or conferences, reports, evaluations, receipts, claim forms, bills, statements, affidavits, diaries, calendars, desk pads, appointment books, transcripts, worksheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, r ecords o f p ayments, d isbursements a nd r eimbursements, a nd a ll d ocuments u nderlying, supporting or used in the preparation of any part of any other documents. "Documents" include, but are not limited to, carbon copies or blind carbon copies of documents sent to, or in Your possession, custody or control, where the correspondence or other document was addressed to some other person.

8.     "Refer or relate to" means referring to, reflecting, or related in any manner logically, factually, indirectly or directly to the matters discussed.

9.     "You" or "Your" means Bain & Company, its predecessors or successors in interest, any parent, subsidiary, affiliate and division, and any present and former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

## II.     INSTRUCTIONS

1.     All documents within Your possession, custody or control, or that of any related entity, shall be produced. A document is deemed to be in Your control if You have the right to secure the document, or a copy thereof, from another person having actual possession thereof. If You know or believe that there may be, or were, documents otherwise meeting the terms of a particular request, but which are not within Your custody, possession or control, or which no longer exist, please so state in Your response to that particular request.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 3**

2.        Any documents responsive to this request which, nonetheless, are not produced by a r eason o r a c laim o f p rivilege, w ork p roduct, o r for a ny o ther r eason, shall be identified in writing by (1) date; (2) author; (3) recipient; (4) general subject matter; (5) identity of person or persons to whom the contents of the document have already been revealed; (6) the identity of the person or entity now in possession or control of the document; and (7) the basis upon which it is being withheld.

3.        Whenever appropriate, the singular form of a word should be interpreted in the plural and vice versa as to encompass all potentially responsive information.

4.        Whenever appropriate, the conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa as to encompass all potentially responsive information.

5.        Unless otherwise indicated, You should respond to these document requests for the period of January 1, 1985 through the present. However, if a document prepared or dated prior to January 1, 1985, is necessary for a complete or correct understanding of any document otherwise covered by these requests, such earlier documents shall be produced as well. If a document is undated or incorrectly dated, and the time of its preparation cannot be determined or is in doubt, the document should be produced if otherwise responsive to this request.

## III.    DOCUMENTS TO BE PRODUCED

1.        All documents relating to Hill-Rom, including documents concerning its competitive strategies and tactics, its sales and marketing practices, its pricing and discount practices, and the quality of its Hospital Beds, Specialty Beds, and/or Architectural Products.

2.        All documents relating to the distribution channels for Hill-Rom's Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to Hill-Rom's

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 4**

relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

3. All documents relating to the competitive strategies and tactics, sales and marketing practices, pricing and discount practices, and the quality of the products of any other manufacturer or vendor of Hospital Beds, Specialty Beds, and/or Architectural Products.

4. All documents relating to the distribution channels of other manufacturers or vendors of Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to their relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

5. All documents collected and/or created in preparation of any project for which you were retained by Hill-Rom, including all notes and summaries of interviews, all documentation of any communications related thereto, all documents collected whether or not ultimately referenced, and all drafts and final versions of any reports and/or presentation materials prepared for Hill-Rom.

6. All documents received by you from Hill-Rom.

7. All documents relating to any analysis of, definition of , or reference to the market(s) for Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to any analysis of prices for such products, demand by customers for such products, sales forecasts for such products, description of the various patient care settings in which such products are used and the needs and/or demands for such products in each setting, the identification of manufacturers of these products, and/or the market share of any manufacturer of such products.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 5**

8.     All documents relating to the actual or potential entry into, or exit from, a market involving the sale, lease, or rental of Hospital Beds, Specialty Beds, or Architectural Products of a current or potential manufacturer and/or vendor of such products, including documents relating to the impact of any competitive practices on such entry into or exit from such markets.

9.     All documents relating to any barriers to entry in any market for Hospital Beds, Specialty Beds, or Architectural Products.

10.    All documents identifying the person(s) who performed work related to any project(s) for which you were retained by Hill-Rom.

11.    All documents reflecting your document retention policies and/or practices.

12.    All documents you produced in connection with the case of *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, docket no. SA-95-CA-0755 (W.D. Tex.).

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 6**

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and other similarly situated, | ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) C.A. No. 7:03-2141-26 ) |
| Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc., | ) ) ) |
| Defendants. | ) ) |

### NOTICE OF SUBPOENA

YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 34(c) and 45,

Spartanburg Regional Healthcare System, by its counsel, will serve the attached subpoena for the

production of documents upon the Custodian of Records for Bain & Company this week.

Respectfully submitted, March __28__, 2005.

John G. Felder, Jr.
Fed. ID #6441
McGOWAN, HOOD, FELDER & JOHNSON
3710 Landmark Drive, Suite 114
Columbia, South Carolina 29204
Telephone:(803) 779-0100
Facsimile: (803) 787-0750
jfelder@mcgowanhood.com

AND

Chad McGowan
Fed. ID #6620
McGOWAN, HOOD, FELDER & JOHNSON
1539 Health Care Drive
Rock Hill, South Carolina 29732
Telephone:(803) 327-7800
Facsimile: (803) 328-5656
cmcgowan@mcgowanhood.com

AND

John G. Felder, Sr.
Fed. ID #784
FELDER & McGEE, LLP
Post Office Box 346
St. Matthews, South Carolina 29135
Telephone:(803) 874-2010
Facsimile: (803) 655-7167
johnfelder@sc.rr.com

AND

Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M. Stenerson, Admitted *Pro Hac Vice*
Michael L. Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:(202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R. Laurence Macon, Admitted *Pro Hac Vice*
Karen L. Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, Texas 78205-3732
Telephone:(210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball
Admitted *Pro Hac Vice*
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone:(865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com

ATTORNEYS FOR THE PLAINTIFFS

Date

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's Notice of Subpoena was served via electronic mail and first-class mail delivery this ⅔ day of March 2005, to the following:

Frank S. Hollerman, III
J. Theodore Gentry
WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
44 E. Camperdown Way
Post Office Box 728
Greenville, SC 29602-0728

ATTORNEYS FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

Donald L. Flexner
BOIES, SCHILLER & FLEXNER, LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

Richard B. Drubel
BOIES, SCHILLER & FLEXNER, LLP
26 South Main Street
Hanover, NH 03755

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

*Mandy Smith*

**ORIGINAL FILED**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

OCT 2 2 2003

### Civil Action No. 7 03 2141 20

LARRY W. PROPES, CLERK
COLUMBIA, SC

Spartanburg Regional            )
Healthcare System, on behalf of itself    )
and others similarly situated,       )        **AMENDED COMPLAINT**
                 Plaintiff,        )
                      )        **(Jury Trial Demanded)**
     vs.                )
                      )
Hillenbrand Industries, Inc.,       )
Hill-Rom, Inc., and           )
Hill-Rom Company, Inc.,         )
            Defendants.      )

### Introduction

This is an antitrust case brought by the Spartanburg Regional Healthcare System, on behalf of itself and other purchasers of hospital products, against Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., (collectively referred to as Hill-Rom), based on the Sherman and Clayton antitrust acts. The gravamen of the complaint is that Hill-Rom has used its monopoly power in the regular Hospital Bed Market to attempt to monopolize and to tie the sales of Specialty Hospital Beds. Plaintiff class seeks injunctive and monetary relief, as well as attorneys fees and costs.

### I. PARTIES

1.    Plaintiff Spartanburg Regional Healthcare System ("SRHS"), is a quasi-governmental, not for profit, entity in the business of providing comprehensive healthcare. Plaintiff's main business location is in Spartanburg, Spartanburg County, South Carolina.

2.    Defendant Hillenbrand Industries, Inc. ("Hillenbrand") is an Indiana corporation with its principal place of business in Batesville, Indiana. Hillenbrand can be served with process by serving its registered agent, Mark R. Lindenmeyer, at 1060 State Route 46 E., Batesville, Indiana 47006. Hillenbrand is a conglomerate and owns a number of companies, including Hill-Rom Company, Inc. and was the owner of Hill-Rom, Inc.

3.    Defendant Hill-Rom Company, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana. Hill-Rom can be served with process by serving its registered agent, CT Corp. System, 75 Beattie Place, Two Shelter Centre, Greenville, SC. Hill-Rom Company, Inc. is, upon information and belief, a wholly owned subsidiary of Hillenbrand Industries. Hill-Rom Company, Inc. is believed to the successor in interest of SSI Medical Services, Inc., a South Carolina corporation. Hill-Rom Company, Inc. is in the business of manufacturing and selling hospital beds. Hill-Rom Company, Inc., upon information and belief, also manufactures and sells hospital room headwall units and other In-room Products.

4.    Defendant Hill-Rom, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana and can be served with process by serving its registered agent, Mark R. Lindenmeyer at 700 State Route 46 F., Batesville, Indiana 47006. Hill-Rom, Inc. is a wholly owned subsidiary of Hillenbrand Industries, Inc.

## II. JURISDICTION AND VENUE

5.    Subject matter jurisdiction over this complaint is conferred on this Court by § 4 and § 15 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U SC. § 1331.

2

6.      Venue is proper in this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) as

the acts and transactions constituting the violations alleged herein, occurred in part in this

judicial district and the Defendants are found and transact business in this judicial district.

### III. CLASS ALLEGATIONS

7.      This action is brought as a class action pursuant to Fed. R. Civ. Pro. 23. The class

definition is as follows:

> All those purchasers of Hill-Rom Hospital Beds and· In-room Products from
> Defendants for the past 4 years where there have been contracts between Defendants and
> the class members, either on behalf of themselves or through purchasing organizations,
> and where those contracts condition discounts on Hill-Rom Hospital Beds and other In-
> room Products on commitments to rent or purchase Specialty Hospital Beds exclusively
> from Defendants.

8.      The class meets the prerequisites to a class action under Fed. R. Civ. Pro. 23(a) in

that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are

common questions of law or fact to the class; 3) the claims and defenses of the representative

parties are typical of the claims or defenses of the class, and; 4) the representative parties will

fairly and adequately protect the interests of the class.

9.      Further, this action meets the requirements of Fed. R. Civ. Pro. 23(b)(2) and

(b)(3).  Plaintiff is seeking damages and injunctive relief to prevent future violations of the

Antitrust laws, thus meeting the requirements of Fed. R. Civ. Pro. 23(b)(2). Additionally, this

should be treated as a class action under Fed. R. Civ. Pro. 23(b)(3)

10.     Based on the foregoing, this action should be treated as class action and SRHS

should be certified as the class representative.

## IV. NATURE OF TRADE AND COMMENCE

### A. Hospital Beds

11.    Hospital Beds, typically have heavy duty metal frames; are adjustable to different positions by a hand-controlled electric motor; have adjustable side rails; and contain a communication system in one of the side rails which allows for electronic communications from the bed to a nurse's station ("Hospital Beds"). Hill-Rom manufactures Hospital Beds suitable for patient room use in acute care hospitals and sub-acute care facilities ("Hill-Rom Hospital Beds").

12.    Hill-Rom manufactures Hill-Rom Hospital Beds in Batesville, Indiana and Hill-Rom sells them in interstate commerce to acute care hospitals and subacute care facilities throughout the United States, including this judicial district.

### B. Specialty Hospital Beds

13.    Specialty Hospital Beds include: air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds, which are designed for treatment of specific medical conditions such as burns, pressure sores, pulmonary complications or pain management ("Specialty Hospital Beds"). Hill-Rom manufactures and rents certain types of Specialty Hospital Beds ("Hill-Rom Specialty Hospital Beds"). Specialty Hospital Beds sell for between $20,000.00 and $60,000.00. Most of the Specialty Hospital Beds are rented to the customers on a per day basis.

14.    Hill-Rom manufactures Hill-Rom Specialty Hospital Beds in Charleston, South Carolina and distributes those beds in interstate commerce by sale and/or rental to acute care hospitals located throughout the United States, including this judicial district.

4

15.    Specialty Hospital Beds are generally rented on a short-term basis rather than sold to hospitals. In excess of 90% of the commerce in Specialty Hospital Beds is conducted in this manner. The reason for the predominance of short term rental as the preferred method of distribution of Specialty Hospital Beds is that most hospitals do not want to expend the capital necessary to purchase Specialty Hospital Beds and usually are not equipped to properly maintain, decontaminate and store such beds. In addition, short term rental allows the hospitals to have the beds on an "as needed" basis.

16.    The market for Specialty Hospital Beds in the United States historically has been highly competitive and has had a number of competitors. Even at this, Kenetic Concepts, Inc. ("KCI") manufactures high quality and competitive Specialty Hospital Beds. KCI does not however, compete in the regular Hospital Bed and In-room Products Market. The number of competitors in the Specialty Hospital Bed Market has decreased significantly in recent years due, in large part, to the anti-competitive activities of Hill-Rom described in part herein.

### C. Hospital Purchasing Groups

17.    In excess of 70% of the Hospital Bed and Specialty Hospital Bed purchases and rentals are entered into pursuant to master group contracts with hospital purchasing groups. There are approximately 20 national hospital purchasing groups in the United States. Approximately half of these act as purchasing agents for the vast majority of all large hospitals in the United States and each of these hospital purchasing groups represents a significant share of the market demand for Hospital Beds and Specialty Hospital Beds. In this case, Plaintiff is an equity member of a purchasing group known as Premier.

5

18.    There are two types of hospital purchasing groups. In a "proprietary" group, the member hospitals are all owned by the same entity and that entity enters into a master agreement to purchase or rent equipment for all of its hospitals. In a "proprietary" group, the individual hospital generally does not exercise a choice as to whether it will participate in the negotiated master contract. The hospital owner simply enters into a contract to procure equipment for all of its hospitals.

19.    In a "voluntary" hospital purchasing group, the individual hospital members are not commonly owned. Rather, each member is an individual entity that voluntarily joins the group in order to gain the benefits of group purchasing. "Premier" is an archtypical voluntary organization. Where voluntary hospital purchasing groups are in use, the individual hospital usually has the choice to either purchase or rent equipment under the master group contract or separately negotiate its own agreement with the group provider or another provider. However, voluntary groups obtain better terms for their members if a high percentage of the membership participates in the master group purchasing contract. As a result, the voluntary groups encourage their members to participate in master group contracts and it is in the long term economic interest of the members to do so. Generally, voluntary purchasing groups obtain "compliance" with their master group contracts from 65% or more of their members.

20.    Hospital purchasing groups have historically negotiated master rental agreements for the Specialty Hospital Bed needs of their member hospitals. These master rental agreements have typically provided only for the rental of Specialty Hospital Beds and have not included other products. Hospital Beds were typically bid separately and were the subject of separate agreements.

6

## V. RELEVANT MARKETS AND MARKET POWER

### A. Hospital Beds

21.    There exists a relevant economic product and/or service market for the sale of new and refurbished or remanufactured Hospital Beds. This product and/or service market includes the provision of refurbishment and remanufacturing services to hospitals that continue to own the Hospital Beds, as the refurbishment or remanufacturing service is an economic substitute for and directly competitive with the purchase of new Hospital Beds.

22.    The relevant geographic market for the product and for service market alleged in paragraph 21 above is the United States (the relevant product and/or service market and relevant geographic market are hereinafter collectively referred to as "the Hospital Beds Market").

23.    Hill-Rom's market share in the Hospital Beds Market is in excess of 90%.

24.    Hill-Rom enjoys monopoly power in the Hospital Beds Market in that it has the power to raise prices above the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom also has the power to control price and to earn monopoly profits in, or exclude competition from, the Hospital Beds Market.

### B. Specialty Hospital Beds

25.    There exists a relevant product market for the cluster of products that is included within the term Specialty Hospital Beds. This cluster of products is generally sold or rented in one master supply contract which covers the consumer's need, from time to time, for air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds (hereinafter referred to as the "Specialty Beds Cluster"). In the Specialty Beds Cluster market, different suppliers of Specialty Hospital Beds compete against each other

7

to be the supplier of the Specialty Beds Cluster products contained within the term Specialty Hospital Beds.

26.     The Specialty Beds Cluster market is hereinafter referred to as the "Specialty Hospital Beds Market" (i.e., the term "Specialty Hospital Beds Market" as used herein includes the Specialty Beds Cluster market).

27.     The relevant geographic market for Specialty Hospital Beds is the United States.

28.     Hill-Rom enjoys a market share in excess of 55% in the Specialty Hospital Beds Market, and this figure rises as Hill-Rom continues to engage in the illegal conduct described herein.

29.     The second largest competitor in the Specialty Hospital Beds Market is KCI.

### C. In-room Products

30.     There exists a relevant economic product market for the manufacture and sale of acute care hospital room headwall units and other in-room products such as furniture and over-bed tables. (This group of products will be referred to as "In-room Products").

31.     The relevant geographic market for hospital In-room Products is the United States. (This relevant product and geographic market is hereinafter referred to as the "In-room Products Market.")

32.     Hill-Rom's market share in the In-room Products Market is in excess of 70%.

33.     Hill-Rom enjoys monopoly power in the In-room Products Market in that it has the power to raise prices in excess of the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom has the power to control prices and to earn monopoly profits in, or exclude competition from, the In-room Products Market,

8

## VI. ILLEGAL CONDUCT ALLEGED

34.    Since at least as early as 1995, Hill-Rom has responded to bid requests from
hospital purchasing groups and individual hospitals by submitting a "bundled" proposal for the
rental of Specialty Bed Cluster products as well as the purchase of Hill-Rom Hospital Beds and
In-room Products. When made to a proprietary purchasing group or an individual hospital, the
terms of the proposed Hill-Rom bundle are as follows: (1) the proprietary purchasing group or
individual hospital will exclusively purchase Hill-Rom Hospital Beds and In-room Products and
exclusively rent Hill-Rom Specialty Hospital Beds; (2) that Hill-Rom will offer to the hospital
purchasing group or individual hospital significant discounts on Hill-Rom Hospital Beds and In-
room Products, but that these discounts will only be made available to the purchaser on the
condition that the purchasing group or individual hospital agrees to exclusively rent Hill-Rom
Specialty Hospital Beds.

35.    When made to a voluntary hospital purchasing group, the terms of the proposed
Hill-Rom bundle is a variation on the following: (1) the voluntary purchasing group must agree
to exclusively recommend to its members and promote the proposed Hill-Rom bundle to its
members; (2) the recommended and pre-negotiated contract that is made available to each
member hospital provides for the purchase of Hill-Rom Hospital Beds and headwall units for
90% of the hospital's needs, and the rental of Hill-Rom Specialty Hospital Beds for 90% of the
hospital's Specialty Hospital Bed needs; (3) Hill-Rom will offer significant discounts to the
member hospitals on the purchase price of the Hill-Rom Hospital Beds and In-room Products,
but these discounts will be made available only on the condition that the individual hospital
member commits in writing; to exclusively purchase 90% of its Hospital Beds and In-room

9

Products from Hill-Rom and exclusively rent 90% of its Specialty Hospital Bed needs from Hill-Rom.

36.    Thus, significant discounts are made available on Hill-Rom Hospital Beds to individual hospitals, proprietary hospital purchasing groups and voluntary hospital purchasing groups, but only on the condition that the individual hospital, proprietary hospital purchasing group or voluntary hospital purchasing group agrees to exclusively rent Hill-Rom Specialty Hospital Beds to the exclusion of all other providers of such Specialty Hospital Beds. Hill-Rom's bundling activity as alleged herein is motivated by exclusionary and anti-competitive purposes and without legitimate business justification.

37.    Due to the fact that many hospitals have high dollar volume needs for Hospital Beds and/or In-room Products, they cannot, from an economic standpoint, afford to pass up the Hill-Rom discounts on these products which are only available if the purchaser commits to exclusively rent 90% of its Specialty Hospital Beds from Hill-Rom. As a result, numerous hospitals and hospital purchasing groups, including Plaintiff and the class it represents, who would have preferred to rent KCI Specialty Hospital Beds have been forced to exclusively rent at least 90% of their Specialty Hospital Beds in order to obtain the discounts on Hill-Rom Hospital Beds and/or In-room Products.

38.    Due to the fact that Hill-Rom enjoys monopoly power over the Hospital Beds and In-room Products Market, based upon information and belief, Hill-Rom has a gross profit margin of approximately 50% on its sales of those products.

39.    Hill-Rom's bundling activities as alleged herein, were motivated by exclusionary, and anti-competitive purposes and without legitimate business justification.

## VII. ANTI-TRUST INJURY TO PLAINTIFF AND CLASS MEMBERS

40.    Plaintiff, and the class it represents, have been injured in their business or property, by Hill-Rom's unlawful conduct within the meaning of § 4 of the Clayton Act (15 U.S.C. § 15), based on their inability to utilize market competition for the purchase of Specialty Hospital Beds. Since Hill-Rom monopolizes the Hospital Beds Market, if Plaintiff and other members of the represented class were to choose to shop the Hospital Beds Market and not avail themselves of Hill-Rom's bundling activities, as punishment, they will be faced with higher costs for the purchase of Hill-Rom Hospital Beds.

41.    Hill-Rom, by refusing to make the Hill-Rom Hospital Beds and/or In-room Products discounts available unless the hospital or purchasing group agrees to exclusively rent or purchase Hill-Rom Specialty Hospital Beds, has used its monopoly power over Hospital Beds and In-room Products to injure competition, gain a competitive advantage in the Specialty Hospital Beds Market or sub-markets, and/or create a new monopoly in the Specialty Hospital Beds Market, thereby causing injury to the business or property of Plaintiff and the class it represents.

42.    As a result of Hill-Rom's conduct, KCI and other Specialty Hospital Beds competitors have been excluded from a substantial share of the Specialty Hospital Beds Market and foreclosed from being able to compete freely in the relevant Specialty Hospital Beds Market or sub-markets. Hill-Rom's conduct has been aimed at increasing market share in the Specialty Hospital Beds Market and resulted in barriers for competitors to enter or remain in the Specialty Hospital Beds Market. This affect on competition is to the detriment of Plaintiff and the class, driving prices up for Specialty Hospital Beds and beating competitors down. Hill-Rom has

11

achieved this market foreclosure by conduct that is unrelated to the competitive merits of Hill-Rom Specialty Hospital Beds or their price.

43.    In light of the monopoly on the Hospital Beds Market, Hill-Rom earns supra competitive prices there. Here, the issue is the additional higher prices charged for Specialty Hospital Beds than would be earned were there no tie required for the right to access the Hospital Beds Market at monopoly prices. The list prices for the Hill-Rom Hospital Beds are illusory and not the actual prices, and the discounts are also illusory and fictitious. In the true economic sense, they are not discounts, but a method to induce hospitals and other hospital bed purchasers to buy Specialty Hospital Beds only from Hill-Rom. Hill-Rom's illegal antitrust activities damage Plaintiff and the class it represents through higher prices charged for Specialty Hospital Beds than would be earned were there no tie required for the right to access the Hospital Beds Market at monopoly prices.

44.    Plaintiff, and the class it represents, have been injured in their business or property, within the meaning of § 4 of the Clayton Act in an amount in excess of $100,000,000.00 and are threatened with further injury within the meaning of §16 of the Clayton Act in that they have been and will continue to be precluded from buying or renting Specialty Hospital Beds that they would rent or buy, but for the continuing illegal conduct of Hill-Rom, as alleged herein.

12

### VIII. VIOLATIONS ALLEGED

#### Count 1 - Attempt to Monopolize the Specialty Hospital Beds Market

45.     Plaintiff re-alleges paragraphs 1-44 above.

46.     Hill-Rom possesses monopoly power over the relevant markets or sub-markets for Hospital Beds and In-room Products.

47.     Hill-Rom has offered certain discounts on Hill-Rom Hospital Beds and In-room Products only on the condition that the purchaser agree to exclusively rent Hill-Rom Specialty Hospital Beds. Hill-Rom has refused to make such discounts available if the purchaser does not commit to exclusively purchasing or renting Hill-Rom Specialty Hospital Beds.

48.     Due to the number of Hospital Beds and In-room Products that some hospitals need to purchase, it is not economically feasible for certain hospitals to refuse to accept the Hill-Rom bundle and the accompanying discount on Hill-Rom Hospital Beds and In-room Products. As a result, these hospitals are forced to agree to exclusively rent Hill-Rom Specialty Hospital Beds even though many of them would otherwise choose to rent other Specialty Hospital Beds.

49.     Hill-Rom charges supra competitive prices for its Hospital Beds and In-room Products owing to its near total market dominance. Hill-Rom has engaged in what appears to be a very sophisticated technique of setting prices even higher than monopoly prices and then offering what are said to be "discounts" off this rigged price if, and only if, hospitals and other bed purchasers agree to buy Hill-Rom Specialty Hospital Beds. This allows Hill-Rom to create a new monopoly owing to its special position in the Hospital Beds Market. Hill-Rom already has a monopoly in the Hospital Beds Market. This tying move captures a new market monopoly by requiring the purchase of a different product, at prices above competitive levels, in order to have

13

access to the regular monopoly market. Thus, Hill-Rom is not extending its monopoly, but creating a new monopoly, in a complimentary market, owing to the fact that Hospital Beds are vital to the production of health care in hospitals. Hill-Rom thus engages in this program with the specific intent of monopolizing the Specialty Hospital Beds Market.

50.    Hill-Rom has engaged in this bundling conduct for the specific anti-competitive purpose of foreclosing a substantial share of the Specialty Hospital Beds Market or sub-markets to competitors and obtaining for itself monopoly power over the Specialty Hospital Beds Market or sub-markets.

51.    There is a dangerous probability that, unless enjoined by this Court, Hill-Rom will achieve its unlawful goal of obtaining, through anti-competitive or exclusionary means, a monopoly or a further monopoly in the Specialty Hospital Beds Market or sub-markets.

52.    Hill-Rom has unlawfully conspired and attempted to monopolize the Specialty Hospital Beds Market or sub-markets in violation of § 2 of the Sherman Act (15 U.S.C. § 2). Plaintiff, and the class it represents, have been damaged by this illegal conduct as set forth above.

## Count II - Tying Specialty Hospital Beds to Hospital Beds

53.    Plaintiff re-alleges paragraphs 1-52 as set forth above.

54.    Hill-Rom has tied the sale of Hill-Rom Hospital Beds and In-room Products (tying products) to the rental or sale of Hill-Rom Specialty Hospital Beds (tied product).

55.    Hill-Rom enjoys substantial market power (indeed, monopoly power) in the Hospital Beds Market and the In-room Products Market. The rental or sale of Specialty Hospital Beds exceeds $200,000,000.00 per year and constitutes a not insubstantial amount of commerce.

14

56.    Given Hill-Rom's monopoly in the Hospital Beds Market, Plaintiff, and the class it
represents, are forced to purchase both Hill-Rom's Hospital Beds and Hill-Rom's Specialty
Hospital Beds in order to pay reasonable prices for Hill-Rom's Hospital Beds. Call it a
"discount," or return to true market value, for agreeing to the tying arrangements, without
agreeing to purchase Specialty Beds (tied product), Plaintiff and the class it represents, are
forced to pay inflated monopolized prices for Hospital Beds (tying products) as punishment. As
a result of the tying arrangements, in order to avail themselves of "discounts," or true market
value, for Hospital Beds, Plaintiff and the class it represents are also forced to pay higher prices
for Specialty Hospital Beds given the lessened Specialty Hospital Beds Market competition and
ability of Hill-Rom to control the prices of Specialty Hospital Beds due to the tying
requirements.      Under either scenario, Plaintiff, and the class it represents, are forced to
purchase Hospital Beds and/or Specialty Hospital Beds at inflated prices in a non-competitive
market created by Hill-Rom's unlawful antitrust conduct.

57.    The tying of Hill-Rom Specialty Hospital Beds rentals or sales to the purchase of
Hill-Rom Hospital Beds and In-room Products, therefore, constitutes a per se violation of § 1 of
the Sherman Act (15 U.S.C. § 1) and § 3 of the Clayton Act (15 U.S.C. § 14).

58.    In the alternative, the tying of Hill-Rom Specialty Hospital Beds to Hill-Rom
Hospital Beds and In-room Products has unreasonably injured competition in the Specialty
Hospital Beds Market or sub-markets by foreclosing a substantial share of the relevant Specialty
Hospital Beds Market or sub-markets to KCI and other competitors for a period of four or more
years and preventing Plaintiff, and the class it represents (hospital purchasing groups and
hospitals), from being able to freely and competitively select Specialty Hospital Beds on the

15

merits of price and quality considerations and pursuant to their preference. The result of
Hill-Rom's conduct has been to unreasonably injure competition in the Specialty Hospital Beds
Market or sub-markets and prevent and eliminate price and quality competition in the relevant
Specialty Hospital Beds Market or sub-markets, all in violation of § 1 of the Sherman Act, and §
3 of the Clayton Act. As a result of Hill-Rom's unlawful conduct, Plaintiff, and the class it
represents, have been injured as set forth above.

    **WHEREFORE,** Plaintiff, and the class it represents, pray as follows:

    A.    That Plaintiff be certified as class representative and that this action proceed as a
class;

    B.    That Plaintiff, and the class it represents, be awarded the amount of the actual and
any special damages caused them by Hill-Rom's illegal acts.

    C.    That Plaintiff, and the class it represents, be awarded treble the amount of the
actual damages caused them by Hill-Rom's illegal acts as provided for by § 4 of the Clayton
Act.

    D.    That Hill-Rom be preliminarily, and thereafter permanently, enjoined from
enforcing any of the exclusive dealing, tying, or bundling arrangements that they have entered
into with any hospital purchasing group or hospital.

    E.    That Hill-Rom be preliminarily, and thereafter permanently enjoined from
requiring hospitals or hospital purchasing groups to rent or purchase Hill-Rom Specialty
Hospital Beds in order to obtain discounts on Hill-Rom Hospital Beds or In-room Products;

    F.    That Plaintiff, and the class it represents, be awarded their reasonable attorneys fees
and cost of this suit as provided by the Clayton Act.

G.    That the Court grant Plaintiff, and the class it represents, such other and further

relief as it deems just.

H.    That Plaintiff, and the class it represents, request a trial by jury.

John G. Felder
FELDER & MCGEE
PO Box 346
St. Matthews, SC 29135
803-874-2010
803-655-7167 (Fax)

Chad McGowan
S. Randall Hood
MCGOWAN & HOOD
125 Hampton Street
Suite 101
Rock Hill, SC 29730
803-327-7800
803-328-5656 (Fax)

Gordon Ball
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street
Suite 150
Knoxville, TN 37902
865-525-7028
865-525-4679 (Fax)

Shelly L. Wilson
Robertson &Overbey
530 S. Gay Street, Suite 802
Knoxville, TN   37902-1537
(865) 521-3010
(865) 522-7929 (Fax)

October 22, 2003

## PLAINTIFF DEMANDS A JURY TRIAL

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Civil Action No.: 7:03-2141-25

| | |
|---|---|
| Spartanburg Regional<br>Healthcare System, on behalf of itself<br>and others similarly situated,<br><br>   Plaintiff,<br><br>Vs.<br><br>Hillenbrand Industries, Inc.,<br>Hill-Rom, Inc., and<br>Hill-Rom Company, Inc.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

       **CERTIFICATE OF SERVICE**

I, Brandy E. Lee, Paralegal for McGowan & Hood Law Firm, attorneys for the

Plaintiff, does hereby certify that on October 22, 2003, I served copies of the within **Amended**

**Complaint** by depositing copies thereof in the United States Mail in Rock Hill, South Carolina with

proper postage prepaid, to the following:

      Frank S. Holleman
      J. Theodore Gentry
      WYCHE BURGESS FREEMAN & PARHAM, P.A.
      PO Box 728
      Greenville, S.C. 29602-0728

      _Brandy E. Lee_
      Brandy E. Lee
      McGowan & Hood Law Firm

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Amanda J. Metts
Attorney at Law
ametts@mwe.com
617 535 4005

April 8, 2005

BY FACSIMILE AND MAIL

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Mauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
       Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

I write regarding the third-party subpoena served on Bain & Company, Inc. ("Bain") in the above-captioned matter. Thank you for sending a copy of the complaint; I now have a better understanding of the subject matter of the case. This letter shall serve as Bain's written objections to the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(2)(B).

Bain objects to the subpoena to the extent that it is overly broad and unduly burdensome in that it seeks documents that are irrelevant to a claim or defense of any party and/or not reasonably calculated to lead to discovery of admissible evidence. The subpoena seeks "[a]ll documents relating to Hill-Rom...," regardless of subject matter, and is not limited to documents relating to hospital beds and in room products, the subject matter of the lawsuit. I understand from our telephone conference that you are willing to work with Bain to narrow the scope of the subpoena.

The subpoena calls for the production of confidential business information and trade secrets. Subpoenas that call for the production of such materials are subject to a motion to quash or modification. Bain will produce responsive documents, if any, only pursuant to a mutually acceptable confidentiality order. Thank you for forwarding a copy of the Confidentiality Order in this case. I will review the Order and confirm whether it is acceptable to Bain.

The subpoena calls for the production of confidential information about third parties. Bain is privy to very sensitive, confidential client information, which is made available to Bain under strict nondisclosure agreements. Under these agreements, Bain is required to provide its clients with advance notice and an opportunity to seek protection for their potentially sensitive documents.

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street Boston, Massachusetts 02109-1775 Telephone: 617.535.4000 Facsimile: 617.535.3800 www.mwe.com

Shari Fleishman Esfahani, Esq.
April 8, 2005
Page 2


Bain also notes its objection to the subpoena to the extent that the subpoena seeks material protected by the attorney-client privilege and work product doctrine.

Subject to the above-referenced objections and to objection from its client, Bain will produce any non-privileged documents that reasonably relate to the subject matter of the above-referenced lawsuit.

Very truly yours,

Amanda J. Metts

AJM/dal

cc:    Stephany Phelps, Esq.

BST99 1453078-1 054168 0065

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Amanda J. Metts
Attorney at Law
ametts@mwe.com
617.535.4005

April 29, 2005

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:     Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
        Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

Subject to and without waiving the objections stated in my letter to you of April 8, 2005, please find enclosed documents bates numbered BAIN 00001 through BAIN 09308. As we discussed, the enclosed documents relate to Hospital Beds, Specialty Beds, and/or Architectural Products, which is the subject matter of the lawsuit. These documents do not include those limited to the subject of funeral services and products, such as caskets, cremation urns and funeral home financial services, or those limited to medical devices, such as surgical equipment, pumps and patient monitors, which are unrelated to Hospital beds, Specialty beds, and/or Architectural Products.

Bain is producing these documents pursuant to the Consent Confidentiality Order (the "Confidentiality Order") entered in the underlying litigation. Per § 3 of the Confidentiality Order, please find the Certification of Counsel signed by Neal E. Minahan and attached hereto as Ex. A. If you do not intend to treat Bain's documents in accordance with the Confidentiality Order, please contact me immediately and return the enclosed documents, unopened, to my office.

Bain's production does not contain any documents responsive to Request No. 12, seeking "[a]ll documents you produced in connection with the case of *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, docket no. SA-95-CA-0755 (W.D. Tex.)." A search for any such documents has revealed that, upon final disposition of that matter, Bain wrote to Mary Claire Fischer and R. Lawrence Macon of your firm, requesting confirmation that the matter was closed and that Bain had no futher obligation to retain documents in connection with the matter. A copy of Bain's letter is attached hereto as Ex. B. Pamela St. John responded to Bain, confirming that the matter was closed, and stating that "[f]rom our perspective, there is no obligation to retain these documents." A copy of Ms. St. John's letter is attached hereto as Ex. C. In accordance with

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston, Massachusetts 02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com
BST99 1456108-1.054168.0065

Shari Fleishman Esfahani, Esq.
April 29, 2005
Page 2

Bain's document retention policy, which has been produced, and the communications with your firm, Bain is no longer in possession of these documents.

Finally, I note that this production does not contain documents prior to 1999. When we last spoke, I expressed Bain's intention to produce only documents from 1999 to the present, pending resolution of a Motion to Compel relating to that issue between the parties. You told me that you were not aware of any such motion, and that Hill-Rom had produced documents prior to 1999.

I now have a copy of the Motion to Compel, filed by McGowan, Hood, Felder & Johnson on behalf of the Plaintiffs. A copy of the motion is attached for your information as Ex. D. Page 3 of the Motion gives as a basis for the Motion to Compel: "[defendants] have refused to search for or produce paper documents for the period prior to 1999." If a court determines that the parties in the case need not produce documents prior to 1999, then Bain, a third party, should not be required to undertake the burden and expense of searching an additional 14 years of documents.

I understand that to the extent Hill-Rom has produced documents prior to 1999, those documents were previously produced in the *Kinetic Concepts* matter. As discussed above, Bain has no such documents. If the court determines that the defendants must produce pre-1999 documents, then Bain would be open to discussion of an additional production.

Please contact me if you have any questions regarding this production.

Very truly yours,

Amanda J. Metts

AJM/dal

cc:    Stephany Phelps, Esq.

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Neal E. Minahan
Attorney at Law
nminahan@mwe.com
617.535.4481

May 13, 2005

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
       Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

Subject to and without waiving the objections stated in the April 8, 2005 letter to you from
Amanda J. Metts, enclosed please find the supplement to Bain's original production sent on
April 29, 2005. Per your verbal request, the documents are produced on CD in their original
electronic format. As previously agreed, this supplemental production contains documents
created prior to 1999 and only those documents that relate to Hospital Beds, Specialty Beds,
and/or Architectural Products, which is the subject matter of the lawsuit. These documents do
not include those relating exclusively to Hillenbrand stockholder relations or those limited to
medical devices, such as surgical equipment, pumps and patient monitors.

Bain is producing these documents pursuant to the Consent Confidentiality Order (the
"Confidentiality Order") entered in the underlying litigation. The CD housing the electronic
documents is labeled, "Confidential," which designates each document contained therein as
confidential pursuant to the Confidentiality Order. Per our May 13, 2005 telephone
conversation, you have agreed to treat these documents in accordance with the Confidentiality
Order. You have further agreed that any printed versions of the electronic documents shall be
labeled confidential pursuant to the Confidentiality Order. If you do not intend to treat these
documents in the agreed upon manner, please contact me immediately and return the enclosed
electronic documents, unopened, to my office. Per § 3 of the Confidentiality Order, please find
the Certification of Counsel attached hereto as Ex. A.

Please contact me if you have any questions regarding this production.

U.S. practice conducted through McDermott Will & Emery LLP.

**28 State Street  Boston, Massachusetts  02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com**

Shari Fleishman Esfahani, Esq.
May 13, 2005
Page 2

Very truly yours,

Neal E. Minahan

Enclosures
cc:     Stephany Phelps, Esq.

BST99 1458248-1.054168.0065

 

## ATTACHMENT A

### CERTIFICATION BY COUNSEL OF DESIGNATION
### OF INFORMATION AS CONFIDENTIAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### SPARTANBURG DIVISION

| | |
|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc.,<br><br>Defendants. | C.A. No. 7:03-2141-26<br><br>**CERTIFICATION BY COUNSEL OF DESIGNATION OF INFORMATION AS CONFIDENTIAL** |

Documents produced herewith [whose bates numbers are listed below (or) which are listed on the attached index] have been marked as CONFIDENTIAL subject to the Confidentiality Order entered in this action which Order is dated  $\underline{Apr \ 1 \ 9}$  , 200 $\underline{5}$ .

By signing below, I am certifying that I have personally reviewed the marked documents and believe, based on that review, that they are properly subject to protection under the terms of Paragraph 3 of the Confidentiality Order.

Check and complete one of the two options below.

☐     I am a member of the Bar of the United States District Court for the District of South Carolina. My District Court Bar number is _____.

☒     I am not a member of the Bar of the United States District Court for the District of South Carolina but am admitted to the bar of one or more states. The state in which I conduct the majority of my practice is  _MASSACHUSETTS_ where my Bar number is  _661371_ . I understand that by completing this certification I am submitting to the jurisdiction of the United States District Court for the District of South Carolina as to any matter relating to this certification.

$\underline{5/13/2005}$
Date

Signature of Counsel

_NEAL E. MINAHAN_
Printed Name of Counsel

10

# A K I N   G U M P
# S T R A U S S   H A U E R   &   F E L D LLP

Attorneys at Law

SHARI FLEISHMAN ESFAHANI
2028874387/fax 2028874288
sesfahani@akingump.com

June 3, 2005

VIA FACSIMILE AND REGULAR MAIL

Amanda J. Metts, Esq.
McDermott Will & Emery
28 State Street
Boston, MA 02109-1775

> Re:  *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.*,
> Case No. 7:03-2141-26, U.S. District Court for the District of South Carolina

Dear Ms. Metts:

I write in response to your May 17, 2005 letter to me, and to seek some clarification concerning Bain's production in response to the subpoena in the above-referenced case. I also want to inform you of the May 23, 2005 Order issued by the Court in this case concerning Spartanburg's motions to compel discovery. The Court has ordered Defendants to produce documents back to 1985, affirming that such are relevant to this case. The Court specifically ordered the production of pricing and cost data. Thus, there is no question that such documents are relevant and must be produced. Should you receive any conflicting information from Defendants' counsel on the matter, please let me know, so that we may address any issues directly. In any event, below are addressed specific concerns raised by Bain's recent productions.

*Electronic Files*

In your letter, you state that Bain will not produce the post-1999 documents that Bain maintains in electronic format in electronic form on the ground that the documents have already been produced as hard copies. Pursuant to Fed. R. Civ. P. 45(d), Bain's obligation in responding to the subpoena is to produce documents *"as they are kept in the usual course of business."* This mirrors the obligation of parties under Fed. R. Civ. P. 34(b) to produce documents as kept in the usual course of business. *See* Advisory Committee Notes to Fed. R. Civ. P. 45 (1991 Amendment). Since Bain maintains numerous portions, if not all, of the post-1999 documents in electronic format, Bain's obligation under Rule 45 is to produce those documents as Bain keeps them -- in electronic format. Spartanburg's request for the documents in electronic format was not a "belated request," as your letter asserts. Rather, it was Bain's obligation from the first instance. *See, e.g., In re Honeywell Int'l., Inc. Securities Litig.*, No. M8-85 WHP, 2003 WL 22722961, at *1-2 (S.D.N.Y. Nov. 18, 2003) (although non-party PriceWaterhouseCoopers had

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 2

produced hard copies of workpapers, PWC was ordered to produce the workpapers in electronic form at its own expense; prior production of hard copies was insufficient because the documents were not produced as kept in the usual course of business, which was in electronic format; PWC had to produce at its own expense because it could have avoided the added expense of reproduction had it produced the workpapers in electronic form at the outset, as was its obligation to do so).

Nonetheless, in an attempt to minimize the additional work required, we will narrow our request to a production in electronic form of the documents that are spreadsheets/databases. From a review of the printed documents produced, it is plain that the production includes printouts of numerous electronic spreadsheets/databases. Printouts of such databases are not adequate substitutions/copies of the electronic originals. Printouts are not easily utilized in attempting to analyze the data therein, requiring the reentry of all the datapoints. While we understand that Bain is a third party, your assertion that the production of the documents in their electronic form would cause needless burden and expense to Bain is not valid. Since Bain has already identified the responsive files, a mere copying of the electronic data to disk is all that is required, certainly not a burdensome task and certainly not even close to the burden that would be put on Spartanburg to reenter the data in order to be able to analyze it. Moreover, pursuant to the Master Agreement between Bain and Hillenbrand, it is apparent that Hillenbrand is obligated to reimburse Bain for any costs and expenses associated with complying with this subpoena, such that Bain, in fact, will incur no expense from complying with its obligations to produce in electronic form. Thus, we request again that Bain promptly fulfill its obligations pursuant to Rule 45 and produce the post-1999 responsive documents that are spreadsheets/databases in the electronic format as Bain maintains them. Certainly, all future productions should be produced in the format in which they are maintained by Bain.

*Black Books*

From a review of the production, it seems that Bain has not made a full production. Bain's Records Management Manual describes that there shall be created for all presentations a Black Book, which shall contain the slides in the order presented with backup slides at the back; copies of data detail supporting each slide; and a disk with the final version of all slides in the front pocket of the binder. It does not appear that Bain produced any of the Black Books created for presentations to Hill-Rom (Hill-Rom, as defined in the subpoena). We see nothing in such format, with presentation slides followed by the data detail supporting each slide, not to mention the disk with final version of the slides. We ask that Bain produce all such Black Books created for presentations to Hill-Rom concerning hospital beds or surfaces, specialty hospital beds or surfaces, architectural products, or in-room products, or concerning any business units associated with such products.

A K I N  G U M P
S T R A U S S  H A U E R  &  F E L D LLP
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 3

*Missing Pages*

There appear to be pages missing from the pre-1999 production. The following files either are missing pages or have slide numbering sequences that are unusual (e.g., slides with the same number within a single file, slides without numbers, and missing numbers in the slide sequence) and raise the issue as to whether the files are complete:

HLB11097ADA
HLB11097ADD
HLB11097GTA
HLB11097SSA
HLB11173ADC
HLB11173ADE
HLB11173SSC
HLB11375ADD
HLB11375SSB

In addition, almost all of the pre-1999 files contain slides that are out of sequential number order. Please check on these pre-1999 files to assure that a full production is made as Bain maintains the documents.

*Project Proposals and Logs*

The Master Agreement dated December 1, 2001, states that for each project, there shall be appended a proposal setting forth the scope of work, including the objectives, timetable, and fees. Only one proposal dated October 25, 2001, was appended. Please produce all proposals. In addition, any log of the projects proposed and/or completed for Hill-Rom should be produced.

*References to Further Work*

Several Bain documents reference additional work to be performed. For example, the November 11, 1993 Hill-Rom and SSI Partnership proposal and accompanying slide presentation detail work to occur over up to 24 months, including the quantification of the economics of the bundled offer and the development of a pricing strategy. The October 12, 1994 presentation references additional work/milestones to be performed as part of the action plan in 1995 and 1996. However, no documents were produced from that timeframe representing such work. As another example, the Proposal dated October 25, 2001, at BAIN 09267-09269, references work to be performed over four to five months. Yet, no documents from the 2002 timeframe representing such work were produced. Please produce all such related documents.

AKIN GUMP
STRAUSS HAUER & FELDᴸᴸᴾ
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 4

*Missing Presentations and Other Documents*

Perhaps most glaring is the complete absence in the pre-1999 production of various Bain presentations produced by Hill-Rom, including, for example, the aforementioned November 11, 1993 Hill-Rom and SSI Partnership proposal and accompanying slide presentation and October 12, 1994 presentation. According to Bain's Records Management Manual, presentations are stored with the engagement Vice-President. Given these omissions, we are concerned that a full and complete search of responsive documents – including through microfiche, off-site storage, the files of the engagement Vice-President, the files of team members on the engagement, and other appropriate searches outlined in Bain's Third Party Litigation Response Plan – may not have been undertaken. The November 11, 1993 presentation slides, for example, contain slide/file numbers including 9JG 10638CCA, 9JG 10638CCB, 9JGLW501 and 9JGLW502, 9JG 10638sha, 9JG 10638LWA,[1] BAQ 10389LGA, BA4 10472CHA. Please assure that these file numbers have been searched. In addition, the November 11, 1993 proposal states that the project team will include Jim Gilbert, Darrell Rigby, Eric Schwalm, and Susan Caraviello. A 2001 proposal states that the Bain team will be Chuck Farkas, Paul Rosenberg, Sean Padgett, and with Darrell Rigby continuing his role. Please assure that the files of these persons have been searched, as well as the files of any other team members who worked on Hill-Rom projects. Please assure that Bain thoroughly searches its files, including email records, for documents responsive to the subpoena, and produces *all* responsive documents.

*Investor Relations Documents*

Neal Minahan informed me that a document concerning Hillenbrand's investor relations had been withheld from production. Certainly this document is responsive to the subpoena; and given the broad scope of discovery, certainly it could be relevant to Spartanburg's claims, particularly as concerns any relevant disclosures made to investors. This and all related documents should be produced.

*Log of Withheld Documents*

Finally, please provide a log of all documents related to Hill-Rom withheld from production. I understand that you have withheld documents that relate to funeral services and products, surgical equipment, pumps, and patient monitors. However, to the degree those documents relate to joint incentives/bundling programs, they would be relevant to the claims in

---

[1] It is possible the 9JG 10638 series ends in a "6," so 10636.

AKIN GUMP
STRAUSS HAUER & FELDLLP
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 5

this action. Therefore, we request a log of documents withheld, as well as the production of any documents withheld that bear upon any joint incentives/bundling programs.

I look forward to Bain's cooperation in assuring full compliance with the subpoena. Please contact me by June 8 to inform me as to how you intend to proceed to make Bain's further production.

Sincerely,

Shari Esfahani

Shari Fleishman Esfahani

# McDermott Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D.C.

Amanda J. Metts
Attorney at Law
ametts@mwe.com
617.535.4005

June 8, 2005

VIA FACSIMILE AND MAIL

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
        Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

I write in response to your recent letter of Friday, June 3, 2005, which raised issues related to
Bain & Company, Inc.'s production of documents in response to the overbroad subpoena issued
by your office in connection with the above-captioned matter. Due to the breadth of the
subpoena, which requested essentially every document relating to Bain's work for Hill-Rom over
the last twenty years, Bain objected pursuant to Federal Rule of Civil Procedure 45 on April 8,
2005. Notwithstanding its valid objections, and in an effort to comply with the subpoena to the
extent reasonable and required by law, Bain nevertheless undertook a search of its records and
has produced in excess of 10,000 pages of responsive documents to date.

Despite Bain's reasonable and good faith efforts, you have now raised a number of issues
relating to its production. Below, please find our response to each issue raised by your letter.[1]

## Post-1999 Electronic Files

On March 28, 2005, you served a third-party subpoena on Bain in the above-captioned litigation,
which was void of any instruction relating to production format. Accordingly, Bain produced
four boxes of post-1999 documents in hard copy on April 29, 2005 (the "post-1999 documents").
At that time, Bain objected to the production of pre-1999 documents, based on the motion to
compel pre-1999 documents pending in this case at that time. Bain subsequently agreed to
produce pre-1999 documents. Before it had conducted this review, you verbally requested that

---

[1] As an initial matter, I note your update regarding the Court's May 23, 2005 order that parties must produce
documents back to 1985. As you know, Bain has already produced documents dated prior to 1999 on May 13, 2005
and has not otherwise restricted its production by date.

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 2

Bain produce in electronic format any pre-1999 documents that Bain maintained electronically. Accordingly, on May 13, 2005, Bain produced additional documents in an electronic format (the "pre-1999 documents"). That same day, for the very first time, you requested that Bain re-produce the post-1999 documents in electronic format. Bain objected in writing to reproducing the documents already in your possession on May 16, 2005. Your recent letter insists that electronic production is required, but now limits your request for such production to databases and spreadsheets.

Rule 34 simply does not require Bain to produce -- or reproduce -- the post-1999 documents in electronic format:

> [Rule 34(b)] is an anti-sabotage provision: a party may not dump its files into a mail cart, stir well, then wheel it to opposing counsel. Thus, if a party produces its electronic information in a hard copy format that mimics the manner in which that information is stored electronically, then that party has not disobeyed Rule 34.

*Crossarm Co. v. Chem. Specialties, Inc.*, 2004 U.S. Dist. LEXIS 5381, 2-3 (D. Wis., 2004 ). Pursuant to Rules 34(b) and 45(d), Bain's April 29, 2005 production was properly organized in the same manner that Bain keeps the documents electronically.

Moreover, your suggestion that reproduction would not place a burden on Bain because Hill-Rom will cover Bain's costs oversimplifies the issue. Though Hill-Rom is obliged to cover Bain's costs related to the subpoena, reproducing documents would necessitate further disruption of Bain's normal operations to attend to this request. Moreover, despite your assertion that Bain must simply copy the electronic files to disk, there is no easy way to match the produced hard copy files with the electronic files other than through manually searching each electronic document and comparing it with the produced hard copy. Such an exercise would be both tedious and time-consuming.

In short, Bain is under no obligation to re-produce any post-1999 documents. However, in the interest of minimizing the issues and therefore Bain's continued involvement in a litigation that does not concern it, and in light of your significantly narrowed request for electronic production, Bain will endeavor to produce the previously-produced post-1999 spreadsheets and databases in their electronic format. I will provide you with an anticipated production date once we have better ascertained the required effort.

**Black Books**

As you have noted, Bain's production does not contain compiled hard copies of slides and back-up documents, or so-called "Black Books." The Records Management Manual that was produced on April 29, 2005 as BAIN 09276 -09308 does discuss retention of Black Books; however, the Manual provided is not the policy currently in effect. Enclosed herewith as BAIN

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 3


09309-09311 is Bain's current Records and Information Management Policy, which has been in effect since approximately December 1999 with few modifications. As you will see, the current Policy does not contain any obligations regarding the outdated practice of creating and retaining Black Books. Previously, Black Books were used to preserve Bain's overhead projector slides, which have since become obsolete due to the advent of Power Point software and the ability to retain presentations electronically. Accordingly, Bain does not maintain Black Books in accordance with its current Policy. I apologize for any confusion. Please let me know if you have any questions regarding this issue.

## Missing Pages

You reference missing and "unusually numbered" slides within certain pre-1999 documents. As you know, Bain produced all pre-1999 documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products on May 13, 2005. Per your instructions, Bain produced these documents exactly as Bain kept them, in their original electronic format. Any oddities within these documents existed in the original files.

## Project Proposals and Logs

Your letter requests all proposals regarding work for Hill-Rom, which request was subsumed in your original subpoena. Bain has produced all proposals that relate to Hospital Beds, Specialty Beds, and/or Architectural Products. An exhaustive search has revealed that the October 25, 2001 proposal, referenced in your letter, is the only such proposal in Bain's possession, custody and control.

In response to your request for a "log of the projects proposed and/or completed for Hill-Rom," Bain will produce any such listing that is kept in the normal course of business.

## References to Further Work

Your letter refers to documents that reference additional work to be performed by Bain, and requests production of all documents related to that work. Once again, Bain produced all post-1999 documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products on April 29, 2005 and all such pre-1999 documents on May 13, 2005. If the referenced work was, in fact (i) undertaken, (ii) related to Hospital Beds, Specialty Beds, and/or Architectural Products, and (iii) retained pursuant to Bain's Records and Information Management Policy, then Bain has produced any existing documents relating to that work.

## Missing Presentations

Your letter notes that Bain's production does not contain certain Bain Presentations that have been produced by Hill-Rom and requests that Bain search certain enumerated files and team members' files. Bain's Records and Information Management Policy requires that at the close of

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 4

every case, team members consolidate all case materials into a central location and return all client materials to the client. Despite the fact that employees are instructed to yield their documents at the close of each case, in an abundance of caution, Bain nevertheless conducted a complete search of all possible sources of documents, including all appropriate files and team members, in response to the subpoena.

The presentations you reference are over ten years old (dated November 11, 1993 and October 12, 1994). As you will see in the enclosed Records and Information Management Policy, only case materials in the permanent archive, i.e., only final versions of "major presentations," would have been retained for that length of time. The "missing presentations" that you reference may not have been considered major and, therefore, not have been retained in the permanent archive. In any event, Bain has produced all presentations relating to Hospital Beds, Specialty Beds, and/or Architectural Products in its possession, custody and control.

**Investor Relations Documents**

You have also requested production of a document that was apparently described to you as involving "Hillenbrand stockholder relations." This document does not relate in any way to Hospital Beds, Specialty Beds, and/or Architectural Products, and was properly withheld. The referenced one-and-a-half page document is an internal Bain document which provides very general client background and outlines Bain's manager-client relationship with Hillenbrand. The document makes a sole, general reference to Bain's success in improving shareholder value. This document was for Bain's internal use only and does not relate to Hospital Beds, Specialty Beds, and/or Architectural Products.

**Log of Withheld Documents**

Finally, you request that Bain produce a log of documents withheld from production. This request is outrageous, entirely unsupported, and would subject non-party Bain to substantial, and unwarranted, time and expense. Bain has produced all documents that relate in any way to Hospital Beds, Specialty Beds, and/or Architectural Products -- the subject matter of the lawsuit. With each production, and at your request, Bain has provided you with a list of categories of documents that are entirely unrelated to the litigation, and therefore not produced, including those limited to the subject of funeral services and products, such as caskets, cremation urns and funeral home financial services, and those limited to medical devices, such as surgical equipment, pumps and patient monitors, which are unrelated to Hospital beds, Specialty beds, and/or Architectural Products. This provision of general categories is more than sufficient to allow you to request additional information regarding certain categories of documents, if necessary.

In fact, based on the provision of these categories of information, you have requested production of any such documents that relate to "joint incentives and bundling programs." Although our review revealed no reference to any such programs in these unrelated documents, your use of the

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 5

terms is not clear. Please provide additional information regarding these programs and their relevance to the litigation so that we may fully respond to your request and produce any such documents, if appropriate.

Non-party Bain has made a significant, good faith effort to review and produce documents spanning more than fifteen years. As stated, it will now undertake a further effort to re-produce certain documents in an electronic format. I hope that this letter answers your remaining questions and concerns regarding Bain's production.

Very truly yours,

Amanda J. Metts

Enclosure

cc:     Neal Minahan, Esq.

BST99 1461305-2.054168.0065

# AKIN GUMP
# STRAUSS HAUER & FELDLLP

━━━━━━━━━━━ Attorneys at Law

**SHARI FLEISHMAN ESFAHANI**
2028874387/fax: 2028874288
sesfahani@akingump.com

June 20, 2005

VIA FACSIMILE AND REGULAR MAIL

Amanda J. Metts, Esq.
McDermott Will & Emery
28 State Street
Boston, MA 02109-1775

> Re: *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.*,
> Case No. 7:03-2141-26, U.S. District Court for the District of South Carolina

Dear Ms. Metts:

This is in response to your June 8, 2005 letter to me concerning issues with Bain's production. You reference Bain's production to date, and we thank you for your cooperation in making that production. However, our concern is to assure that Bain's production is complete. I address the outstanding issues below.

*Post-1999 Electronic Files and Project Log*

We appreciate Bain's cooperation in agreeing to provide the post-1999 spreadsheets and databases in their original electronic form. As the documents are already identified (since they were previously produced in hard copy), it should not take much time simply to copy them to disk. We expect production by no later than June 24, 2005.

You also stated that Bain will produce a log of the projects proposed and/or completed for Hill-Rom that is kept in the normal course of business. This also should be produced by June 24, 2005.

*Black Books*

You claim that the current Records and Information Management Policy does not contain obligations concerning creating and retaining Black Books, as was contained in the policy previously produced. However, what we want to know is whether Bain has in its possession any Black Books related to Hill-Rom projects. Indeed, much of the work Bain performed was prior to December 1999, when you state the current policy went into effect. Therefore, we again request the Black Books created with regard to any Hill-Rom projects. All Black Books created for presentations to Hill-Rom concerning hospital beds or surfaces, specialty hospital beds or surfaces, architectural products, or in-room products, or concerning any business units associated

AKIN GUMP
STRAUSS HAUER & FELDLLP
▬▬▬▬▬▬▬▬ Attorneys at Law

Amanda J. Metts, Esq.
June 20, 2005
Page 2

with such products, *or concerning the business relationship with Hillenbrand generally* must be produced. If such were destroyed, please certify the same and when that destruction occurred, and provide all documents reflecting their destruction.

### *Missing Documents*

You reference the current Records and Information Management Policy's provision concerning materials to be kept in the permanent archive. In that regard, you state that the missing presentations and other documents referenced in my June 3 letter may not have been retained because they may not have been considered "major." Please produce any documents concerning how Bain implements its policy with regard to the interpretation of what is considered a "major" presentation.

In addition, the policy states that, in addition to the final versions of major presentations, the Permanent Archive should contain background client information; workplans; backup materials; relationship management/client development materials. *All* such documents should be produced. The policy also states that key materials are submitted to "GXC," including a case summary and results, key data sources, workplan, key insights, and proposals. These also should be produced, as well as any public materials obtained for the Hill-Rom projects that were sent to the library. Please also produce the "case wrap-up checklist" that was to be sent to the office Records Manager pursuant to the policy. We want to assure that all these avenues have been searched and documents produced.

Certainly, we would expect to see, for example, documents concerning the quantification of the economics of the bundled offer and the development of pricing strategies. Bain documents produced referenced that such work was going to be done. Please assure and certify that all sources of documents have been checked. And, if documents have been destroyed, please certify the same and when that destruction occurred, and provide all documents reflecting their destruction.

### *General Relationship Documents*

You have described that there is a 1 ½ page document providing client background and outlining Bain's manager-client relationship with Hillenbrand that makes reference to Bain's success in improving shareholder value. This document is both responsive to the subpoena and relevant to Spartanburg's claims. Documents discussing the relationship between Bain and Defendants, referring to the success Bain's work has achieved, and/or concerning how Bain was compensated are relevant to this case. All such documents, including the 1 ½ page document referenced, concerning the relationship between Bain and Defendants should be produced.

AKIN GUMP
STRAUSS HAUER & FELDᴸᴸᴾ
━━━━━━ Attorneys at Law

Amanda J. Metts, Esq.
June 20, 2005
Page 3

*Joint Incentives/Bundling Programs*

You have asked for clarification of the terms "joint incentives/bundling programs" in
reference to our request for all documents related to such, regardless of the products involved.
This request for clarification seems a bit disingenuous, since Bain's own documents produced by
both Bain and Hill-Rom make reference to joint incentives and to bundling. Nonetheless, with
this background in mind, to clarify, we seek all documents related to Hill-Rom (as defined in the
subpoena), regardless of the products involved, that discuss the concepts of marketing together
different products (bundling them) and/or creating a financial package including pricing and/or
discounts, financial incentives across products, product lines, and/or markets. We also seek
documents that reference or discuss the concept of exclusivity, or obtaining commitments to
exclusively (or close) purchase and/or rent from Hill-Rom. The relevance of such documents to
this litigation is clear, as Spartanburg complains of Hill-Rom's conduct in, *inter alia,* imposing
agreements upon hospitals to purchase/rent a very high percentage of hospital beds and specialty
beds from Hill-Rom in order to receive "discounts" on hospital beds and other financial
incentives. Any information on similar advice/initiatives would be relevant.

*Bates Numbering*

Finally, we ask that you re-stamp the Records & Information Management Policy you
produced on June 8 as BAIN 09309-11. We have already stamped the pre-1999 documents you
produced on disk, and used those numbers. To avoid confusion, please send another copy, with
numbering beginning at BAIN 10052. All additional documents produced should continue from
such numbering.

As mentioned above, we expect production of the post-1999 electronic files and of the
project log by June 24. The other documents should be produced by June 29. I look forward to
Bain's cooperation in assuring full compliance with the subpoena and to its further production.
Please contact me to inform me as to how Bain intends to proceed. I also want to discuss with
you the availability of a 30(b)(6) witness regarding the work Bain performed for Hill-Rom, as
well as Bain's search for documents.

Sincerely,

*Shari Esfahani*

Shari Fleishman Esfahani

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

Amanda J. Metts
Attorney at Law
ametts@mwe.com
617.535.4005

June 30, 2005

VIA FEDERAL EXPRESS

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:     Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
        Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

I write in response to your recent letter, dated June 20, 2005, reiterating the concerns expressed
in your letter of June 3, 2005, despite Bain's prompt response and continued efforts to cooperate
by re-producing certain previously-produced documents in electronic format.

## Post-1999 Electronic Files

Enclosed please find Bain's electronic re-production of the post-1999 spreadsheets and
databases, which were originally produced in hard copy on April 29, 2005. Bain is producing
these documents pursuant to the Consent Confidentiality Order (the " Confidentiality Order")
entered in the underlying litigation. The CD housing the electronic documents is labeled
"Confidential," which designates each document contained therein as confidential pursuant to the
Confidentiality Order. Per your May 13, 2005 telephone conversation with Neal Minahan, you
have agreed to treat these documents in accordance with the Confidentiality Order. You have
further agreed that any printed versions of the electronic documents shall be labeled confidential
pursuant to the Confidentiality Order. If you do not intend to treat these documents in the agreed
upon manner, please contact me immediately and return the enclosed electronic documents,
unopened, to my office. Per § 3 of the Confidentiality Order, please find the Certification of
Counsel attached hereto as Ex. A.

## Black Books

As I explained in my letter of June 8, 2005, Bain's current Records and Information Management
Policy eliminated any obligations regarding the outdated practice of creating and retaining Black

Shari Fleishman Esfahani, Esq.
June 30, 2005
Page 2

Books. In light of that policy, Bain no longer maintains any Black Books. Any Black Books that might have been created would no longer be kept by Bain pursuant to its current Records and Information Management Policy, as evidenced by the lack of any Black Books contained in our production.

## Missing Presentations

We have produced Bain's Records & Information Management Policy, which requires Bain to retain "major presentations." You have requested Bain's policy defining "major presentation. No such policy exists. What constitutes a "major presentation" cannot be globally defined and is therefore left to the discretion of project leaders.

Our search and production of Bain documents includes those in Bain's permanent archive, and we will produce any that relate in any way to Hospital Beds, Specialty Beds, and/or Architectural Products. This production includes – to the extent they relate or potentially relate to the relevant subject matter – all "background client information," "workplans," "backup materials," "relationship management/client development materials" and the "case wrap-up checklist." GXC is a Bain database used for internal purposes only and does not contain records of any work for clients. Thus, the GXC does not contain any relevant documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products.

Regarding your request for "any public materials obtained for the Hill-Rom projects that were sent to the library," Bain's library accepts donations only rarely due to copyright agreements. For the few materials they do accept, the library does not track the case/client from which it was donated. In any event, any publicly-available information is equally available to your client and need not be produced.

## Proof of Destruction of Documents

You have requested that Bain certify any destruction of specific documents and when that destruction occurred. Bain's document destruction logs do not identify specific documents or types of documents. Instead, it lists only the numbered storage boxes that are destroyed for each project. Thus there is no way to determine what documents were in each box that was destroyed. Moreover, Bain is under no obligation to provide evidence of any document destruction.

## Overbreadth of Your Continued Requests

Thank you for the further explanation regarding your request for documents regarding joint incentives/bundling programs. While I agree that any documents relating to joint incentives/bundling programs of Hospital Beds, Specialty Beds, and/or Architectural Products, I disagree that *any* documents referencing such programs – despite the products being bundled or incentivized – would be responsive to the subpoena. Though discovery is broad, it is not unlimited. Rule 26(b)(2) states that discovery must be "reasonably calculated to lead to the

Shari Fleishman Esfahani, Esq.
June 30, 2005
Page 3

discovery of admissible evidence." The underlying litigation relates to Hospital Beds, Specialty Beds, and/or Architectural Products, and we will produce all documents relating or potentially relating to these categories. Rule 26's limitation also applies to your repeated request for the production of a one-and-a-half page document, which we have explained several times is an internal Bain document providing very general client background and outlining Bain's manager-client relationship with Hillenbrand. This document was not produced because it does not relate *in any way* to Hospital Beds, Specialty Beds, and/or Architectural Products.

## Bates Numbering

Enclosed please find a copy of Bain's Records & Information Management Policy originally produced on June 8, 2005, Bates stamped BAIN 10052- 10054. Your letter indicates that you have printed the documents that Bain produced in electronic format on May 13, 2005. Please confirm that you have properly labeled these documents "Confidential" pursuant to the Confidentiality Order and your agreement, which is documented in our cover letter of May 13, 2005.

Non-party Bain has made a significant, good faith effort to review and produce documents spanning more than fifteen years. In addition to the over 10,000 pages of documents already produced, Bain is now, after a substantial investment of time and resources, re-producing already produced documents in electronic format. To the extent we identify additional documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products, Bain will supplement its production. In connection with Bain's ongoing effort to identify such documents, we expect to produce a small number of additional documents. Neal Minahan will contact you with an anticipated date for this final production. Finally, per your request, Bain will work to identify its 30(b)(6) witness and we will then provide you that person's name and availability.

Please note that as of July 5, I will be joining McDermott Will & Emery's Chicago Office. Kindly address all future correspondence to me at the following address:

McDermott Will & Emery LLP
227 West Monroe St.
Chicago, IL 60606

Neal Minahan, of the Boston office, will continue his involvement in this matter. Please also address correspondence to him at the Boston address.

Shari Fleishman Esfahani, Esq.
June 30, 2005
Page 4


Very truly yours,

Amanda J. Metts

Enclosure

cc:    Neal E. Minahan, Esq.

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Düsseldorf  London  Los Angeles  Miami  Milan
Munich  New York  Orange County  Rome  San Diego  Silicon Valley  Washington, D.C.

August 19, 2005

VIA FEDERAL EXPRESS

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
       Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

Subject to and without waiving the objections stated in Amanda J. Metts' letter of April 8, 2005,
enclosed please find Bain's third supplement to its original production sent on April 29, 2005.
Per your request, the documents are produced on CD in their original electronic format. As
previously agreed, this supplemental production contains documents that relate to bundling/joint
incentives, including those that do not expressly mention or discuss hospital beds, specialty beds,
and/or architectural products. This production does not include documents relating to
bundling/joint incentives of identifiable, unrelated products such as funeral services, medical
technologies and in-patient IT solutions, as such documents are wholly unrelated to the litigation,
which concerns hospital beds, specialty beds, and/or architectural products.

Bain is producing these documents pursuant to the Consent Confidentiality Order (the
"Confidentiality Order") entered in the underlying litigation. The CD housing the electronic
documents is labeled, "Confidential," which designates each document contained therein as
confidential pursuant to the Confidentiality Order. Per our May 13, 2005 telephone
conversation, you have agreed to treat these documents in accordance with the Confidentiality
Order. You have further agreed that any printed versions of the electronic documents shall be
labeled confidential pursuant to the Confidentiality Order. If you do not intend to treat these
documents in the agreed upon manner, please contact me immediately and return the enclosed
electronic documents, unopened, to my office. Per § 3 of the Confidentiality Order, please find
the Certification of Counsel attached hereto as Ex. A.

To comply with your request that the documents be produced in their native format and to
preserve the integrity of the electronic documents, Bain has not Bates labeled the documents
contained on the CD. As with Bain's supplemental productions of May 13, 2005 and July 11,

U.S. practice conducted through McDermott Will & Emery LLP.

28 State Street  Boston, Massachusetts  02109-1775  Telephone: 617.535.4000  Facsimile: 617.535.3800  www.mwe.com

Shari Esfahani
August 19, 2005
Page 2

2005 please Bates label and mark Confidential any printed version of the documents in this production and provide me with the Bates range.

Please contact me if you have any questions regarding this production.

Sincerely yours,

Neal E. Minahan

NEM/pmf

Enclosure
cc:      Amanda J. Metts, Esq.

BST99 1469941-1.054168.0065