IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IN RE SUBPOENA: | ) | |
| | ) | |
| SPARTANBURG REGIONAL HEALTHCARE | ) | |
| SYSTEM, on behalf of itself and others | ) | |
| similarly situated, | ) | Civil Action No. |
| | ) | 1:05-mc-10324-RWZ |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HILLENBRAND INDUSTRIES, INC., | ) | |
| HILL-ROM, INC., and | ) | |
| HILL-ROM COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
## QUASH OR MODIFY THIRD-PARTY SUBPOENAS

Bain & Company ("Bain"), by and through its attorneys, hereby submits this

Memorandum of Law in Support of its Motion to Quash or Modify Third-Party Subpoenas, in

connection with (i) a 30(b)(6) subpoena to Bain; and (ii) two subpoenas duces tecum to Bain

employee Darrell Rigby, each issued by this Court and served by the Plaintiff in an action

pending in the U.S. District Court for the District of South Carolina and captioned, *Spartanburg*

*Regional Healthcare System, on behalf of itself and others similarly situated, v. Hillenbrand*

*Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action No. 7:03-2141-26.

### INTRODUCTION

On August 31, 2005, unable to keep up with the never-ending and always-changing

demands for third-party discovery by Spartanburg, and unwilling to squander its client relations

by producing documents in bulk that have no connection to the underlying litigation, Bain asked

this Court for help. Unable to reach agreement with Plaintiff after more than five months of

demands and negotiations, Bain asked this Court to narrow Plaintiff's requests to those relating to Hospital Beds, Specialty Beds, and/or Architectural Products -- products identified by the Plaintiff and related to the underlying litigation. Simultaneous with Bain's request for relief, Plaintiff served Bain with three *additional* subpoenas, seeking the same overbroad categories of documents that were requested and objected to in the original subpoena, and now commanding testimony on matters far beyond the scope of the litigation. Bain again seeks this Court's protection with respect to the breadth of the additional subpoenas.

Plaintiff issued the additional subpoenas despite full awareness of Bain's objections to Plaintiff's overbroad requests, and without seeking or waiting for resolution on the outstanding issues. Plaintiff's issuance of the additional subpoenas, necessitating further action by Bain before the outcome of the issues already in dispute, is the latest in a series of unreasonable demands that have unduly burdened third-party Bain and threatens to harm its client relationships. Accordingly, Bain seeks recovery of fees and costs incurred in connection with the several subpoenas.

<div align="center">

**FACTUAL BACKGROUND**

</div>

**The First Spartanburg Subpoena and Motion to Modify**

On March 28, 2005, Spartanburg served Bain with a burdensome third-party subpoena for documents, relating to Bain's client Hillenbrand Industries, Inc., a party to the above-captioned litigation (the "Document Subpoena"). See Memorandum in Support of Motion to Modify Third-Party Subpoena, filed in this Court on August 31, 2005, attached hereto as Exhibit 1, and its accompanying Affidavit of Amanda J. Metts, Esq. (the "August 31, 2005 Metts Aff."), ¶ 2, and Ex. "A" thereto. The Document Subpoena sought all documents relating to Hillenbrand over the last twenty years, with no attempt to tailor the requests to the subject matter of the

<div align="center">

- 2 -

</div>

litigation in connection with which it was issued. The underlying litigation is an antitrust action brought by Spartanburg, alleging antitrust violations surrounding the manufacturing and sales of hospital beds and specialty beds. See August 31, 2005 Metts Aff., ¶ 3 and Ex. "B" thereto.

Bain timely objected to the Document Subpoena, but produced documents related to "Hospital Beds, Specialty Beds, and/or Architectural Products" -- products related to the litigation and specified by the Plaintiff throughout the Document Subpoena. Bain has since supplemented its production as appropriate and re-produced certain documents in electronic format at Plaintiff's request. Spartanburg nevertheless issued repeated demands for additional production of documents wholly unrelated to the underlying litigation, causing Bain to seek protection from this Court. On August 31, 2005, Bain asked this Court to narrow the Document Subpoena to documents related to Hospital Beds, Specialty Beds, and/or Architectural Products, and relieve Bain from any further demands for production by the Plaintiff.[1]

**Spartanburg Serves Three New Subpoenas on Bain and its Employee**

On the very day that Bain sought this Court's protection, Plaintiff served three additional subpoenas: (1) a Subpoena for Production of Documents and for Testimony Pursuant to Fed. R. Civ. P. 30(b)(6) (the "30(b)(6) Subpoena"); and (2) two Subpoenas for Production of Documents and Testimony from Bain employee Darrell K. Rigby (the "Rigby Subpoenas"). [2]

The 30(b)(6) Subpoena seeks testimony and documents on categories far beyond the scope of the underlying litigation. In addition to testimony relating to Bain's work for Hillenbrand, the 30(b)(6) Subpoena seeks testimony relating to: (1) Bain's relationship with unrelated entity Bain Capital, LLC; (2) Bain's electronic back up tape policy; (3) Bain's

---

[1] For a complete recitation of the facts surrounding the Document Subpoena, Bain hereby incorporates by reference its Memorandum in Support of its Motion to Modify Third-Party Subpoena, filed in this Court on August 31, 2005, and attached hereto as Exhibit 1.

[2] Plaintiff served identical subpoenas on Mr. Rigby: one care of Bain and one at his home.

compensation; (4) Bain's involvement in a case captioned *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, to which Bain was not a party; and (5) more than a decade of Bain's work for Hillenbrand, regardless of subject matter. Affidavit of Amanda J. Metts, Esq. ("Metts Aff."), ¶ 3, attached hereto as Exhibit 2, and Ex. "A" thereto.

The two Rigby Subpoenas request the exact categories of documents already subpoenaed pursuant to the Document Subpoena, with the exception of the request for documents already produced in connection with the *Kinetic Concepts* case, and with the addition of a request for documents relating to Fredrick W. Rockwood, Hillenbrand's president and CEO. Metts Aff., ¶ 3, and Ex. "B" and "C" thereto. The Rigby Subpoenas were served despite Plaintiff's knowledge of Bain's objections to the production of documents beyond the scope of the litigation, and with no attempt to seek resolution of the issues.

## ARGUMENT

### I.    The 30(b)(6) Subpoena Should be Narrowed to the Subject Matter of the Litigation to Minimize the Burden on Non-Party Bain.

All discovery is restricted to requests that are, at the least, "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Further limitations on discovery are appropriate whenever "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii). See also Hooker v. Norfolk S. Ry., 204 F.R.D 124, 126 (S.D. Ind. 2001) (applying Rule 26(b)(1) standard to discovery requests under Rule 30(b)(6)). Accordingly, a court may quash or modify a 30(b)(6) subpoena if it poses an undue burden on the subpoenaed party. See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., Civil Action No. 02-3398-A(4), 2005 U.S. Dist. LEXIS 11580 (D. La. 2005) (limiting 30(b)(6) deposition subpoena because certain areas of inquiry were not relevant); Vitale v. McAtee, 170 F.R.D. 404, 407 (D. Pa. 1997) (modifying 30(b)(6) deposition subpoena).

Even broader restrictions on discovery are appropriate when a nonparty is the target. <u>See</u> <u>Blount Int'l Ltd. v. Schuylkill Energy Res. Inc.</u>, 124 F.R.D. 523, 526 (D. Mass. 1989). Concern for the burden thrust upon non-parties is a factor entitled to special weight in evaluating the burden on the parties, and the Court by which a subpoena is issued "shall quash or modify the subpoena if it … subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A); <u>Heidelberg</u> <u>Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.</u>, 333 F.3d 38, 41-42 (1st Cir. 2003) (finding a significant burden where a nonparty subpoena "encompasse[d] a decade's worth of material" and asked for "all documents received, reviewed or generated by [the non-party]" relating to "any type of business affiliation with [a named party]"); <u>Church of Scientology v. IRS</u>, 138 F.R.D. 9, 10 (D. Mass. 1990) ("A court that issues a subpoena has the inherent power to vacate it.").

### A.    The 30(b)(6) Subpoena Seeks Testimony Far Beyond Subjects Related to Bain's Work for Hillenbrand.

The 30(b)(6) Subpoena seeks testimony far beyond that related to the subject matter of the litigation. In fact, only nine of the twenty subjects for deposition relate to Bain's work for Hillenbrand at all.

#### 1.    Unrelated Entity Bain Capital

Six of the Subjects for Deposition relate to Bain Capital, LLC ("Bain Capital"), including Bain's relationship with Bain Capital, and communications between Bain Capital and Hillenbrand. <u>See</u> Metts Aff., ¶ 2, and Ex. "A" thereto (Subjects for Deposition No. 8-13). Bain Capital, LLC is an entity entirely separate from Bain & Company. <u>See</u> Affidavit of Paul Rosenberg ("Rosenberg Aff."), attached hereto as <u>Exhibit 3</u>, ¶ 3; Metts Aff., ¶ 4, and Ex. "D" thereto ("Bain Capital … is not a sister company nor a division of Bain. It is a completely separate company with no sharing of management or information."). Bain Capital did not assist or participate in Bain's work for Hillenbrand, Rosenberg Aff., ¶ 4, and Bain should not be

required to designate a witness to testify to Bain Capital's lack of involvement. In any event, once the lack of participation of Bain Capital in Bain's work is established, Bain's relationship with Bain Capital is entirely irrelevant to the underlying litigation, and is not a proper subject for deposition.

        2.    <u>Back-Up Tapes</u>

The 30(b)(6) Deposition Notice next seeks information concerning Bain's efforts to comply with the Document Subpoena, including Bain's policy with respect to "back-up data, the recycling, and maintenance of back-up tapes." Metts Aff., ¶ 2, and Ex. "A" thereto (Subject for Deposition No. 16). Any request for back up tapes would impose an intolerable burden on Bain, which would be required to review the tapes itself because it could not simply provide access to tapes containing client confidential material. Bain retains documents pursuant to its Records and Information Management Policy, which it has produced to Plaintiff, and Bain has produced several boxes and CDs of documents so kept in response to the Document Subpoena. Any inquiry with respect to back up tapes for work that ended three years before Plaintiff issued its several subpoenas is burdensome, unnecessary, and meant solely to harass third-party Bain.

        3.    <u>Bain's Compensation</u>

The 30(b)(6) Subpoena also seeks testimony regarding how much and in what form Bain "derived a financial return" from its relationship with Hillenbrand. Metts Aff. ¶ 2, and Ex. "A" thereto (Subject for Deposition No. 2). Bain is not a party to the underlying litigation, and the amount of money it was paid for its work for Hillenbrand, or the manner in which it was paid, has no conceivable relation to Hillenbrand's pricing of hospital beds. Plaintiff's request is no more than an attempt to harass Bain, with no possible benefit or relevance to the case.

4.    Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.

The 30(b)(6) Subpoena next seeks testimony regarding "Bain's participation, through document production and/or testimony of witnesses, in the case captioned *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, docket no. SA-95-CA-0755 (W.D. Tex.)." Metts Aff., ¶ 2, and Ex. "A" thereto (Subject for Deposition No. 19). Bain was not a party to the *Kinetic Concepts* case, but produced documents pursuant to a third-party subpoena issued by Plaintiff Kinetic Concepts, which was represented by Akin, Gump, Strauss, Hauer & Feld LLP ("Akin Gump"), counsel for Spartanburg in the present litigation. Bain did not retain a copy of its *Kinetic Concepts* production, pursuant to a letter in which Akin Gump advised that the *Kinetic Concepts* case was closed, and that Bain had no further obligation to retain documents in connection with the case. Metts Aff., ¶ 5, and Ex. "E" thereto. Counsel for Spartanburg issued the *Kinetic Concepts* Subpoena, and is well aware of the details of Bain's involvement. Moreover, Bain's efforts in response to a separate third-party subpoena bears no possible relevance to the present litigation. It is difficult to imagine a more burdensome request than to first require third-party production and testimony, and then to demand testimony about it.

5.    Bain's Work for Hillenbrand

Finally, the 30(b)(6) Subpoena seeks overly broad testimony with respect to Bain's work for Hillenbrand, including "competitive strategies and tactics," "sales and marketing practices," and "pricing and discount practices" (No. 4); bundling and join incentives programs, regardless of product (No. 6); exclusivity provisions (No. 7); value achieved for Hill-Rom (No. 14); and all communications with Hillenbrand (No. 15). See Metts Aff. ¶ 2, and Ex. "A" thereto. The purported scope of discovery would require Bain to designate an employee/employees to testify regarding more than a decade of Bain's work for Hillenbrand. See Rosenberg Aff., ¶ 2. The

underlying litigation relates to beds, which is covered by Request No. 5 alone: "Work and projects conducted for Hill-Rom relating to its Hospital Beds, Specialty Beds, and/or Architectural Products…." Metts Aff., ¶ 2, and Ex. "A" thereto. Accordingly, Bain asks this Court to restrict Plaintiff's questioning to those questions reasonably calculated to lead to the discovery of evidence relating to those products. Fed. R. Civ. P. 45(c)(3)(A); see Heidelberg Ams., Inc., 333 F.3d at 41-42.

**B.    Compliance with the 30(b)(6) Subpoena would unduly burden Bain.**

For the reasons detailed above, testimony beyond Bain's work for Hillenbrand relating to the relevant products is irrelevant to the underlying litigation and would therefore provide no conceivable benefit, other than allowing the Plaintiff to conduct a fishing expedition. By contrast, requiring Bain to designate a witness to testify to the twenty overbroad categories would cause it significant burden, including the time necessary to prepare witnesses on topics unrelated to the litigation, the disruption to Bain's business in order for the witnesses to attend and testify at the deposition, and the potential damage to Bain's client relationships if it must provide broad testimony on every aspect of its client and work, unlimited by the actual subject of the litigation. Because the real and significant harm to Bain of the proposed discovery outweighs any illusory benefit to the Plaintiff, the Subjects for Deposition contained in the 30(b)(6) Subpoena should be limited to Bain's work for Hillenbrand that relates to the subject of the litigation. Fed. R. Civ. P. 26(b)(2)(iii). See Heidelberg Ams., Inc., 333 F.3d at 41-42; Blount International Ltd. v. Schuylkill Energy Resources Inc., 124 F.R.D. 523, 526 (D. Mass. 1989).

**C.    The Documents Requested by the 30(b)(6) Subpoena Should be Narrowed to Subjects Relevant to the Underlying Litigation.**

The 30(b)(6) Subpoena also commands production of documents relating to each of the overbroad subjects discussed above. See Metts Aff., ¶ 2, and Ex. "A" thereto. Bain has already

produced documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products --

the products identified by Plaintiff in its several subpoenas and that relate to the litigation. For

the reasons discussed in section I(A) and (B), above, and in Bain's Memorandum in Support of

its Motion to Modify Third Party Subpoena, filed with this Court on August 31, 2005, production

of additional documents unrelated to the underlying litigation would unduly burden non-party

Bain, and the 30(b)(6) Subpoena should be narrowed accordingly.

## II.    The Rigby Subpoenas should be quashed because they are burdensome and duplicative of both the 30(b)(6) Subpoena and the Document Subpoena.

### A.    The Deposition Subpoenas to Darrell Rigby are duplicative of the 30(b)(6) Subpoena.

Fed. R. Civ. P. 30(b)(6) is intended to "protect[] the corporation or agency by

eliminating unnecessary and unproductive depositions." Mitsui & Co. (U.S.A.), Inc. v. Puerto

Rico Water Resources Authority, 93 F.R.D. 62, 64 (D.P.R. 1981). To this end, duplicative and

cumulative subpoenas to a non-party constitute an undue burden and are not permitted. See

Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001).

Plaintiff has served a 30(b)(6) Subpoena on Bain seeking testimony on, *inter alia*, Bain's

work for Hill-Rom. Testimony, required to be made on behalf of Bain, will necessarily

encompass any work Mr. Rigby performed. Mr. Rigby worked on only a small subset of Bain's

work for Hillenbrand and therefore has only limited information regarding Bain's work for

Hillenbrand. Spartanburg has not articulated any reason why Mr. Rigby's testimony is necessary

in addition to the 30(b)(6) deposition. Mr. Rigby is a Bain vice-president with a rigorous work

and travel schedule. Requiring him to unnecessarily miss a day of work to testify to matters that

will be covered by Bain's 30(b)(6) designee would impose an undue burden on Mr. Rigby and

his employer. Because any relevant testimony from Mr. Rigby can be obtained through

Spartanburg's 30(b)(6) deposition, the Rigby Subpoenas are cumulative, unduly burdensome and should be quashed. See Ameristar, 244 F.3d at 193.

### B. The Requests for Documents Should Be Limited to Those that Reasonably Relate to the Subject Matter of the Litigation.

Exhibit 1 to both Rigby Subpoenas seeks production of twelve categories of documents. Metts Aff., ¶ 3 and Ex. "B" and "C" thereto. The first eleven categories of documents are identical to the first eleven categories sought in the Document Subpoena, which is the subject of Bain's Motion to Modify Third Party Subpoena, filed with this Court on August 31, 2005. Bain objects to these requests for the same reasons detailed in its previous Memorandum in Support of Motion to Modify Third Party Subpoena, which is hereby incorporated by reference. See Exhibit 1. Spartanburg's roundabout attempt to seek the same documents that are the subject of a pending motion is duplicative and impermissible. Spartanburg cannot avoid the requirement that its requests be reasonable, relevant and reasonably calculated to lead to the discovery of admissible evidence by issuing multiple subpoenas for the same documents.

Request No. 12 seeks "all documents relating to Fredrick W. Rockwood, including relating to your relationship with him." Metts Aff., ¶ 3, Ex. "B" and "C" thereto. Mr. Rigby's relationship to Mr. Rockwood, Hillenbrand's president and CEO, is irrelevant to the issue of Hillenbrand's pricing practices with respect to beds. Pursuant to Spartanburg's Document Subpoena, Bain has produced documents related to Hospital Beds, Specialty Beds and Architectural Products. If any such document related to Fredrick Rockwood, then it was produced. If any documents relating to Mr. Rockwood exist that do not pertain to the relevant products, then they are beyond the scope of permissible discovery and should not be required to be produced. Allowing Plaintiff to conduct a fishing expedition by requiring Mr. Rigby to search more than a decade of documents for a category of documents unrelated to the litigation

would impose an undue burden on Mr. Rigby and Bain. Heidelberg Ams., Inc., 333 F.3d at 41-42 (finding a significant burden where a nonparty subpoena "encompasse[d] a decade's worth of material" and asked for "all documents received, reviewed or generated by [the non-party]" relating to "any type of business affiliation with [a named party].").

### III.    Spartanburg Should Bear the Resulting Fees and Costs

The Federal Rules of Civil Procedure require a party issuing a third-party subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena," and instruct the court on behalf of which the subpoena was issued to "enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." Fed. R. Civ. P. 45(c)(1). This Court has broad discretion to reallocate expenses in connection with discovery. See In re Indian Motorcycle Litig., 307 B.R. 7, 19 (D. Mass. 2004) (citing Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 930 (1st Cir. 1991).

Allocation of costs to Spartanburg, the issuing party, is appropriate here, where Plaintiff has taken affirmative steps to *impose* undue burden and expense. First, Plaintiff issued a subpoena for all documents in Bain's possession relating to more than a decade of work for Hillenbrand, a technique that has been disallowed by this Circuit. See Heidelberg Ams., Inc., 333 F.3d at 41-42. When Bain objected, Plaintiff did not seek resolution of the issue, but instead issued three additional subpoenas, seeking testimony and categories of documents even broader than those originally requested. Rather than simply objecting to the overbroad subpoena and requiring Plaintiff to move to compel production, as it is entitled to do under Rule 45, Bain has repeatedly tried to reach compromise by searching all Hillenbrand documents and producing

those documents in its possession related to the underlying litigation. In return for its efforts, it has received five months of letters and phone calls, demanding more and more documents.

Over the past five months, nonparty Bain has incurred substantial costs in connection with time spent gathering and reviewing a decade's worth of documents, entertaining and responding to the repeated and often unjustified requests of Spartanburg, and the necessity of ultimately resolving the attendant issues in this Court. Armed with the knowledge that Hillenbrand is responsible for Bain's expenses pursuant to agreement between the parties, August 31, 2005 Metts Aff., ¶ 7 and Ex. "F" thereto, Spartanburg is seemingly using third-party discovery of Bain to indirectly run up its opponents' litigation costs. In light of Spartanburg's continuing refusal to limit the burden and expense associated with discovery to third-party Bain, the Plaintiff -- not Bain or its client -- should bear the cost of the resulting attorney's fees.

## CONCLUSION

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), Bain asks this Court to quash or modify the 30(b)(6) Subpoena and the Rigby Subpoenas, and to allocate to Spartanburg the reasonable attorneys' fees and costs related to all Subpoenas issued by Spartanburg, including in connection with the August 31st and present motions.

Respectfully Submitted,

BAIN & COMPANY

By its attorneys,

_/s/ Neal E. Minahan_____
Amanda J. Metts (BBO# 639850)
McDermott Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
(312) 984-7748

Neal E. Minahan (BBO# 661371)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
617.535.4481

Dated: September 13, 2005

## CERTIFICATE OF SERVICE

I, Neal E. Minahan, certify that on September 13, 2005, I caused a true copy of this document is to be served via Federal Express as follows:

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

/s/ Neal E. Minahan_____
Neal E. Minahan

BST99 1472198-2 054168 0065

- 13 -

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SUBPOENA:<br><br>SPARTANBURG REGIONAL HEALTHCARE SYSTEM, on behalf of itself and others similarly situated,<br><br>           Plaintiff,<br><br>v.<br><br>HILLENBRAND INDUSTRIES, INC.,<br>HILL-ROM, INC., and<br>HILL-ROM COMPANY, INC.,<br><br>           Defendants. | Civil Action No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO MODIFY THIRD-PARTY SUBPOENA

Bain & Company ("Bain"), by and through its attorneys, hereby submits this Memorandum of Law in Support of its Motion to Modify Third-Party Subpoena, in connection with the subpoena duces tecum (the "Subpoena") issued by this Court and served by the Plaintiff in an action pending in the U.S. District Court for the District of South Carolina and captioned, *Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, v Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action No 7:03-2141-26.

### INTRODUCTION

Non-party Bain seeks relief from an overzealous quest for third-party discovery that has spanned the course of more than five months. With no apparent exercise of discretion as to relevance, plaintiff Spartanburg Regional Healthcare System ("Spartanburg") served a third-party subpoena on Bain, requesting every single document relating to consultant Bain's work for

its client, Hillenbrand, over the last *twenty years*. Bain made timely objection to the breadth of the Subpoena, but nevertheless produced documents that reasonably related to Hospital Beds, Specialty Beds, and/or Architectural Products, the subject matter of the underlying litigation.

To date, Bain has produced four boxes of hard copy documents and four CDs totaling over 11,000 pages of documents; Bain has re-produced certain documents in electronic format that it had previously produced in hard copy; Bain has entertained countless follow-up demands from issuing counsel far beyond documents conceivably relating to the subject matter of the underlying lawsuit. More than five months after issuing the Subpoena, Plaintiff now demands yet another production of documents, including several categories of documents raised for the very first time. Any further review or production of documents wholly unrelated to the underlying litigation would place serious and undue burden on Bain. Bain therefore requests that this Court exercise discretion where the Plaintiff has not, and narrow the scope of the Subpoena to the subject matter of the underlying litigation.

## FACTUAL BACKGROUND

### Spartanburg Indiscriminately Requests Twenty Years of Bain Documents

On March 28, 2005, Spartanburg served Bain with a third-party subpoena, relating to Bain's client, Hillenbrand Industries, Inc., a party to the above-captioned litigation. Among other categories of documents, the subpoena sought "[a]ll documents relating to Hill-Rom..." from 1985 to the present. See Affidavit of Amanda J. Metts, Esq. ("Metts Aff."), ¶ 2, and Ex "A" thereto A review of the underlying Complaint revealed that the underlying litigation is an antitrust action brought by Spartanburg alleging antitrust violations surrounding the manufacturing and sales of hospital beds and specialty beds. See Metts Aff., ¶ 3 and Ex. "B" thereto. The Subpoena was not limited or tailored to the subject matter of the litigation. On

April 8, 2005, Bain objected to the Subpoena as "overly broad and unduly burdensome in that it

seeks documents that are irrelevant to a claim or defense of any party and/or not reasonably

calculated to lead to discovery of admissible evidence." See Metts Aff., ¶ 4, and Ex. "C" thereto.

Notwithstanding its objections, Bain produced all documents related to "Hospital Beds,

Specialty Beds, and/or Architectural Products" – the products specified throughout the

Subpoena, despite Plaintiff's initial request for "all documents " See Metts Aff., ¶¶ 5 and 6, and

Ex. "D" and "E". Specifically, on April 29, 2005, Bain produced four boxes of post-1999

documents. See Metts Aff., ¶ 5, and Ex. "D" thereto. On May 13, 2005, Bain produced all pre-

1999 documents related to Hospital Beds, Specialty Beds and/or Architectural Products. See

Metts Aff., ¶ 6, and Ex. "E" thereto  Though the Subpoena did not mandate any particular

production format, Spartanburg orally requested, after Bain's first production, that Bain produce

the pre-1999 documents in their original (whether hard copy or electronic) format. Accordingly,

Bain produced the pre-1999 documents electronically. Bain did not produce documents related

to funeral services and products, such as caskets, cremation urns and funeral home financial

services, or those limited to medical devices, such as surgical equipment, pumps and patient

monitors, which are completely unrelated to Hospital beds, Specialty beds, and/or Architectural

Products. See Metts Aff., ¶ 5 and 6, and Ex. "D" and "E" thereto.

### Bain's Continuing Efforts to Reasonably Comply with the Subpoena

Spartanburg next demanded that Bain re-produce all previously-produced post-1999

documents in electronic format. Despite Bain's position that it was not required to produce

electronically absent any express request for electronic production,[1] and the additional work

---

[1] See Crossarm Co. v. Chem. Specialties, Inc., 2004 U S Dist LEXIS 5381, 2-3 (D Wis , 2004) (Rule 34 does not require a respondent to produce its evidence in the format in which the respondent stores it  "Neither the letter nor the spirit of Rule 34 mandates that a party is entitled to production in its preferred format ")

required to identify and copy the previously-produced documents for re-production, Bain re-produced electronically all previously-produced spreadsheets and databases on June 30, 2005. See Metts Aff., ¶ 10, and Ex. "I" thereto.

Since Bain's several productions, Spartanburg has issued repeated demands for assurance that all documents were searched, and demanded production of documents that simply do not exist. For example, on June 3, 2005, Spartanburg demanded production of "Black Books," which were hard copy folders once used to preserve Bain's overhead projector slides With the advent of electronic storage, Black Books have become obsolete and are no longer maintained under Bain's current document retention policy. See Metts Aff , ¶ 7, and Ex. "F" thereto. Bain responded in writing that Black Books were no longer maintained under its current document retention policy, which was produced. See Metts Aff., ¶ 8, and Ex. "G" thereto. Nevertheless, on June 20, 2005, Spartanburg again demanded explanation for the absence of Black Books in Bain's productions, necessitating an additional response by Bain. See Metts Aff., ¶ 9, and Ex "H" thereto. This is just one such example of several months of "follow up" issues.

In both the June 3, 2005 and June 20, 2005 letters, Spartanburg requested further production of documents relating to the concepts of "joint incentives" and "bundling." See Metts Aff , ¶ 7 and 8, and Ex. "F" and "H" thereto. To the extent that any such documents related to Hospital beds, Specialty beds, and/or Architectural Products, they had been produced. Spartanburg, however, demanded production of all such documents, regardless of what products were being bundled. Once again, Bain attempted to compromise, and produced documents that relate to bundling/joint incentives, including those that do not expressly mention or discuss hospital beds, specialty beds, and/or architectural products, on August 19, 2005 Bain did not, however, produce documents relating to bundling/joint incentives of identifiable, unrelated

- 4 -

products such as funeral services, medical technologies and in-patient IT solutions, which in no way relates or potentially relates to the subject matter of the underlying litigation. See Metts Aff., ¶ 12, and Ex. "J" thereto.

### Spartanburg's Latest Demands

Despite several representations that the remaining "outstanding issues" with Bain's document product were limited and few, on August 29, 2005 -- five months after serving the Subpoena -- Spartanburg demanded production of several categories of documents, several of which it raised for the first time. These latest requests include, *inter alia*: (1) all documents, regardless of subject matter, from Bain's first engagement for Hillenbrand; (2) all documents concerning joint incentives and bundling, no matter that the products being bundled are unrelated to Hospital Beds, Specialty Beds, and/or Architectural Products; (3) all blank templates from Bain's general computer system that Bain used in its work for Hillenbrand; (4) Bain's "compensation records" in connection with its work for Hillenbrand; and (5) all documents that do not make reference to any product at all. See Metts Aff., ¶ 13.

Bain's efforts to cooperate and continuing compromises have been made in an effort to end its involvement in a litigation that does not concern it by avoiding, to the extent possible, the need for motion practice. Spartanburg's latest demands make clear, however, that it will not be satisfied short of production of twenty years of Bain documents, regardless of their relevance -- or irrelevance -- to the litigation. Unable to keep up with Plaintiff's continuing and ever-changing demands for additional documents, non-party Bain seeks protection and finality from this Court

## ARGUMENT

### The Subpoena Should be Narrowed to the Subject Matter of the Litigation, Because the Burden on Non-Party Bain Outweighs Any Conceivable Benefit of the Production of Irrelevant Documents

The scope of discovery is not unlimited. See Gagne v. Reddy, 104 F.R.D. 454, 457 (D

Mass. 1984). All discovery is restricted to requests that are, at the least, "reasonably calculated

to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Further limitations on

discovery are appropriate whenever "the burden or expense of the proposed discovery outweighs

its likely benefit." Fed. R. Civ. P. 26(b)(2)(iii).

Even broader restrictions are appropriate when a nonparty is the target of discovery. See

Blount International Ltd. v. Schuylkill Energy Resources Inc., 124 F.R.D. 523, 526 (D. Mass.

1989); Fed. R. Civ. P.45, 1991 Advisory Committee Notes, ¶1(1)("The purpose[ of the revision

of Rule 45 is] to clarify and enlarge the protections afforded persons who are required to assist

the court by giving information. ."). To that end, "the court by which a subpoena was issued

shall quash or modify the subpoena if it... subjects a person to undue burden." Fed. R. Civ. P.

45(c)(3)(A); Digital Equipment Corp. v. Currie Enterprises, 142 F.R.D. 8, 15 (D. Mass. 1991);

Church of Scientology v. IRS, 138 F.R.D. 9, 10 (D. Mass. 1990)("A court that issues a subpoena

has the inherent power to vacate it."). Concern for the burden thrust upon non-parties is a factor

entitled to special weight in evaluating the burden on the parties. Heidelberg Ams., Inc. v.

Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41-42 (1st Cir. 2003) (finding a significant burden

where a nonparty subpoena "encompasse[d] a decade's worth of material" and asked for "all

documents received, reviewed or generated by [the non-party]" relating to "any type of business

affiliation with [a named party].")

The underlying litigation concerns antitrust issues surrounding the manufacturing and sale of hospital beds and specialty beds. Accordingly, proper discovery is limited to requests reasonably calculated to lead to the discovery of admissible evidence related to those products. See Fed. R. Civ. P. 26(b)(1). Plaintiff's own repeated mention of "Hospital Beds, Specialty Beds, and Architectural Products" in the Subpoena seems to concede that those are the products at issue. See Metts Aff, ¶ 2, and Ex. "A" thereto. Bain has produced all such documents, as well as all documents that relate generally to the concepts of joint incentives or bundling, without reference to any particular product. Bain has also produced summaries of all engagements undertaken at any time within the twenty-year time frame for Hillenbrand.

Bain has not provided documents limited to the subject of funeral services and products, such as caskets, cremation urns and funeral home financial services, or those limited to medical devices, such as surgical equipment, pumps and patient monitors, other medical technologies or in-patient IT solutions. These documents do not relate in any way to the underlying litigation, nor can Plaintiffs explain how documents relating to caskets or medical devices and technologies will lead to the discovery of admissible evidence regarding beds. Simply put, information that these types of documents will generate have nothing to do with the issues in the pending litigation and therefore do not fall within the proper scope of discovery. Fed. R. Civ. P. 26(b)(1). Especially where Bain, a non-party, is the target of these overbroad requests, it is appropriate to restrict the scope of discovery. See Blount International Ltd., 124 F.R.D. at 526.

The present case is exactly the one contemplated by Rule 45's protections. Despite Bain's complete production of documents relating to the underlying litigation, Plaintiff has issued repeated demands for more and more information, each necessitating a new review of two decades worth of documents. Five months after issuing its Subpoena, Plaintiff now seeks

production of several brand new categories of information. These continued demands are not only time-consuming, but disruptive to Bain's business. Plaintiff has suggested in correspondence that Bain can experience no burden in responding to the Subpoena, because it passes its costs to Hillenbrand per its engagement letter. See Metts Aff., ¶ 9, and Ex. "H" thereto. Plaintiff ignores, however, the potential strain -- even harm -- to Bain's client relationships if it is required to make a wholesale production of its clients' records, without regard to their relevance to the litigation with respect to which they are requested.

Bain has provided all documents that relate to the underlying litigation  Any further burden imposed by continuing demands for documents unrelated to the litigation simply cannot justify the additional burden, both in terms of disruption and client relations, that would result.

### CONCLUSION

Pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), Bain asks this Court to modify the Subpoena to include only requests for documents related to Hospital Beds, Specialty Beds, and/or Architectural Products -- categories identified by the Plaintiff itself as related to the litigation -- and to relieve Bain from any further demands for production by the Plaintiff.

Respectfully Submitted,

BAIN & COMPANY

By its attorneys,

Amanda J. Metts (BBO# 639850)
McDermott Will & Emery LLP
227 W. Monroe
Chicago, IL 60606
(312) 984-7748

Neal E. Minahan (BBO# 661371)
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109
617 535 4481

## CERTIFICATE OF SERVICE

I, Neal E. Minahan, certify that on August 31, 2005, I caused a true copy of this document is to be served via Federal Express as follows:

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D C. 20036-1564

Neal E. Minahan

BST99 1471274-3 054168 0065

- 9 -

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE SUBPOENA: ) ) ) SPARTANBURG REGIONAL HEALTHCARE ) SYSTEM, on behalf of itself and others ) similarly situated, ) ) Plaintiff, ) v. ) ) HILLENBRAND INDUSTRIES, INC., ) HILL-ROM, INC., and ) HILL-ROM COMPANY, INC., ) ) Defendants. ) ) | Civil Action No. _____ |

### AFFIDAVIT OF AMANDA J. METTS, ESQ.

I, Amanda J. Metts, hereby depose and state as follows:

1.    I am an attorney in good standing in the Commonwealth of Massachusetts, Board of Bar Overseers No. 639850. I am counsel of record for nonparty Bain & Company ("Bain").

2.    Plaintiff Spartanburg Regional Healthcare System ("Spartanburg") served a third-party subpoena (the "Subpoena") on Bain on March 28, 2005 in an action pending before the U.S. District Court for the District of South Carolina and captioned, *Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, v Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action No. 7:03-2141-26. A true and accurate copy of the Subpoena is attached hereto as Exhibit A.

3.    A true and accurate copy of the Complaint in the underlying civil action is attached hereto as <u>Exhibit B</u>.

4.    Bain objected to the breadth of the Subpoena in writing pursuant to Fed. R. Civ. P. 45 on April 8, 2005. A true and accurate copy of Bain's Objection is attached hereto as <u>Exhibit C</u>.

5.    Notwithstanding its objections, on April 29, 2005, Bain produced all post-1999 documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products, the specific category of documents identified by Plaintiff in the Subpoena, and which reasonably related to the underlying litigation. A true and accurate copy of Bain's April 29, 2005 production cover letter is attached hereto as <u>Exhibit D</u>.

6.    On May 13, 2005, Bain produced all pre-1999 documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products in electronic format. A true and accurate copy of Bain's May 13, 2005 production cover letter is attached hereto as <u>Exhibit E</u>.

7.    In a letter dated June 3, 2005, Spartanburg raised several issues regarding Bain's production and demanded further production. A true and accurate copy of the June 3, 2005 letter is attached hereto as <u>Exhibit F</u>.

8.    Bain's June 8, 2005 response to that letter is attached hereto as <u>Exhibit G</u>.

9.    In a letter dated June 20, 2005, Spartanburg responded to Bain's June 8, 2005 letter and reiterated the same issues and demands raised in the June 3, 2005 letter. By its June 20, 2005 letter, Spartanburg also demanded electronic re-production of all previously-produced post-1999 documents. A true and accurate copy of the June 20, 2005 letter is attached hereto as <u>Exhibit H</u>.

10.    Bain re-produced all previously-produced post-1999 spreadsheets and databases in their electronic format on June 30, 2005. A true and accurate copy of Bain's June 30, 2005 production cover letter is attached hereto as Exhibit I.

11.    In its letters of June 3, 2005 and June 20, 2005, Spartanburg also requested production of documents relating to the concepts of "joint incentives" and "bundling," regardless of what products were being bundled. See Exhibits F and H.

12.    Bain produced documents that relate to bundling/joint incentives, including those that did not expressly mention or discuss hospital beds, specialty beds, and/or architectural products, on August 19, 2005. Bain did not, however, produce documents relating to bundling/joint incentives of identifiable, unrelated products such as funeral services, medical technologies and in-patient IT solutions, which in no way relates to the subject matter of the underlying litigation. A true and accurate copy of Bain's August 19, 2005 production letter is attached hereto as Exhibit J.

13.    On August 29, 2005, in an effort to resolve what had previously been identified as the remaining outstanding issues with respect to Bain's production, I participated in a telephone conference with Spartanburg's counsel. On the call, counsel requested a number of additional categories of documents, some for the very first time. The categories include, *inter alia*:

(a)    all documents, regardless of subject matter, from Bain's first engagement for Hillenbrand;

(b)    all documents concerning joint incentives and bundling, no matter that the products being bundled are unrelated to Hospital Beds, Specialty Beds, and/or Architectural Products;

(c)    all blank templates from Bain's general computer system that Bain used in any of its work for Hillenbrand;

-3-

(d)     Bain's "compensation records" in connection with its work for Hillenbrand; and

(e)     all documents that do not make reference to any product at all.


Signed under the pains and penalties of perjury this 31st day of August 2005.


_____
Amanda J. Metts

CHI99 4520824-1 054168 0065

-4-

# EXHIBIT A

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

SPARTANBURG REGIONAL HEALTHCARE SYSTEM,
ON BEHALF OF ITSELF AND OTHERS SIMILARLY
SITUATED,

**SUBPOENA IN A CIVIL CASE**

v.

HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC.,
AND HILL-ROM COMPANY, INC.,

CASE NUMBER: **Civil Action 7:03-2141-26***
*Pending in the District Court for the District of South Carolina,
Spartanburg Division

TO:   Custodian of Records for Bain & Company          Registered Agent:  Corporation Service Company
      131 Dartmouth St.                                 84 State Street
      Boston, MA  02116                                 Boston, MA  02109

☐      YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify
       in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐      YOU ARE COMMANDED to appear at the place, date and time specified below to testify in the above case

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒      YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
date and time specified below (list documents or objects):   See the Attached Exhibit 1

| PLACE   Bain & Company | DATE AND TIME |
|---|---|
|    131 Dartmouth St. | April 18, 2005/9:00 n.m. |
|    Boston, MA  02116 |  |

☐      YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

       Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify.  FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _[signature]_  ATTORNEY FOR THE PLAINTIFF | 3/28/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
John G. Felder, Jr
McGowan, Hood, Felder & Johnson
3710 Landmark Drive, Suite 114
Columbia, SC  29204          803-779-0100

(See Rule 45 Federal Rules of Civil Procedure Parts C & D on Reverse)

**EXHIBIT 1**

## SUBPOENA FOR PRODUCTION OF DOCUMENTS

## I.    DEFINITIONS

1.    "Architectural Products" means any head wall unit which is designed for use in any Patient Care Setting (as defined below) and/or any in-room furniture used in any Patient Care Setting, such as overbed tables, end tables, chairs, cabinets, or any other furniture used in Patient Care Settings

2.    "Group Purchasing Organization" ("GPO") means any organization as well as their affiliated and/or related organizations, owners, members, and shareholders, that negotiates pricing and/or other terms and enters into agreements with manufacturers and/or distributors of medical related products and services. Such Group Purchasing Organizations shall include, not by way of limitation, Novation, Premier, Premier Purchasing Partners, MedAssets, Amerinet, Healthtrust, Broadlane, Consorta, HealthCare Purchasing Partners International, Innovatix, AllHealth, Hospital Purchasing Service, Yankee Alliance, National Capital Area Shared Services, GNYHA Ventures, NJHA Corporate Services, Shared Services Healthcare, Coordinated Healthcare Services, Health Affiliated Services/Hendrick Medical Center, Mid-Atlantic Group Network of Shared Services and National Purchasing Alliance

3.    "Hill-Rom" means Hillenbrand Industries, Inc , Hill-Rom, Inc , and Hill-Rom Company, Inc , their predecessors, including but not limited to, Support Systems International, Inc ("SSI"), Mediq, or Mediq/PRN, or successors in interest, any parent, subsidiary, affiliate and division, and any present or former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS** – Page 1

expense reports, budgets, press releases, periodicals, newsletters, notations, papers, memoranda, interoffice communications, handbooks, summary plan descriptions, agreements, contracts, books, records, minutes of meetings, memorials of any type of personal or telephone conversations, meetings or conferences, reports, evaluations, receipts, claim forms, bills, statements, affidavits, diaries, calendars, desk pads, appointment books, transcripts, worksheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, r ecords o f p ayments, d isbursements a nd r eimbursements, a nd a ll d ocuments u nderlying, supporting or used in the preparation of any part of any other documents. "Documents" include, but are not limited to, carbon copies or blind carbon copies of documents sent to, or in Your possession, custody or control, where the correspondence or other document was addressed to some other person.

8       "Refer or relate to" means referring to, reflecting, or related in any manner logically, factually, indirectly or directly to the matters discussed

9.      "You" or "Your" means Bain & Company, its predecessors or successors in interest, any parent, subsidiary, affiliate and division, and any present and former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf

II.    INSTRUCTIONS

1       All documents within Your possession, custody or control, or that of any related entity, shall be produced  A document is deemed to be in Your control if You have the right to secure the document, or a copy thereof, from another person having actual possession thereof  If You know or believe that there may be, or were, documents otherwise meeting the terms of a particular request, but which are not within Your custody, possession or control, or which no longer exist, please so state in Your response to that particular request.

<u>EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS</u> – Page 3

2    Any documents responsive to this request which, nonetheless, are not produced by a reason or a claim of privilege, work product, or for any other reason, shall be identified in writing by (1) date; (2) author; (3) recipient; (4) general subject matter; (5) identity of person or persons to whom the contents of the document have already been revealed; (6) the identity of the person or entity now in possession or control of the document; and (7) the basis upon which it is being withheld

3    Whenever appropriate, the singular form of a word should be interpreted in the plural and vice versa as to encompass all potentially responsive information

4    Whenever appropriate, the conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa as to encompass all potentially responsive information.

5    Unless otherwise indicated, You should respond to these document requests for the period of January 1, 1985 through the present. However, if a document prepared or dated prior to January 1, 1985, is necessary for a complete or correct understanding of any document otherwise covered by these requests, such earlier documents shall be produced as well. If a document is undated or incorrectly dated, and the time of its preparation cannot be determined or is in doubt, the document should be produced if otherwise responsive to this request.

## III.    DOCUMENTS TO BE PRODUCED

1.    All documents relating to Hill-Rom, including documents concerning its competitive strategies and tactics, its sales and marketing practices, its pricing and discount practices, and the quality of its Hospital Beds, Specialty Beds, and/or Architectural Products

2    All documents relating to the distribution channels for Hill-Rom's Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to Hill-Rom's

EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 4

relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

      3.     All documents relating to the competitive strategies and tactics, sales and marketing practices, pricing and discount practices, and the quality of the products of any other manufacturer or vendor of Hospital Beds, Specialty Beds, and/or Architectural Products

      4.     All documents relating to the distribution channels of other manufacturers or vendors of Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to their relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

      5.     All documents collected and/or created in preparation of any project for which you were retained by Hill-Rom, including all notes and summaries of interviews, all documentation of any communications related thereto, all documents collected whether or not ultimately referenced, and all drafts and final versions of any reports and/or presentation materials prepared for Hill-Rom.

      6.     All documents received by you from Hill-Rom

      7.     All documents relating to any analysis of, definition of , or reference to the market(s) for Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to any analysis of prices for such products, demand by customers for such products, sales forecasts for such products, description of the various patient care settings in which such products are used and the needs and/or demands for such products in each setting, the identification of manufacturers of these products, and/or the market share of any manufacturer of such products

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS** – Page 5

8    All documents relating to the actual or potential entry into, or exit from, a market involving the sale, lease, or rental of Hospital Beds, Specialty Beds, or Architectural Products of a current or potential manufacturer and/or vendor of such products, including documents relating to the impact of any competitive practices on such entry into or exit from such markets.

9.    All documents relating to any barriers to entry in any market for Hospital Beds, Specialty Beds, or Architectural Products.

10.    All documents identifying the person(s) who performed work related to any project(s) for which you were retained by Hill-Rom.

11.    All documents reflecting your document retention policies and/or practices.

12.    All documents you produced in connection with the case of *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, docket no SA-95-CA-0755 (W.D. Tex.)

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS** – Page 6

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and other similarly situated, | ) ) ) ) | |
| Plaintiff | ) ) | |
| vs | ) ) | C A No 7:03-2141-26 |
| Hillenbrand Industries, Inc , Hill-Rom, Inc and Hill-Rom Company, Inc , | ) ) ) | |
| Defendants | ) | |

### NOTICE OF SUBPOENA

YOU WILL PLEASE TAKE NOTICE that pursuant to Fed R Civ P 34(c) and 45,

Spartanburg Regional Healthcare System, by its counsel, will serve the attached subpoena for the

production of documents upon the Custodian of Records for Bain & Company this week

Respectfully submitted, March _28_, 2005

John G Felder, Jr
Fed. ID #6441
McGOWAN, HOOD, FELDER & JOHNSON
3710 Landmark Drive, Suite 114
Columbia, South Carolina 29204
Telephone:(803) 779-0100
Facsimile: (803) 787-0750
jfelder@mcgowanhood.com

AND

Chad McGowan
Fed ID #6620
McGOWAN, HOOD, FELDER & JOHNSON
1539 Health Care Drive
Rock Hill, South Carolina 29732
Telephone:(803) 327-7800
Facsimile: (803) 328-5656
cmcgowan@mcgowanhood.com

AND

John G Felder, Sr
Fed ID #784
FELDER & McGEE, LLP
Post Office Box 346
St Matthews, South Carolina 29135
Telephone:(803) 874-2010
Facsimile: (803) 655-7167
johnfelder@sc.rr.com

AND

Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M Stenerson, Admitted *Pro Hac Vice*
Michael L Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N W
Washington, DC 20036-1564
Telephone:(202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R Laurence Macon, Admitted *Pro Hac Vice*
Karen L Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, Texas 78205-3732
Telephone:(210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball
Admitted *Pro Hac Vice*
Thomas S Scott, Jr
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone:(865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com

ATTORNEYS FOR THE PLAINTIFFS

Date

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff's Notice of Subpoena was served via electronic mail and first-class mail delivery this 28 day of March 2005, to the following:

Frank S. Hollerman, III
J. Theodore Gentry
WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
44 E. Camperdown Way
Post Office Box 728
Greenville, SC 29602-0728

ATTORNEYS FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

Donald L. Flexner
BOIES, SCHILLER & FLEXNER, LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, DC 20015

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

Richard B. Drubel
BOIES, SCHILLER & FLEXNER, LLP
26 South Main Street
Hanover, NH 03755

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

# EXHIBIT B

NOV-24-2004(WED) 13:55     Felder and McGee LLP              (FAX)803 655 7167              P.002/019

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA**

Civil Action No. 7 03 2141 20

**ORIGINAL FILED**

OCT 2 2 2003

LARRY W. PROPES, CLERK
COLUMBIA, SC

| | |
|---|---|
| Spartanburg Regional ) | |
| Healthcare System, on behalf of itself ) | |
| and others similarly situated, ) | **AMENDED COMPLAINT** |
| Plaintiff, ) | |
| ) | **(Jury Trial Demanded)** |
| vs. ) | |
| ) | |
| Hillenbrand Industries, Inc., ) | |
| Hill-Rom, Inc., and ) | |
| Hill-Rom Company, Inc., ) | |
| Defendants. ) | |

### Introduction

This is an antitrust case brought by the Spartanburg Regional Healthcare System, on behalf of itself and other purchasers of hospital products, against Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., (collectively referred to as Hill-Rom), based on the Sherman and Clayton antitrust acts. The gravamen of the complaint is that Hill-Rom has used its monopoly power in the regular Hospital Bed Market to attempt to monopolize and to tie the sales of Specialty Hospital Beds. Plaintiff class seeks injunctive and monetary relief, as well as attorneys fees and costs.

### I. PARTIES

1.     Plaintiff Spartanburg Regional Healthcare System ("SRHS"), is a quasi-governmental, not for profit, entity in the business of providing comprehensive healthcare. Plaintiff's main business location is in Spartanburg, Spartanburg County, South Carolina.

2.     Defendant Hillenbrand Industries, Inc. ("Hillenbrand") is an Indiana corporation with its principal place of business in Batesville, Indiana. Hillenbrand can be served with process by serving its registered agent, Mark R. Lindenmeyer, at 1060 State Route 46 E., Batesville, Indiana 47006. Hillenbrand is a conglomerate and owns a number of companies, including Hill-Rom Company, Inc. and was the owner of Hill-Rom, Inc.

3.     Defendant Hill-Rom Company, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana. Hill-Rom can be served with process by serving its registered agent, CT Corp. System, 75 Beattie Place, Two Shelter Centre, Greenville, SC. Hill-Rom Company, Inc. is, upon information and belief, a wholly owned subsidiary of Hillenbrand Industries. Hill-Rom Company, Inc. is believed to the successor in interest of SSI Medical Services, Inc., a South Carolina corporation. Hill-Rom Company, Inc. is in the business of manufacturing and selling hospital beds. Hill-Rom Company, Inc., upon information and belief, also manufactures and sells hospital room headwall units and other In-room Products.

4.     Defendant Hill-Rom, Inc. is an Indiana corporation with its principal place of business in Batesville, Indiana and can be served with process by serving its registered agent, Mark R. Lindenmeyer at 700 State Route 46 F., Batesville, Indiana 47006. Hill-Rom, Inc. is a wholly owned subsidiary of Hillenbrand Industries, Inc.

## II. JURISDICTION AND VENUE

5.     Subject matter jurisdiction over this complaint is conferred on this Court by § 4 and § 15 of the Clayton Act (15 U.S.C. §§ 15 and 26) and 28 U.S.C. § 1331.

6.    Venue is proper in this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) as

the acts and transactions constituting the violations alleged herein, occurred in part in this

judicial district and the Defendants are found and transact business in this judicial district.

## III. CLASS ALLEGATIONS

7.    This action is brought as a class action pursuant to Fed. R. Civ. Pro. 23. The class

definition is as follows:

> All those purchasers of Hill-Rom Hospital Beds and In-room Products from
> Defendants for the past 4 years where there have been contracts between Defendants and
> the class members, either on behalf of themselves or through purchasing organizations,
> and where those contracts condition discounts on Hill-Rom Hospital Beds and other In-
> room Products on commitments to rent or purchase Specialty Hospital Beds exclusively
> from Defendants.

8.    The class meets the prerequisites to a class action under Fed. R. Civ. Pro. 23(a) in

that: 1) the class is so numerous that joinder of all members is impracticable; 2) there are

common questions of law or fact to the class; 3) the claims and defenses of the representative

parties are typical of the claims or defenses of the class, and; 4) the representative parties will

fairly and adequately protect the interests of the class.

9.    Further, this action meets the requirements of Fed. R. Civ. Pro. 23(b)(2) and

(b)(3). Plaintiff is seeking damages and injunctive relief to prevent future violations of the

Antitrust laws, thus meeting the requirements of Fed. R. Civ. Pro. 23(b)(2). Additionally, this

should be treated as a class action under Fed. R. Civ. Pro. 23(b)(3)

10.    Based on the foregoing, this action should be treated as class action and SRHS

should be certified as the class representative.

3

## IV. NATURE OF TRADE AND COMMENCE

### A. Hospital Beds

11.    Hospital Beds, typically have heavy duty metal frames; are adjustable to different positions by a hand-controlled electric motor; have adjustable side rails; and contain a communication system in one of the side rails which allows for electronic communications from the bed to a nurse's station ("Hospital Beds"). Hill-Rom manufactures Hospital Beds suitable for patient room use in acute care hospitals and sub-acute care facilities ("Hill-Rom Hospital Beds").

12.    Hill-Rom manufactures Hill-Rom Hospital Beds in Batesville, Indiana and Hill-Rom sells them in interstate commerce to acute care hospitals and subacute care facilities throughout the United States, including this judicial district.

### B. Specialty Hospital Beds

13.    Specialty Hospital Beds include: air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds, which are designed for treatment of specific medical conditions such as burns, pressure sores, pulmonary complications or pain management ("Specialty Hospital Beds"). Hill-Rom manufactures and rents certain types of Specialty Hospital Beds ("Hill-Rom Specialty Hospital Beds"). Specialty Hospital Beds sell for between $20,000.00 and $60,000.00. Most of the Specialty Hospital Beds are rented to the customers on a per day basis.

14.    Hill-Rom manufactures Hill-Rom Specialty Hospital Beds in Charleston, South Carolina and distributes those beds in interstate commerce by sale and/or rental to acute care hospitals located throughout the United States, including this judicial district.

4

15.    Specialty Hospital Beds are generally rented on a short-term basis rather than sold to hospitals. In excess of 90% of the commerce in Specialty Hospital Beds is conducted in this manner. The reason for the predominance of short term rental as the preferred method of distribution of Specialty Hospital Beds is that most hospitals do not want to expend the capital necessary to purchase Specialty Hospital Beds and usually are not equipped to properly maintain, decontaminate and store such beds. In addition, short term rental allows the hospitals to have the beds on an "as needed" basis.

16.    The market for Specialty Hospital Beds in the United States historically has been highly competitive and has had a number of competitors. Even at this, Kenetic Concepts, Inc. ("KCI") manufactures high quality and competitive Specialty Hospital Beds. KCI does not however, compete in the regular Hospital Bed and In-room Products Market. The number of competitors in the Specialty Hospital Bed Market has decreased significantly in recent years due, in large part, to the anti-competitive activities of Hill-Rom described in part herein.

### C. Hospital Purchasing Groups

17.    In excess of 70% of the Hospital Bed and Specialty Hospital Bed purchases and rentals are entered into pursuant to master group contracts with hospital purchasing groups. There are approximately 20 national hospital purchasing groups in the United States. Approximately half of these act as purchasing agents for the vast majority of all large hospitals in the United States and each of these hospital purchasing groups represents a significant share of the market demand for Hospital Beds and Specialty Hospital Beds. In this case, Plaintiff is an equity member of a purchasing group known as Premier.

18.     There are two types of hospital purchasing groups. In a "proprietary" group, the member hospitals are all owned by the same entity and that entity enters into a master agreement to purchase or rent equipment for all of its hospitals. In a "proprietary" group, the individual hospital generally does not exercise a choice as to whether it will participate in the negotiated master contract. The hospital owner simply enters into a contract to procure equipment for all of its hospitals.

19.     In a "voluntary" hospital purchasing group, the individual hospital members are not commonly owned. Rather, each member is an individual entity that voluntarily joins the group in order to gain the benefits of group purchasing. "Premier" is an archtypical voluntary organization. Where voluntary hospital purchasing groups are in use, the individual hospital usually has the choice to either purchase or rent equipment under the master group contract or separately negotiate its own agreement with the group provider or another provider. However, voluntary groups obtain better terms for their members if a high percentage of the membership participates in the master group purchasing contract. As a result, the voluntary groups encourage their members to participate in master group contracts and it is in the long term economic interest of the members to do so. Generally, voluntary purchasing groups obtain "compliance" with their master group contracts from 65% or more of their members.

20.     Hospital purchasing groups have historically negotiated master rental agreements for the Specialty Hospital Bed needs of their member hospitals. These master rental agreements have typically provided only for the rental of Specialty Hospital Beds and have not included other products. Hospital Beds were typically bid separately and were the subject of separate agreements.

6

## V. RELEVANT MARKETS AND MARKET POWER

### A. Hospital Beds

21.    There exists a relevant economic product and/or service market for the sale of new and refurbished or remanufactured Hospital Beds. This product and/or service market includes the provision of refurbishment and remanufacturing services to hospitals that continue to own the Hospital Beds, as the refurbishment or remanufacturing service is an economic substitute for and directly competitive with the purchase of new Hospital Beds.

22.    The relevant geographic market for the product and for service market alleged in paragraph 21 above is the United States (the relevant product and/or service market and relevant geographic market are hereinafter collectively referred to as "the Hospital Beds Market").

23.    Hill-Rom's market share in the Hospital Beds Market is in excess of 90%.

24.    Hill-Rom enjoys monopoly power in the Hospital Beds Market in that it has the power to raise prices above the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom also has the power to control price and to earn monopoly profits in, or exclude competition from, the Hospital Beds Market.

### B. Specialty Hospital Beds

25.    There exists a relevant product market for the cluster of products that is included within the term Specialty Hospital Beds. This cluster of products is generally sold or rented in one master supply contract which covers the consumer's need, from time to time, for air suspension beds, rotating critical care air suspension beds, rotating treatment tables, air fluidized beds and bariatric beds (hereinafter referred to as the "Specialty Beds Cluster"). In the Specialty Beds Cluster market, different suppliers of Specialty Hospital Beds compete against each other

7

to be the supplier of the Specialty Beds Cluster products contained within the term Specialty Hospital Beds.

26.     The Specialty Beds Cluster market is hereinafter referred to as the "Specialty Hospital Beds Market" (i.e., the term "Specialty Hospital Beds Market" as used herein includes the Specialty Beds Cluster market).

27.     The relevant geographic market for Specialty Hospital Beds is the United States.

28.     Hill-Rom enjoys a market share in excess of 55% in the Specialty Hospital Beds Market, and this figure rises as Hill-Rom continues to engage in the illegal conduct described herein.

29.     The second largest competitor in the Specialty Hospital Beds Market is KCI.

### C. In-room Products

30.     There exists a relevant economic product market for the manufacture and sale of acute care hospital room headwall units and other in-room products such as furniture and over-bed tables. (This group of products will be referred to as "In-room Products").

31.     The relevant geographic market for hospital In-room Products is the United States. (This relevant product and geographic market is hereinafter referred to as the "In-room Products Market.")

32.     Hill-Rom's market share in the In-room Products Market is in excess of 70%.

33.     Hill-Rom enjoys monopoly power in the In-room Products Market in that it has the power to raise prices in excess of the competitive level without losing a proportionate amount of sales to competitors. Hill-Rom has the power to control prices and to earn monopoly profits in, or exclude competition from, the In-room Products Market.

8

## VI. ILLEGAL CONDUCT ALLEGED

34.    Since at least as early as 1995, Hill-Rom has responded to bid requests from hospital purchasing groups and individual hospitals by submitting a "bundled" proposal for the rental of Specialty Bed Cluster products as well as the purchase of Hill-Rom Hospital Beds and In-room Products. When made to a proprietary purchasing group or an individual hospital, the terms of the proposed Hill-Rom bundle are as follows: (1) the proprietary purchasing group or individual hospital will exclusively purchase Hill-Rom Hospital Beds and In-room Products and exclusively rent Hill-Rom Specialty Hospital Beds; (2) that Hill-Rom will offer to the hospital purchasing group or individual hospital significant discounts on Hill-Rom Hospital Beds and In-room Products, but that these discounts will only be made available to the purchaser on the condition that the purchasing group or individual hospital agrees to exclusively rent Hill-Rom Specialty Hospital Beds.

35.    When made to a voluntary hospital purchasing group, the terms of the proposed Hill-Rom bundle is a variation on the following: (1) the voluntary purchasing group must agree to exclusively recommend to its members and promote the proposed Hill-Rom bundle to its members; (2) the recommended and pre-negotiated contract that is made available to each member hospital provides for the purchase of Hill-Rom Hospital Beds and headwall units for 90% of the hospital's needs, and the rental of Hill-Rom Specialty Hospital Beds for 90% of the hospital's Specialty Hospital Bed needs; (3) Hill-Rom will offer significant discounts to the member hospitals on the purchase price of the Hill-Rom Hospital Beds and In-room Products, but these discounts will be made available only on the condition that the individual hospital member commits in writing; to exclusively purchase 90% of its Hospital Beds and In-room

9

Products from Hill-Rom and exclusively rent 90% of its Specialty Hospital Bed needs from Hill-Rom.

36.    Thus, significant discounts are made available on Hill-Rom Hospital Beds to individual hospitals, proprietary hospital purchasing groups and voluntary hospital purchasing groups, but only on the condition that the individual hospital, proprietary hospital purchasing group or voluntary hospital purchasing group agrees to exclusively rent Hill-Rom Specialty Hospital Beds to the exclusion of all other providers of such Specialty Hospital Beds. Hill-Rom's bundling activity as alleged herein is motivated by exclusionary and anti-competitive purposes and without legitimate business justification.

37.    Due to the fact that many hospitals have high dollar volume needs for Hospital Beds and/or In-room Products, they cannot, from an economic standpoint, afford to pass up the Hill-Rom discounts on these products which are only available if the purchaser commits to exclusively rent 90% of its Specialty Hospital Beds from Hill-Rom. As a result, numerous hospitals and hospital purchasing groups, including Plaintiff and the class it represents, who would have preferred to rent KCI Specialty Hospital Beds have been forced to exclusively rent at least 90% of their Specialty Hospital Beds in order to obtain the discounts on Hill-Rom Hospital Beds and/or In-room Products.

38.    Due to the fact that Hill-Rom enjoys monopoly power over the Hospital Beds and In-room Products Market, based upon information and belief, Hill-Rom has a gross profit margin of approximately 50% on its sales of those products.

39.    Hill-Rom's bundling activities as alleged herein, were motivated by exclusionary, and anti-competitive purposes and without legitimate business justification.

## VII.  ANTI-TRUST INJURY TO PLAINTIFF AND CLASS MEMBERS

40.    Plaintiff, and the class it represents, have been injured in their business or property, by Hill-Rom's unlawful conduct within the meaning of § 4 of the Clayton Act (15 U.S.C. § 15), based on their inability to utilize market competition for the purchase of Specialty Hospital Beds. Since Hill-Rom monopolizes the Hospital Beds Market, if Plaintiff and other members of the represented class were to choose to shop the Hospital Beds Market and not avail themselves of Hill-Rom's bundling activities, as punishment, they will be faced with higher costs for the purchase of Hill-Rom Hospital Beds.

41.    Hill-Rom, by refusing to make the Hill-Rom Hospital Beds and/or In-room Products discounts available unless the hospital or purchasing group agrees to exclusively rent or purchase Hill-Rom Specialty Hospital Beds, has used its monopoly power over Hospital Beds and In-room Products to injure competition, gain a competitive advantage in the Specialty Hospital Beds Market or sub-markets, and/or create a new monopoly in the Specialty Hospital Beds Market, thereby causing injury to the business or property of Plaintiff and the class it represents.

42.    As a result of Hill-Rom's conduct, KCI and other Specialty Hospital Beds competitors have been excluded from a substantial share of the Specialty Hospital Beds Market and foreclosed from being able to compete freely in the relevant Specialty Hospital Beds Market or sub-markets. Hill-Rom's conduct has been aimed at increasing market share in the Specialty Hospital Beds Market and resulted in barriers for competitors to enter or remain in the Specialty Hospital Beds Market. This affect on competition is to the detriment of Plaintiff and the class, driving prices up for Specialty Hospital Beds and beating competitors down. Hill-Rom has

ii

achieved this market foreclosure by conduct that is unrelated to the competitive merits of Hill-Rom Specialty Hospital Beds or their price.

43.     In light of the monopoly on the Hospital Beds Market, Hill-Rom earns supra competitive prices there. Here, the issue is the additional higher prices charged for Specialty Hospital Beds than would be earned were there no tie required for the right to access the Hospital Beds Market at monopoly prices. The list prices for the Hill-Rom Hospital Beds are illusory and not the actual prices, and the discounts are also illusory and fictitious. In the true economic sense, they are not discounts, but a method to induce hospitals and other hospital bed purchasers to buy Specialty Hospital Beds only from Hill-Rom.   Hill-Rom's illegal antitrust activities damage Plaintiff and the class it represents through higher prices charged for Specialty Hospital Beds than would be earned were there no tie required for the right to access the Hospital Beds Market at monopoly prices.

44.     Plaintiff, and the class it represents, have been injured in their business or property, within the meaning of § 4 of the Clayton Act in an amount in excess of $100,000,000.00 and are threatened with further injury within the meaning of §16 of the Clayton Act in that they have been and will continue to be precluded from buying or renting Specialty Hospital Beds that they would rent or buy, but for the continuing illegal conduct of Hill-Rom, as alleged herein.

## VIII. VIOLATIONS ALLEGED

### Count 1 - Attempt to Monopolize the Specialty Hospital Beds Market

45.    Plaintiff re-alleges paragraphs 1-44 above.

46.    Hill-Rom possesses monopoly power over the relevant markets or sub-markets for Hospital Beds and In-room Products.

47.    Hill-Rom has offered certain discounts on Hill-Rom Hospital Beds and In-room Products only on the condition that the purchaser agree to exclusively rent Hill-Rom Specialty Hospital Beds. Hill-Rom has refused to make such discounts available if the purchaser does not commit to exclusively purchasing or renting Hill-Rom Specialty Hospital Beds.

48.    Due to the number of Hospital Beds and In-room Products that some hospitals need to purchase, it is not economically feasible for certain hospitals to refuse to accept the Hill-Rom bundle and the accompanying discount on Hill-Rom Hospital Beds and In-room Products. As a result, these hospitals are forced to agree to exclusively rent Hill-Rom Specialty Hospital Beds even though many of them would otherwise choose to rent other Specialty Hospital Beds.

49.    Hill-Rom charges supra competitive prices for its Hospital Beds and In-room Products owing to its near total market dominance. Hill-Rom has engaged in what appears to be a very sophisticated technique of setting prices even higher than monopoly prices and then offering what are said to be "discounts" off this rigged price if, and only if, hospitals and other bed purchasers agree to buy Hill-Rom Specialty Hospital Beds. This allows Hill-Rom to create a new monopoly owing to its special position in the Hospital Beds Market. Hill-Rom already has a monopoly in the Hospital Beds Market. This tying move captures a new market monopoly by requiring the purchase of a different product, at prices above competitive levels, in order to have

access to the regular monopoly market. Thus, Hill-Rom is not extending its monopoly, but creating a new monopoly, in a complimentary market, owing to the fact that Hospital Beds are vital to the production of health care in hospitals. Hill-Rom thus engages in this program with the specific intent of monopolizing the Specialty Hospital Beds Market.

50.    Hill-Rom has engaged in this bundling conduct for the specific anti-competitive purpose of foreclosing a substantial share of the Specialty Hospital Beds Market or sub-markets to competitors and obtaining for itself monopoly power over the Specialty Hospital Beds Market or sub-markets.

51.    There is a dangerous probability that, unless enjoined by this Court, Hill-Rom will achieve its unlawful goal of obtaining, through anti-competitive or exclusionary means, a monopoly or a further monopoly in the Specialty Hospital Beds Market or sub-markets.

52.    Hill-Rom has unlawfully conspired and attempted to monopolize the Specialty Hospital Beds Market or sub-markets in violation of § 2 of the Sherman Act (15 U.S.C. § 2). Plaintiff, and the class it represents, have been damaged by this illegal conduct as set forth above.

### Count II - Tying Specialty Hospital Beds to Hospital Beds

53.    Plaintiff re-alleges paragraphs 1-52 as set forth above.

54.    Hill-Rom has tied the sale of Hill-Rom Hospital Beds and In-room Products (tying products) to the rental or sale of Hill-Rom Specialty Hospital Beds (tied product).

55.    Hill-Rom enjoys substantial market power (indeed, monopoly power) in the Hospital Beds Market and the In-room Products Market. The rental or sale of Specialty Hospital Beds exceeds $200,000,000.00 per year and constitutes a not insubstantial amount of commerce.

56.    Given Hill-Rom's monopoly in the Hospital Beds Market, Plaintiff, and the class it represents, are forced to purchase both Hill-Rom's Hospital Beds and Hill-Rom's Specialty Hospital Beds in order to pay reasonable prices for Hill-Rom's Hospital Beds. Call it a "discount," or return to true market value, for agreeing to the tying arrangements, without agreeing to purchase Specialty Beds (tied product), Plaintiff and the class it represents, are forced to pay inflated monopolized prices for Hospital Beds (tying products) as punishment. As a result of the tying arrangements, in order to avail themselves of "discounts," or true market value, for Hospital Beds, Plaintiff and the class it represents are also forced to pay higher prices for Specialty Hospital Beds given the lessened Specialty Hospital Beds Market competition and ability of Hill-Rom to control the prices of Specialty Hospital Beds due to the tying requirements.        Under either scenario, Plaintiff, and the class it represents, are forced to purchase Hospital Beds and/or Specialty Hospital Beds at inflated prices in a non-competitive market created by Hill-Rom's unlawful antitrust conduct.

57.    The tying of Hill-Rom Specialty Hospital Beds rentals or sales to the purchase of Hill-Rom Hospital Beds and In-room Products, therefore, constitutes a per se violation of § 1 of the Sherman Act (15 U.S.C. § 1) and § 3 of the Clayton Act (15 U.S.C. § 14).

58.    In the alternative, the tying of Hill-Rom Specialty Hospital Beds to Hill-Rom Hospital Beds and In-room Products has unreasonably injured competition in the Specialty Hospital Beds Market or sub-markets by foreclosing a substantial share of the relevant Specialty Hospital Beds Market or sub-markets to KCI and other competitors for a period of four or more years and preventing Plaintiff, and the class it represents (hospital purchasing groups and hospitals), from being able to freely and competitively select Specialty Hospital Beds on the

merits of price and quality considerations and pursuant to their preference. The result of Hill-Rom's conduct has been to unreasonably injure competition in the Specialty Hospital Beds Market or sub-markets and prevent and eliminate price and quality competition in the relevant Specialty Hospital Beds Market or sub-markets, all in violation of § 1 of the Sherman Act, and § 3 of the Clayton Act. As a result of Hill-Rom's unlawful conduct, Plaintiff, and the class it represents, have been injured as set forth above.

WHEREFORE, Plaintiff, and the class it represents, pray as follows:

A.    That Plaintiff be certified as class representative and that this action proceed as a class;

B.    That Plaintiff, and the class it represents, be awarded the amount of the actual and any special damages caused them by Hill-Rom's illegal acts.

C.    That Plaintiff, and the class it represents, be awarded treble the amount of the actual damages caused them by Hill-Rom's illegal acts as provided for by § 4 of the Clayton Act.

D.    That Hill-Rom be preliminarily, and thereafter permanently, enjoined from enforcing any of the exclusive dealing, tying, or bundling arrangements that they have entered into with any hospital purchasing group or hospital.

E.    That Hill-Rom be preliminarily, and thereafter permanently, enjoined from requiring hospitals or hospital purchasing groups to rent or purchase Hill-Rom Specialty Hospital Beds in order to obtain discounts on Hill-Rom Hospital Beds or In-room Products;

F.    That Plaintiff, and the class it represents, be awarded their reasonable attorneys fees and cost of this suit as provided by the Clayton Act.

16

G.    That the Court grant Plaintiff , and the class it represents, such other and further

relief as it deems just.

H.    That Plaintiff, and the class it represents, request a trial by jury.

John G. Felder
FELDER & MCGEE
PO Box 346
St. Matthews, SC 29135
803-874-2010
803-655-7167 (Fax)

Chad McGowan
S. Randall Hood
MCGOWAN & HOOD
125 Hampton Street
Suite 101
Rock Hill, SC 29730
803-327-7800
803-328-5656 (Fax)

Gordon Ball
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street
Suite 150
Knoxville, TN 37902
865-525-7028
865-525-4679 (Fax)

Shelly L. Wilson
Robertson &Overbey
530 S. Gay Street, Suite 802
Knoxville, TN  37902-1537
(865) 521-3010
(865) 522-7929 (Fax)

October 22, 2003

**PLAINTIFF DEMANDS A JURY TRIAL**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

Civil Action No.: 7:03-2141-25

| | |
|---|---|
| Spartanburg Regional<br>Healthcare System, on behalf of itself<br>and others similarly situated,<br><br>       Plaintiff,<br><br>    Vs.<br><br>Hillenbrand Industries, Inc.,<br>Hill-Rom, Inc., and<br>Hill-Rom Company, Inc.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I, Brandy E. Lee, Paralegal for McGowan & Hood Law Firm, attorneys for the

Plaintiff, does hereby certify that on October 22, 2003, I served copies of the within **Amended**

**Complaint** by depositing copies thereof in the United States Mail in Rock Hill, South Carolina with

proper postage prepaid, to the following:

> Frank S. Holleman
> J. Theodore Gentry
> WYCHE BURGESS FREEMAN & PARHAM, P.A.
> PO Box 728
> Greenville, S.C. 29602-0728

Brandy E. Lee
McGowan & Hood Law Firm

# EXHIBIT C

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington, D C

Amanda J Metts
Attorney at Law
ametts@mwe com
617 535 4005

April 8, 2005

BY FACSIMILE AND MAIL

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Mauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
       Case No. 7:03-2141-26; U S. District Court for the District of South Carolina

Dear Ms Esfahani:

I write regarding the third-party subpoena served on Bain & Company, Inc. ("Bain") in the
above-captioned matter. Thank you for sending a copy of the complaint; I now have a better
understanding of the subject matter of the case. This letter shall serve as Bain's written
objections to the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(2)(B).

Bain objects to the subpoena to the extent that it is overly broad and unduly burdensome in that it
seeks documents that are irrelevant to a claim or defense of any party and/or not reasonably
calculated to lead to discovery of admissible evidence. The subpoena seeks "[a]ll documents
relating to Hill-Rom....," regardless of subject matter, and is not limited to documents relating to
hospital beds and in room products, the subject matter of the lawsuit. I understand from our
telephone conference that you are willing to work with Bain to narrow the scope of the
subpoena

The subpoena calls for the production of confidential business information and trade secrets.
Subpoenas that call for the production of such materials are subject to a motion to quash or
modification. Bain will produce responsive documents, if any, only pursuant to a mutually
acceptable confidentiality order. Thank you for forwarding a copy of the Confidentiality Order
in this case. I will review the Order and confirm whether it is acceptable to Bain.

The subpoena calls for the production of confidential information about third parties. Bain is
privy to very sensitive, confidential client information, which is made available to Bain under
strict nondisclosure agreements. Under these agreements, Bain is required to provide its clients
with advance notice and an opportunity to seek protection for their potentially sensitive
documents.

Shari Fleishman Esfahani, Esq.
April 8, 2005
Page 2

Bain also notes its objection to the subpoena to the extent that the subpoena seeks material protected by the attorney-client privilege and work product doctrine.

Subject to the above-referenced objections and to objection from its client, Bain will produce any non-privileged documents that reasonably relate to the subject matter of the above-referenced lawsuit.

Very truly yours,

Amanda J. Metts

AJM/dal


cc:    Stephany Phelps, Esq.

BST99 1453078-1 054168 0065

# EXHIBIT D

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D C

Amanda J Metts
Attorney at Law
ametts@mwe com
617 535 4005

April 29, 2005

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S Strauss Building
1333 New Hampshire Avenue, N W.
Washington, D C  20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc , et al.
       Case No 7:03-2141-26; U S District Court for the District of South Carolina

Dear Ms Esfahani:

Subject to and without waiving the objections stated in my letter to you of April 8, 2005, please find enclosed documents bates numbered BAIN 00001 through BAIN 09308. As we discussed, the enclosed documents relate to Hospital Beds, Specialty Beds, and/or Architectural Products, which is the subject matter of the lawsuit. These documents do not include those limited to the subject matter of funeral services and products, such as caskets, cremation urns and funeral home financial services, or those limited to medical devices, such as surgical equipment, pumps and patient monitors, which are unrelated to Hospital beds, Specialty beds, and/or Architectural Products.

Bain is producing these documents pursuant to the Consent Confidentiality Order (the "Confidentiality Order") entered in the underlying litigation. Per § 3 of the Confidentiality Order, please find the Certification of Counsel signed by Neal E Minahan and attached hereto as Ex. A If you do not intend to treat Bain's documents in accordance with the Confidentiality Order, please contact me immediately and return the enclosed documents, unopened, to my office.

Bain's production does not contain any documents responsive to Request No. 12, seeking "[a]ll documents you produced in connection with the case of *Kinetic Concepts, Inc v Hillenbrand Industries, Inc*, docket no. SA-95-CA-0755 (W D Tex.) " A search for any such documents has revealed that, upon final disposition of that matter, Bain wrote to Mary Claire Fischer and R Lawrence Macon of your firm, requesting confirmation that the matter was closed and that Bain had no futher obligation to retain documents in connection with the matter A copy of Bain's letter is attached hereto as Ex. B Pamela St. John responded to Bain, confirming that the matter was closed, and stating that "[f]rom our perspective, there is no obligation to retain these documents." A copy of Ms. St. John's letter is attached hereto as Ex C In accordance with

U S practice conducted through McDermott Will & Emery LLP
28 State Street Boston, Massachusetts 02109-1775 Telephone: 617 535 4000 Facsimile: 617 535 3800 www mwe com
BST99 1456108-1 054168 0065

Shari Fleishman Esfahani, Esq.
April 29, 2005
Page 2

Bain's document retention policy, which has been produced, and the communications with your firm, Bain is no longer in possession of these documents

Finally, I note that this production does not contain documents prior to 1999  When we last spoke, I expressed Bain's intention to produce only documents from 1999 to the present, pending resolution of a Motion to Compel relating to that issue between the parties  You told me that you were not aware of any such motion, and that Hill-Rom had produced documents prior to 1999

I now have a copy of the Motion to Compel, filed by McGowan, Hood, Felder & Johnson on behalf of the Plaintiffs  A copy of the motion is attached for your information as Ex. D.  Page 3 of the Motion gives as a basis for the Motion to Compel: "[defendants] have refused to search for or produce paper documents for the period prior to 1999." If a court determines that the parties in the case need not produce documents prior to 1999, then Bain, a third party, should not be required to undertake the burden and expense of searching an additional 14 years of documents

I understand that to the extent Hill-Rom has produced documents prior to 1999, those documents were previously produced in the *Kinetic Concepts* matter. As discussed above, Bain has no such documents. If the court determines that the defendants must produce pre-1999 documents, then Bain would be open to discussion of an additional production

Please contact me if you have any questions regarding this production

Very truly yours,

Amanda J. Metts

AJM/dal

cc:    Stephany Phelps, Esq

# EXHIBIT E

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D C

Neal E Minahan
Attorney at Law
nminahan@mwe com
617 535 4481

May 13, 2005

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc , et al
       Case No 7:03-2141-26; U S District Court for the District of South Carolina

Dear Ms Esfahani:

Subject to and without waiving the objections stated in the April 8, 2005 letter to you from
Amanda J Metts, enclosed please find the supplement to Bain's original production sent on
April 29, 2005 Per your verbal request, the documents are produced on CD in their original
electronic format. As previously agreed, this supplemental production contains documents
created prior to 1999 and only those documents that relate to Hospital Beds, Specialty Beds,
and/or Architectural Products, which is the subject matter of the lawsuit These documents do
not include those relating exclusively to Hillenbrand stockholder relations or those limited to
medical devices, such as surgical equipment, pumps and patient monitors

Bain is producing these documents pursuant to the Consent Confidentiality Order (the
"Confidentiality Order") entered in the underlying litigation The CD housing the electronic
documents is labeled, "Confidential," which designates each document contained therein as
confidential pursuant to the Confidentiality Order Per our May 13, 2005 telephone
conversation, you have agreed to treat these documents in accordance with the Confidentiality
Order You have further agreed that any printed versions of the electronic documents shall be
labeled confidential pursuant to the Confidentiality Order If you do not intend to treat these
documents in the agreed upon manner, please contact me immediately and return the enclosed
electronic documents, unopened, to my office Per § 3 of the Confidentiality Order, please find
the Certification of Counsel attached hereto as Ex A.

Please contact me if you have any questions regarding this production

U S practice conducted through McDermott Will & Emery LLP

28 State Street Boston. Massachusetts 02109-1775 Telephone: 617 535 4000 Facsimile: 617 535 3800 www mwe com

Shari Fleishman Esfahani, Esq
May 13, 2005
Page 2

Very truly yours,

Neal E Minahan

Enclosures
cc:      Stephany Phelps, Esq

BST99 1458248-1 054168 0065




ATTACHMENT A

CERTIFICATION BY COUNSEL OF DESIGNATION
OF INFORMATION AS CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc., <br><br> Defendants. | C.A. No. 7:03-2141-26 <br><br> CERTIFICATION BY COUNSEL OF DESIGNATION OF INFORMATION AS CONFIDENTIAL |

Documents produced herewith [whose bates numbers are listed below (or) which are listed on the attached index] have been marked as CONFIDENTIAL subject to the Confidentiality Order entered in this action which Order is dated _Apr ( 9_____, 2005

By signing below, I am certifying that I have personally reviewed the marked documents and believe, based on that review, that they are properly subject to protection under the terms of Paragraph 3 of the Confidentiality Order.

Check and complete one of the two options below.

☐   I am a member of the Bar of the United States District Court for the District of South Carolina. My District Court Bar number is _____.

☒   I am not a member of the Bar of the United States District Court for the District of South Carolina but am admitted to the bar of one or more states. The state in which I conduct the majority of my practice is _MASSACHUSETTS_ where my Bar number is _66/371_. I understand that by completing this certification I am submitting to the jurisdiction of the United States District Court for the District of South Carolina as to any matter relating to this certification.

_5/13/2005_
Date

_____
Signature of Counsel

_NEAL E MINAHAN_
Printed Name of Counsel

10

# EXHIBIT F

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

SHARI FLEISHMAN ESFAHANI
2028874387/fax 2028874288
sesfahani@akingump.com

June 3, 2005

VIA FACSIMILE AND REGULAR MAIL

Amanda J. Metts, Esq.
McDermott Will & Emery
28 State Street
Boston, MA 02109-1775

> Re: *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al*,
> Case No. 7:03-2141-26, U.S. District Court for the District of South Carolina

Dear Ms. Metts:

I write in response to your May 17, 2005 letter to me, and to seek some clarification concerning Bain's production in response to the subpoena in the above-referenced case. I also want to inform you of the May 23, 2005 Order issued by the Court in this case concerning Spartanburg's motions to compel discovery. The Court has ordered Defendants to produce documents back to 1985, affirming that such are relevant to this case. The Court specifically ordered the production of pricing and cost data. Thus, there is no question that such documents are relevant and must be produced. Should you receive any conflicting information from Defendants' counsel on the matter, please let me know, so that we may address any issues directly. In any event, below are addressed specific concerns raised by Bain's recent productions.

*Electronic Files*

In your letter, you state that Bain will not produce the post-1999 documents that Bain maintains in electronic format in electronic form on the ground that the documents have already been produced as hard copies. Pursuant to Fed. R. Civ. P. 45(d), Bain's obligation in responding to the subpoena is to produce documents *"as they are kept in the usual course of business."* This mirrors the obligation of parties under Fed. R. Civ. P. 34(b) to produce documents as kept in the usual course of business. *See* Advisory Committee Notes to Fed. R. Civ. P. 45 (1991 Amendment). Since Bain maintains numerous portions, if not all, of the post-1999 documents in electronic format, Bain's obligation under Rule 45 is to produce those documents as Bain keeps them — in electronic format. Spartanburg's request for the documents in electronic format was not a "belated request," as your letter asserts. Rather, it was Bain's obligation from the first instance. *See, e.g., In re. Honeywell Int'l., Inc. Securities Litig.,* No. M8-85 WHP, 2003 WL 22722961, at *1-2 (S.D.N.Y. Nov. 18, 2003) (although non-party PriceWaterhouseCoopers had

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━ Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 2

produced hard copies of workpapers, PWC was ordered to produce the workpapers in electronic form at its own expense; prior production of hard copies was insufficient because the documents were not produced as kept in the usual course of business, which was in electronic format; PWC had to produce at its own expense because it could have avoided the added expense of reproduction had it produced the workpapers in electronic form at the outset, as was its obligation to do so).

Nonetheless, in an attempt to minimize the additional work required, we will narrow our request to a production in electronic form of the documents that are spreadsheets/databases. From a review of the printed documents produced, it is plain that the production includes printouts of numerous electronic spreadsheets/databases. Printouts of such databases are not adequate substitutions/copies of the electronic originals. Printouts are not easily utilized in attempting to analyze the data therein, requiring the reentry of all the datapoints. While we understand that Bain is a third party, your assertion that the production of the documents in their electronic form would cause needless burden and expense to Bain is not valid. Since Bain has already identified the responsive files, a mere copying of the electronic data to disk is all that is required, certainly not a burdensome task and certainly not even close to the burden that would be put on Spartanburg to reenter the data in order to be able to analyze it. Moreover, pursuant to the Master Agreement between Bain and Hillenbrand, it is apparent that Hillenbrand is obligated to reimburse Bain for any costs and expenses associated with complying with this subpoena, such that Bain, in fact, will incur no expense from complying with its obligations to produce in electronic form. Thus, we request again that Bain promptly fulfill its obligations pursuant to Rule 45 and produce the post-1999 responsive documents that are spreadsheets/databases in the electronic format as Bain maintains them. Certainly, all future productions should be produced in the format in which they are maintained by Bain.

*Black Books*

From a review of the production, it seems that Bain has not made a full production. Bain's Records Management Manual describes that there shall be created for all presentations a Black Book, which shall contain the slides in the order presented with backup slides at the back; copies of data detail supporting each slide; and a disk with the final version of all slides in the front pocket of the binder. It does not appear that Bain produced any of the Black Books created for presentations to Hill-Rom (Hill-Rom, as defined in the subpoena). We see nothing in such format, with presentation slides followed by the data detail supporting each slide, not to mention the disk with final version of the slides. We ask that Bain produce all such Black Books created for presentations to Hill-Rom concerning hospital beds or surfaces, specialty hospital beds or surfaces, architectural products, or in-room products, or concerning any business units associated with such products.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 3

*Missing Pages*

There appear to be pages missing from the pre-1999 production. The following files either are missing pages or have slide numbering sequences that are unusual (e.g., slides with the same number within a single file, slides without numbers, and missing numbers in the slide sequence) and raise the issue as to whether the files are complete:

> HLB11097ADA
> HLB11097ADD
> HLB11097GTA
> HLB11097SSA
> HLB11173ADC
> HLB11173ADE
> HLB11173SSC
> HLB11375ADD
> HLB11375SSB

In addition, almost all of the pre-1999 files contain slides that are out of sequential number order. Please check on these pre-1999 files to assure that a full production is made as Bain maintains the documents

*Project Proposals and Logs*

The Master Agreement dated December 1, 2001, states that for each project, there shall be appended a proposal setting forth the scope of work, including the objectives, timetable, and fees. Only one proposal dated October 25, 2001, was appended. Please produce all proposals. In addition, any log of the projects proposed and/or completed for Hill-Rom should be produced.

*References to Further Work*

Several Bain documents reference additional work to be performed. For example, the November 11, 1993 Hill-Rom and SSI Partnership proposal and accompanying slide presentation detail work to occur over up to 24 months, including the quantification of the economics of the bundled offer and the development of a pricing strategy. The October 12, 1994 presentation references additional work/milestones to be performed as part of the action plan in 1995 and 1996. However, no documents were produced from that timeframe representing such work. As another example, the Proposal dated October 25, 2001, at BAIN 09267-09269, references work to be performed over four to five months. Yet, no documents from the 2002 timeframe representing such work were produced. Please produce all such related documents.

AKIN GUMP
STRAUSS HAUER & FELDLLP
━━━━━━━━━━━━━ Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 4

*Missing Presentations and Other Documents*

Perhaps most glaring is the complete absence in the pre-1999 production of various Bain presentations produced by Hill-Rom, including, for example, the aforementioned November 11, 1993 Hill-Rom and SSI Partnership proposal and accompanying slide presentation and October 12, 1994 presentation. According to Bain's Records Management Manual, presentations are stored with the engagement Vice-President. Given these omissions, we are concerned that a full and complete search of responsive documents – including through microfiche, off-site storage, the files of the engagement Vice-President, the files of team members on the engagement, and other appropriate searches outlined in Bain's Third Party Litigation Response Plan – may not have been undertaken. The November 11, 1993 presentation slides, for example, contain slide/file numbers including 9JG 10638CCA, 9JG 10638CCB, 9JGLW501 and 9JGLW502, 9JG 10638sha, 9JG 10638LWA,[1] BAQ 10389LGA, BA4 10472CHA. Please assure that these file numbers have been searched. In addition, the November 11, 1993 proposal states that the project team will include Jim Gilbert, Darrell Rigby, Eric Schwalm, and Susan Caraviello. A 2001 proposal states that the Bain team will be Chuck Farkas, Paul Rosenberg, Sean Padgett, and with Darrell Rigby continuing his role. Please assure that the files of these persons have been searched, as well as the files of any other team members who worked on Hill-Rom projects. Please assure that Bain thoroughly searches its files, including email records, for documents responsive to the subpoena, and produces *all* responsive documents.

*Investor Relations Documents*

Neal Minahan informed me that a document concerning Hillenbrand's investor relations had been withheld from production. Certainly this document is responsive to the subpoena; and given the broad scope of discovery, certainly it could be relevant to Spartanburg's claims, particularly as concerns any relevant disclosures made to investors. This and all related documents should be produced.

*Log of Withheld Documents*

Finally, please provide a log of all documents related to Hill-Rom withheld from production. I understand that you have withheld documents that relate to funeral services and products, surgical equipment, pumps, and patient monitors. However, to the degree those documents relate to joint incentives/bundling programs, they would be relevant to the claims in

---

[1] It is possible the 9JG 10638 series ends in a "6," so 10636.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Amanda J. Metts, Esq.
June 3, 2005
Page 5

this action. Therefore, we request a log of documents withheld, as well as the production of any documents withheld that bear upon any joint incentives/bundling programs

I look forward to Bain's cooperation in assuring full compliance with the subpoena. Please contact me by June 8 to inform me as to how you intend to proceed to make Bain's further production.

Sincerely,

Shari Esfahani

Shari Fleishman Esfahani

# EXHIBIT G

# McDermott
# Will & Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D C

Amanda J Metts
Attorney at Law
ametts@mwe com
617 535 4005

June 8, 2005

VIA FACSIMILE AND MAIL

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al
       Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

I write in response to your recent letter of Friday, June 3, 2005, which raised issues related to
Bain & Company, Inc.'s production of documents in response to the overbroad subpoena issued
by your office in connection with the above-captioned matter. Due to the breadth of the
subpoena, which requested essentially every document relating to Bain's work for Hill-Rom over
the last twenty years, Bain objected pursuant to Federal Rule of Civil Procedure 45 on April 8,
2005. Notwithstanding its valid objections, and in an effort to comply with the subpoena to the
extent reasonable and required by law, Bain nevertheless undertook a search of its records and
has produced in excess of 10,000 pages of responsive documents to date.

Despite Bain's reasonable and good faith efforts, you have now raised a number of issues
relating to its production. Below, please find our response to each issue raised by your letter.[1]

## Post-1999 Electronic Files

On March 28, 2005, you served a third-party subpoena on Bain in the above-captioned litigation,
which was void of any instruction relating to production format. Accordingly, Bain produced
four boxes of post-1999 documents in hard copy on April 29, 2005 (the "post-1999 documents")
At that time, Bain objected to the production of pre-1999 documents, based on the motion to
compel pre-1999 documents pending in this case at that time. Bain subsequently agreed to
produce pre-1999 documents. Before it had conducted this review, you verbally requested that

---

[1] As an initial matter, I note your update regarding the Court's May 23, 2005 order that parties must produce
documents back to 1985. As you know, Bain has already produced documents dated prior to 1999 on May 13, 2005
and has not otherwise restricted its production by date

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 2

Bain produce in electronic format any pre-1999 documents that Bain maintained electronically.
Accordingly, on May 13, 2005, Bain produced additional documents in an electronic format (the
"pre-1999 documents"). That same day, for the very first time, you requested that Bain re-
produce the post-1999 documents in electronic format. Bain objected in writing to reproducing
the documents already in your possession on May 16, 2005. Your recent letter insists that
electronic production is required, but now limits your request for such production to databases
and spreadsheets.

Rule 34 simply does not require Bain to produce -- or reproduce -- the post-1999 documents in
electronic format:

> [Rule 34(b)] is an anti-sabotage provision: a party may not dump its files
> into a mail cart, stir well, then wheel it to opposing counsel. Thus, if a
> party produces its electronic information in a hard copy format that
> mimics the manner in which that information is stored electronically, then
> that party has not disobeyed Rule 34.

*Crossarm Co. v. Chem. Specialties, Inc.*, 2004 U.S. Dist. LEXIS 5381, 2-3 (D. Wis., 2004)
Pursuant to Rules 34(b) and 45(d), Bain's April 29, 2005 production was properly organized in
the same manner that Bain keeps the documents electronically.

Moreover, your suggestion that reproduction would not place a burden on Bain because Hill-
Rom will cover Bain's costs oversimplifies the issue. Though Hill-Rom is obliged to cover
Bain's costs related to the subpoena, reproducing documents would necessitate further disruption
of Bain's normal operations to attend to this request. Moreover, despite your assertion that Bain
must simply copy the electronic files to disk, there is no easy way to match the produced hard
copy files with the electronic files other than through manually searching each electronic
document and comparing it with the produced hard copy. Such an exercise would be both
tedious and time-consuming.

In short, Bain is under no obligation to re-produce any post-1999 documents. However, in the
interest of minimizing the issues and therefore Bain's continued involvement in a litigation that
does not concern it, and in light of your significantly narrowed request for electronic production,
Bain will endeavor to produce the previously-produced post-1999 spreadsheets and databases in
their electronic format. I will provide you with an anticipated production date once we have
better ascertained the required effort.

## Black Books

As you have noted, Bain's production does not contain compiled hard copies of slides and back-
up documents, or so-called "Black Books." The Records Management Manual that was
produced on April 29, 2005 as BAIN 09276 -09308 does discuss retention of Black Books;
however, the Manual provided is not the policy currently in effect. Enclosed herewith as BAIN

Shari Fleishman Esfahani, Esq
June 8, 2005
Page 3

09309-09311 is Bain's current Records and Information Management Policy, which has been in effect since approximately December 1999 with few modifications. As you will see, the current Policy does not contain any obligations regarding the outdated practice of creating and retaining Black Books. Previously, Black Books were used to preserve Bain's overhead projector slides, which have since become obsolete due to the advent of Power Point software and the ability to retain presentations electronically. Accordingly, Bain does not maintain Black Books in accordance with its current Policy. I apologize for any confusion. Please let me know if you have any questions regarding this issue.

Missing Pages

You reference missing and "unusually numbered" slides within certain pre-1999 documents. As you know, Bain produced all pre-1999 documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products on May 13, 2005. Per your instructions, Bain produced these documents exactly as Bain kept them, in their original electronic format. Any oddities within these documents existed in the original files.

Project Proposals and Logs

Your letter requests all proposals regarding work for Hill-Rom, which request was subsumed in your original subpoena. Bain has produced all proposals that relate to Hospital Beds, Specialty Beds, and/or Architectural Products. An exhaustive search has revealed that the October 25, 2001 proposal, referenced in your letter, is the only such proposal in Bain's possession, custody and control.

In response to your request for a "log of the projects proposed and/or completed for Hill-Rom," Bain will produce any such listing that is kept in the normal course of business.

References to Further Work

Your letter refers to documents that reference additional work to be performed by Bain, and requests production of all documents related to that work. Once again, Bain produced all post-1999 documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products on April 29, 2005 and all such pre-1999 documents on May 13, 2005. If the referenced work was, in fact (i) undertaken, (ii) related to Hospital Beds, Specialty Beds, and/or Architectural Products, and (iii) retained pursuant to Bain's Records and Information Management Policy, then Bain has produced any existing documents relating to that work.

Missing Presentations

Your letter notes that Bain's production does not contain certain Bain Presentations that have been produced by Hill-Rom and requests that Bain search certain enumerated files and team members' files. Bain's Records and Information Management Policy requires that at the close of

Shari Fleishman Esfahani, Esq
June 8, 2005
Page 4

every case, team members consolidate all case materials into a central location and return all
client materials to the client. Despite the fact that employees are instructed to yield their
documents at the close of each case, in an abundance of caution, Bain nevertheless conducted a
complete search of all possible sources of documents, including all appropriate files and team
members, in response to the subpoena.

The presentations you reference are over ten years old (dated November 11, 1993 and October
12, 1994)  As you will see in the enclosed Records and Information Management Policy, only
case materials in the permanent archive, i.e , only final versions of "major presentations," would
have been retained for that length of time  The "missing presentations" that you reference may
not have been considered major and, therefore, not have been retained in the permanent archive.
In any event, Bain has produced all presentations relating to Hospital Beds, Specialty Beds,
and/or Architectural Products in its possession, custody and control.

Investor Relations Documents

You have also requested production of a document that was apparently described to you as
involving "Hillenbrand stockholder relations." This document does not relate in any way to
Hospital Beds, Specialty Beds, and/or Architectural Products, and was properly withheld. The
referenced one-and-a-half page document is an internal Bain document which provides very
general client background and outlines Bain's manager-client relationship with Hillenbrand  The
document makes a sole, general reference to Bain's success in improving shareholder value.
This document was for Bain's internal use only and does not relate to Hospital Beds, Specialty
Beds, and/or Architectural Products

Log of Withheld Documents

Finally, you request that Bain produce a log of documents withheld from production. This
request is outrageous, entirely unsupported, and would subject non-party Bain to substantial, and
unwarranted, time and expense. Bain has produced all documents that relate in any way to
Hospital Beds, Specialty Beds, and/or Architectural Products -- the subject matter of the lawsuit.
With each production, and at your request, Bain has provided you with a list of categories of
documents that are entirely unrelated to the litigation, and therefore not produced, including
those limited to the subject of funeral services and products, such as caskets, cremation urns and
funeral home financial services, and those limited to medical devices, such as surgical
equipment, pumps and patient monitors, which are unrelated to Hospital beds, Specialty beds,
and/or Architectural Products. This provision of general categories is more than sufficient to
allow you to request additional information regarding certain categories of documents, if
necessary

In fact, based on the provision of these categories of information, you have requested production
of any such documents that relate to "joint incentives and bundling programs." Although our
review revealed no reference to any such programs in these unrelated documents, your use of the

Shari Fleishman Esfahani, Esq.
June 8, 2005
Page 5

terms is not clear. Please provide additional information regarding these programs and their relevance to the litigation so that we may fully respond to your request and produce any such documents, if appropriate.

Non-party Bain has made a significant, good faith effort to review and produce documents spanning more than fifteen years. As stated, it will now undertake a further effort to re-produce certain documents in an electronic format. I hope that this letter answers your remaining questions and concerns regarding Bain's production.

Very truly yours,

Amanda J. Metts

Enclosure

cc:    Neal Minahan, Esq.

BST99 1461305-2 054168 0065

# EXHIBIT H

A K I N   G U M P
S T R A U S S   H A U E R   &   F E L D ʟʟᴘ

Attorneys at Law

SHARI FLEISHMAN ESFAHANI
2028874387/fax: 2028874288
sesfahani@akingump.com

June 20, 2005

VIA FACSIMILE AND REGULAR MAIL

Amanda J. Metts, Esq.
McDermott Will & Emery
28 State Street
Boston, MA 02109-1775

    Re:  *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.,*
          Case No. 7:03-2141-26, U.S. District Court for the District of South Carolina

Dear Ms. Metts:

    This is in response to your June 8, 2005 letter to me concerning issues with Bain's production. You reference Bain's production to date, and we thank you for your cooperation in making that production. However, our concern is to assure that Bain's production is complete. I address the outstanding issues below.

*Post-1999 Electronic Files and Project Log*

    We appreciate Bain's cooperation in agreeing to provide the post-1999 spreadsheets and databases in their original electronic form. As the documents are already identified (since they were previously produced in hard copy), it should not take much time simply to copy them to disk. We expect production by no later than June 24, 2005.

    You also stated that Bain will produce a log of the projects proposed and/or completed for Hill-Rom that is kept in the normal course of business. This also should be produced by June 24, 2005.

*Black Books*

    You claim that the current Records and Information Management Policy does not contain obligations concerning creating and retaining Black Books, as was contained in the policy previously produced. However, what we want to know is whether Bain has in its possession any Black Books related to Hill-Rom projects. Indeed, much of the work Bain performed was prior to December 1999, when you state the current policy went into effect. Therefore, we again request the Black Books created with regard to any Hill-Rom projects. All Black Books created for presentations to Hill-Rom concerning hospital beds or surfaces, specialty hospital beds or surfaces, architectural products, or in-room products, or concerning any business units associated

AKIN GUMP
STRAUSS HAUER & FELDLLP
━━━━━━━━━━━ Attorneys at Law

Amanda J Metts, Esq.
June 20, 2005
Page 2

with such products, *or concerning the business relationship with Hillenbrand generally* must be produced. If such were destroyed, please certify the same and when that destruction occurred, and provide all documents reflecting their destruction.

*Missing Documents*

You reference the current Records and Information Management Policy's provision concerning materials to be kept in the permanent archive. In that regard, you state that the missing presentations and other documents referenced in my June 3 letter may not have been retained because they may not have been considered "major." Please produce any documents concerning how Bain implements its policy with regard to the interpretation of what is considered a "major" presentation.

In addition, the policy states that, in addition to the final versions of major presentations, the Permanent Archive should contain background client information; workplans; backup materials; relationship management/client development materials. *All* such documents should be produced. The policy also states that key materials are submitted to "GXC," including a case summary and results, key data sources, workplan, key insights, and proposals. These also should be produced, as well as any public materials obtained for the Hill-Rom projects that were sent to the library. Please also produce the "case wrap-up checklist" that was to be sent to the office Records Manager pursuant to the policy. We want to assure that all these avenues have been searched and documents produced.

Certainly, we would expect to see, for example, documents concerning the quantification of the economics of the bundled offer and the development of pricing strategies. Bain documents produced referenced that such work was going to be done. Please assure and certify that all sources of documents have been checked. And, if documents have been destroyed, please certify the same and when that destruction occurred, and provide all documents reflecting their destruction.    - -

*General Relationship Documents*

You have described that there is a 1 ½ page document providing client background and outlining Bain's manager-client relationship with Hillenbrand that makes reference to Bain's success in improving shareholder value. This document is both responsive to the subpoena and relevant to Spartanburg's claims. Documents discussing the relationship between Bain and Defendants, referring to the success Bain's work has achieved, and/or concerning how Bain was compensated are relevant to this case. All such documents, including the 1 ½ page document referenced, concerning the relationship between Bain and Defendants should be produced.

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━━━━ Attorneys at Law

Amanda J. Metts, Esq.
June 20, 2005
Page 3

*Joint Incentives/Bundling Programs*

You have asked for clarification of the terms "joint incentives/bundling programs" in reference to our request for all documents related to such, regardless of the products involved. This request for clarification seems a bit disingenuous, since Bain's own documents produced by both Bain and Hill-Rom make reference to joint incentives and to bundling. Nonetheless, with this background in mind, to clarify, we seek all documents related to Hill-Rom (as defined in the subpoena), regardless of the products involved, that discuss the concepts of marketing together different products (bundling them) and/or creating a financial package including pricing and/or discounts, financial incentives across products, product lines, and/or markets. We also seek documents that reference or discuss the concept of exclusivity, or obtaining commitments to exclusively (or close) purchase and/or rent from Hill-Rom. The relevance of such documents to this litigation is clear, as Spartanburg complains of Hill-Rom's conduct in, *inter alia,* imposing agreements upon hospitals to purchase/rent a very high percentage of hospital beds and specialty beds from Hill-Rom in order to receive "discounts" on hospital beds and other financial incentives. Any information on similar advice/initiatives would be relevant.

*Bates Numbering*

Finally, we ask that you re-stamp the Records & Information Management Policy you produced on June 8 as BAIN 09309-11. We have already stamped the pre-1999 documents you produced on disk, and used those numbers. To avoid confusion, please send another copy, with numbering beginning at BAIN 10052. All additional documents produced should continue from such numbering.

As mentioned above, we expect production of the post-1999 electronic files and of the project log by June 24. The other documents should be produced by June 29. I look forward to Bain's cooperation in assuring full compliance with the subpoena and to its further production. Please contact me to inform me as to how Bain intends to proceed. I also want to discuss with you the availability of a 30(b)(6) witness regarding the work Bain performed for Hill-Rom, as well as Bain's search for documents.

Sincerely,

*Shari Esfahani*

Shari Fleishman Esfahani

# EXHIBIT I

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D C

Amanda J Metts
Attorney at Law
ametts@mwe com
617 535 4005

June 30, 2005

VIA FEDERAL EXPRESS

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc , et al.
       Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

I write in response to your recent letter, dated June 20, 2005, reiterating the concerns expressed
in your letter of June 3, 2005, despite Bain's prompt response and continued efforts to cooperate
by re-producing certain previously-produced documents in electronic format.

**Post-1999 Electronic Files**

Enclosed please find Bain's electronic re-production of the post-1999 spreadsheets and
databases, which were originally produced in hard copy on April 29, 2005  Bain is producing
these documents pursuant to the Consent Confidentiality Order (the " Confidentiality Order")
entered in the underlying litigation. The CD housing the electronic documents is labeled
"Confidential," which designates each document contained therein as confidential pursuant to the
Confidentiality Order  Per your May 13, 2005 telephone conversation with Neal Minahan, you
have agreed to treat these documents in accordance with the Confidentiality Order. You have
further agreed that any printed versions of the electronic documents shall be labeled confidential
pursuant to the Confidentiality Order  If you do not intend to treat these documents in the agreed
upon manner, please contact me immediately and return the enclosed electronic documents,
unopened, to my office. Per § 3 of the Confidentiality Order, please find the Certification of
Counsel attached hereto as Ex. A.

**Black Books**

As I explained in my letter of June 8, 2005, Bain's current Records and Information Management
Policy eliminated any obligations regarding the outdated practice of creating and retaining Black

Shari Fleishman Esfahani, Esq
June 30, 2005
Page 2

Books. In light of that policy, Bain no longer maintains any Black Books. Any Black Books that might have been created would no longer be kept by Bain pursuant to its current Records and Information Management Policy, as evidenced by the lack of any Black Books contained in our production.

**Missing Presentations**

We have produced Bain's Records & Information Management Policy, which requires Bain to retain "major presentations." You have requested Bain's policy defining "major presentation." No such policy exists. What constitutes a "major presentation" cannot be globally defined and is therefore left to the discretion of project leaders.

Our search and production of Bain documents includes those in Bain's permanent archive, and we will produce any that relate in any way to Hospital Beds, Specialty Beds, and/or Architectural Products. This production includes – to the extent they relate or potentially relate to the relevant subject matter – all "background client information," "workplans," "backup materials," "relationship management/client development materials" and the "case wrap-up checklist." GXC is a Bain database used for internal purposes only and does not contain records of any work for clients. Thus, the GXC does not contain any relevant documents relating to Hospital Beds, Specialty Beds, and/or Architectural Products.

Regarding your request for "any public materials obtained for the Hill-Rom projects that were sent to the library," Bain's library accepts donations only rarely due to copyright agreements. For the few materials they do accept, the library does not track the case/client from which it was donated. In any event, any publicly-available information is equally available to your client and need not be produced.

**Proof of Destruction of Documents**

You have requested that Bain certify any destruction of specific documents and when that destruction occurred. Bain's document destruction logs do not identify specific documents or types of documents. Instead, it lists only the numbered storage boxes that are destroyed for each project. Thus there is no way to determine what documents were in each box that was destroyed. Moreover, Bain is under no obligation to provide evidence of any document destruction.

**Overbreadth of Your Continued Requests**

Thank you for the further explanation regarding your request for documents regarding joint incentives/bundling programs. While I agree that any documents relating to joint incentives/bundling programs of Hospital Beds, Specialty Beds, and/or Architectural Products, I disagree that *any* documents referencing such programs – despite the products being bundled or incentivized – would be responsive to the subpoena. Though discovery is broad, it is not unlimited. Rule 26(b)(2) states that discovery must be "reasonably calculated to lead to the

Shari Fleishman Esfahani, Esq
June 30, 2005
Page 3

discovery of admissible evidence." The underlying litigation relates to Hospital Beds, Specialty Beds, and/or Architectural Products, and we will produce all documents relating or potentially relating to these categories. Rule 26's limitation also applies to your repeated request for the production of a one-and-a-half page document, which we have explained several times is an internal Bain document providing very general client background and outlining Bain's manager-client relationship with Hillenbrand. This document was not produced because it does not relate *in any way* to Hospital Beds, Specialty Beds, and/or Architectural Products.

**Bates Numbering**

Enclosed please find a copy of Bain's Records & Information Management Policy originally produced on June 8, 2005, Bates stamped BAIN 10052- 10054. Your letter indicates that you have printed the documents that Bain produced in electronic format on May 13, 2005. Please confirm that you have properly labeled these documents "Confidential" pursuant to the Confidentiality Order and your agreement, which is documented in our cover letter of May 13, 2005.

Non-party Bain has made a significant, good faith effort to review and produce documents spanning more than fifteen years. In addition to the over 10,000 pages of documents already produced, Bain is now, after a substantial investment of time and resources, re-producing already produced documents in electronic format. To the extent we identify additional documents that relate to Hospital Beds, Specialty Beds, and/or Architectural Products, Bain will supplement its production. In connection with Bain's ongoing effort to identify such documents, we expect to produce a small number of additional documents. Neal Minahan will contact you with an anticipated date for this final production. Finally, per your request, Bain will work to identify its 30(b)(6) witness and we will then provide you that person's name and availability.

Please note that as of July 5, I will be joining McDermott Will & Emery's Chicago Office. Kindly address all future correspondence to me at the following address:

McDermott Will & Emery LLP
227 West Monroe St.
Chicago, IL 60606

Neal Minahan, of the Boston office, will continue his involvement in this matter. Please also address correspondence to him at the Boston address.

Shari Fleishman Esfahani, Esq
June 30, 2005
Page 4


Very truly yours,

Amanda J. Metts

Enclosure

cc:     Neal E. Minahan, Esq.

# EXHIBIT J

# McDermott
# Will&Emery

Boston Brussels Chicago Düsseldorf London Los Angeles Miami Milan
Munich New York Orange County Rome San Diego Silicon Valley Washington D C

August 19, 2005

VIA FEDERAL EXPRESS

Shari Fleishman Esfahani, Esq.
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, D.C  20036-1564

Re:    Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc., et al.
        Case No. 7:03-2141-26; U.S. District Court for the District of South Carolina

Dear Ms. Esfahani:

Subject to and without waiving the objections stated in Amanda J Metts' letter of April 8, 2005,
enclosed please find Bain's third supplement to its original production sent on April 29, 2005.
Per your request, the documents are produced on CD in their original electronic format.  As
previously agreed, this supplemental production contains documents that relate to bundling/joint
incentives, including those that do not expressly mention or discuss hospital beds, specialty beds,
and/or architectural products.  This production does not include documents relating to
bundling/joint incentives of identifiable, unrelated products such as funeral services, medical
technologies and in-patient IT solutions, as such documents are wholly unrelated to the litigation,
which concerns hospital beds, specialty beds, and/or architectural products.

Bain is producing these documents pursuant to the Consent Confidentiality Order (the
"Confidentiality Order") entered in the underlying litigation.  The CD housing the electronic
documents is labeled, "Confidential," which designates each document contained therein as
confidential pursuant to the Confidentiality Order.  Per our May 13, 2005 telephone
conversation, you have agreed to treat these documents in accordance with the Confidentiality
Order  You have further agreed that any printed versions of the electronic documents shall be
labeled confidential pursuant to the Confidentiality Order.  If you do not intend to treat these
documents in the agreed upon manner, please contact me immediately and return the enclosed
electronic documents, unopened, to my office.  Per § 3 of the Confidentiality Order, please find
the Certification of Counsel attached hereto as Ex. A.

To comply with your request that the documents be produced in their native format and to
preserve the integrity of the electronic documents, Bain has not Bates labeled the documents
contained on the CD  As with Bain's supplemental productions of May 13, 2005 and July 11,

Shari Esfahani
August 19, 2005
Page 2

2005 please Bates label and mark Confidential any printed version of the documents in this production and provide me with the Bates range.

Please contact me if you have any questions regarding this production.

Sincerely yours,

Neal E  Minahan

NEM/pmf

Enclosure
cc:     Amanda J  Metts, Esq

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE SUBPOENA:<br><br>SPARTANBURG REGIONAL HEALTHCARE SYSTEM, on behalf of itself and others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>HILLENBRAND INDUSTRIES, INC.,<br>HILL-ROM, INC., and<br>HILL-ROM COMPANY, INC.,<br><br>        Defendants. | Civil Action No.<br>1:05-mc-10324-RWZ |

## AFFIDAVIT OF AMANDA J. METTS, ESQ.

I, Amanda J. Metts, hereby depose and state as follows:

1.      I am an attorney in good standing in the Commonwealth of Massachusetts, Board of Bar Overseers No. 639850. I am counsel of record for nonparty Bain & Company ("Bain").

2.      Plaintiff Spartanburg Regional Healthcare System ("Spartanburg") served a 30(b)(6) subpoena (the "30(b)(6) Subpoena") on Bain on August 31, 2005 in an action pending before the U.S. District Court for the District of South Carolina and captioned, *Spartanburg Regional Healthcare System, on behalf of itself and others similarly situated, v. Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc.*, Civil Action No. 7:03-2141-26. A true and accurate copy of the 30(b)(6) Subpoena is attached hereto as Exhibit A.

3.    Plaintiff Spartanburg served a third-party subpoena on Bain employee Darrell

Rigby c/o Bain (the "First Rigby Subpoena"), and on Darrell Rigby at his home (the

"Second Rigby Subpoena") in an action pending before the U.S. District Court for the

District of South Carolina and captioned, *Spartanburg Regional Healthcare System, on*

*behalf of itself and others similarly situated, v. Hillenbrand Industries, Inc., Hill-Rom, Inc.,*

*and Hill-Rom Company, Inc.*, Civil Action No. 7:03-2141-26.  A true and accurate copy of

the First Rigby Subpoena is attached hereto as Exhibit B.  A true and accurate copy of the

Second Rigby Subpoena is attached hereto as Exhibit C.

4.    A true and accurate print out from Bain's website,

http://www.bain.com/bainweb/Join_Bain/faq_printable.asp, is attached hereto as Exhibit

D.

5.    Attached hereto as Exhibit E is a true and accurate copy of a letter dated September

3, 2003, in which Pamela St. John, an attorney for Akin, Gump, Strauss, Hauer & Feld

LLP, stated that the matter of *Kinetic Concepts, Inc., et. al. v. Hillenbrand Industries, Inc.,*

*et. al.*, C.A. No. SA-95-CA-0755-FB, had settled and that Bain had no obligation to retain

any documents produced in that matter.

Signed under the pains and penalties of perjury this 13th day of September 2005.

Amanda J. Metts

CHI99 4525208-1 054168 0065

# EXHIBIT A



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

JYB / ALL
Transmittal Number: 4144139
Date Processed: 08/31/2005

| | |
|---|---|
| **Primary Contact:** | Ms. Stephany E Phelps<br>Bain & Company, Inc.<br>131 Dartmouth Street<br>Boston, MA 02116 |

**Copy of transmittal only sent to:**   Ana Sa

| | |
|---|---|
| **Entity:** | Bain & Company Nordic, Inc.<br>Entity ID Number 2131973 |
| **Entity Served:** | Bain & Company Nordic, Inc. |
| **Title of Action:** | Spartanburg Regional Healthcare System vs. Hillenbrand Industries, Inc. |
| **Document(s) Type:** | Subpoena |
| **Nature of Action:** | Subpoena |
| **Court:** | United States District Court District of Massachusetts , Massachusetts |
| **Case Number:** | 7:03-2141-26 |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 08/31/2005 |
| **Answer or Appearance Due:** | September 28, 2005 at 9:30 AM |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney :** | Chad McGowan<br>(803) 327-5656 |
| **Enclosures:** | Check for $43.07 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC.**
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

AO 88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
## UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

SPARTANBURG REGIONAL HEALTHCARE SYSTEM,
ON BEHALF OF ITSELF AND OTHERS SIMILARLY
SITUATED,

v.

HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC.,
AND HILL-ROM COMPANY, INC.,

### SUBPOENA IN A CIVIL CASE

CASE NUMBER: **Civil Action 7:03-2141-26***
*Pending in the District Court for the District of South Carolina,
Spartanburg Division

Bain & Company Nordic, Inc

TO:   Bain & Company, Inc.
      Company 30(b)(6) Representative
      131 Dartmouth St.
      Boston, MA 02116

Reg. Agent:    **Corporation Service Company**
               **84 State Street**
               **Boston, MA 02109**

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date and time specified below to testify in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | 09/28/2005<br>9:30 a.m. |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):  See the Attached Exhibit 1.

| PLACE   Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | DATE AND TIME<br>09/14/05 |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Chad McGowan_                                    ATTORNEY FOR THE PLAINTIFF | 8-24-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Chad McGowan
McGowan, Hood, Felder & Johnson
1539 Healthcare Drive
Rock Hill, SC 29372  (803) 327-7800

(See Rule 45 Federal Rules of Civil Procedure Parts C & D on Reverse)

7134752v1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and other similarly situated, | ) ) ) ) | |
| Plaintiff | ) ) | |
| vs. | ) ) | C.A. No. 7:03-2141-26 |
| Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc., | ) ) ) | |
| Defendants. | ) ) | |

### NOTICE OF SUBPOENA

YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, 34(c) and 45, Spartanburg Regional Healthcare System, by its counsel, will serve the attached subpoena for testimony and the production of documents upon Bain & Company this week.

Respectfully submitted, August ___, 2005.

_____
John G. Felder, Jr.
Fed. ID #6441
McGOWAN, HOOD, FELDER & JOHNSON
3710 Landmark Drive, Suite 114
Columbia, South Carolina 29204
Telephone:(803) 779-0100
Facsimile: (803) 787-0750
jfelder@mcgowanhood.com

AND

Chad McGowan
Fed. ID #6620
McGOWAN, HOOD, FELDER & JOHNSON
1539 Health Care Drive
Rock Hill, South Carolina 29732
Telephone:(803) 327-7800
Facsimile: (803) 328-5656
cmcgowan@mcgowanhood.com

AND

John G. Felder, Sr.
Fed. ID #784
FELDER & McGEE, LLP
Post Office Box 346
St. Matthews, South Carolina  29135
Telephone:(803) 874-2010
Facsimile: (803) 655-7167
johnfelder@sc.rr.com

AND

Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M. Stenerson, Admitted *Pro Hac Vice*
Michael L. Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC  20036-1564
Telephone:(202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R. Laurence Macon, Admitted *Pro Hac Vice*
Karen L. Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, Texas  78205-3732
Telephone:(210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball
Admitted *Pro Hac Vice*
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee  37902
Telephone:(865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com


ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Brandy Lee, paralegal at the firm of McGowan, Hood, Felder & Johnson, Attorneys for the Plaintiff in this action, did serve Plaintiff's Notice of Subpoena via Electronic Mail to the following counsel of record, and by First Class Mail to J. Theodore Gentry only, on August 24, 2005:

> J. Theodore Gentry
> Frank S. Holleman, III
> WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
> 44 E. Camperdown Way
> Post Office Box 728
> Greenville, SC 29602-0728
> tgentry@wyche.com
> fholleman@wyche.com

ATTORNEYS FOR HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

> Donald L. Flexner
> Richard Feinstein
> Kevin R. Anthony
> BOIES, SCHILLER & FLEXNER, LLP
> 5201 Wisconsin Avenue, NW, Suite 800
> Washington, DC 20015
> dflexner@bsflp.com
> rfeinstein@bsflp.com
> kanthony@bsflp.com

> Richard B. Drubel
> Kimberly Schultz
> Matthew Henken
> BOIES, SCHILLER & FLENXER, LLP
> 26 South Main Street
> Hanover, NH 03755
> rdrubel@bsflp.com
> kschultz@bsflp.com
> mhenken@bsflp.com

> Sherab Posel
> BOIES, SCHILLER & FLEXNER, LLP
> 333 Main Street
> Armonk, New York 10501
> sposel@bsflp.com

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.


_Brandy Lee_
Brandy Lee
McGowan, Hood, Felder & Johnson

# EXHIBIT 1

## SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR TESTIMONY PURSUANT TO FED. R. CIV. P. 30(b)(6)

## I.    DEFINITIONS AND INSTRUCTIONS

1.    "Architectural Products" means any head wall unit which is designed for use in any Patient Care Setting (as defined below) and/or any in-room furniture used in any Patient Care Setting, such as overbed tables, end tables, chairs, cabinets, or any other furniture used in Patient Care Settings.

2.    "Group Purchasing Organization" ("GPO") means any organization as well as their affiliated and/or related organizations, owners, members, and shareholders, that negotiates pricing and/or other terms and enters into agreements with manufacturers and/or distributors of medical related products and services. Such Group Purchasing Organizations shall include, not by way of limitation, Novation, Premier, Premier Purchasing Partners, MedAssets, Amerinet, Healthtrust, Broadlane, Consorta, HealthCare Purchasing Partners International, Innovatix, AllHealth, Hospital Purchasing Service, Yankee Alliance, National Capital Area Shared Services, GNYHA Ventures, NJHA Corporate Services, Shared Services Healthcare, Coordinated Healthcare Services, Health Affiliated Services/Hendrick Medical Center, Mid-Atlantic Group Network of Shared Services and National Purchasing Alliance.

3.    "Hill-Rom" means Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., their predecessors, including but not limited to, Support Systems International, Inc. ("SSI"), Mediq, or Mediq/PRN, or successors in interest, any parent, subsidiary, affiliate and division, and any present or former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

4.    "Hospital Bed" means any bed manufactured, marketed, sold, leased or rented for use in any Patient Care Setting, and all beds which compete with or are reasonably close substitutes for such beds.

5.    "Patient Care Setting" shall mean all locations which use Hospital Beds (as defined above) or Specialty Beds (as defined below), including but not limited to, acute care hospitals, subacute care hospitals, rehabilitation facilities, outpatient clinics, surgery centers, long-term care facilities, home care, or any other alternative care location.

6.    "Specialty Beds" shall mean all therapeutic support surfaces, including but not limited to, air suspension, lateral rotation air suspension, rotating tables, air fluidized, bariatric, pediatric, neo-natal, and all other beds or therapeutic support surfaces specifically designed for the prevention and/or treatment of specific medical conditions including but not limited to, burns, pressure sores, pulmonary complications or pain management, that are sold, leased or rented for use in any Patient Care Setting, and all therapeutic support surfaces which compete with or are reasonably close substitutes for such surfaces.

7.    "Documents" means any printed, typed, written, handwritten, recorded, taped, computer-generated or stored, electronic, graphic or other tangible matter from any source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original and any non-identical copy of any and all such matter (whether different from the original because of notes made or attached to such copy or otherwise). "Documents" include, but are not limited to, correspondence, letters, computer files, electronically-stored data such as documents stored on network drives, hard drives, CD-ROM, optical discs, magnetic tape, floppy discs, electronic mail files, both current and deleted, telegrams, weekly reports, notes, reports, audio and video tapes, service reports, activity reports,

expense reports, budgets, press releases, periodicals, newsletters, notations, papers, memoranda, interoffice communications, handbooks, summary plan descriptions, agreements, contracts, books, records, minutes of meetings, memorials of any type of personal or telephone conversations, meetings or conferences, reports, evaluations, receipts, claim forms, bills, statements, affidavits, diaries, calendars, desk pads, appointment books, transcripts, worksheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, records of payments, disbursements and reimbursements, and all documents underlying, supporting or used in the preparation of any part of any other documents. "Documents" include, but are not limited to, carbon copies or blind carbon copies of documents sent to, or in Your possession, custody or control, where the correspondence or other document was addressed to some other person.

8.    "Communication(s)" shall mean the transmission, sending, and/or receipt of information of any kind by and/or through any means, whether face-to-face or otherwise, including, but not limited to, speech, writings, language (machine, foreign, or otherwise), computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, facsimile transmission, electronic mail, microfilm, microfiche, and/or photographic film of any type.

9.    "Refer or relate to" means referring to, reflecting, or related in any manner logically, factually, indirectly or directly to the matters discussed.

10.    "Spartanburg" means Spartanburg Regional Healthcare System.

11.    "You" or "Your" means Bain & Company its predecessors or successors in interest, any parent, subsidiary, affiliate and division, and any present and former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

12.    Unless otherwise specified, the relevant time period is January 1, 1985 to the present.

## II.    SUBJECTS FOR DEPOSITION

1.    The history of your relationship with Hill-Rom, including, but not limited to, your first contact with Hill-Rom; when you were first retained by Hill-Rom; the types and number of projects and work conducted for Hill-Rom; the length of the projects; the time period(s) that you conducted work for Hill-Rom; the nature of your relationship with Hill-Rom; and the primary contact persons for you and Hill-Rom throughout the relationship.

2.    The ways in which you derived a financial return from the relationship with Hill-Rom, whether through compensation for work performed, investment in Hill-Rom, etc., and the amount of the financial benefit by type.

3.    The identification of all persons who worked on Hill-Rom projects and the projects on which they worked.

4.    Work and projects conducted for Hill-Rom relating to Hill-Rom's competitive strategies and tactics, its sales and marketing practices, its pricing and discount practices.

5.    Work and projects conducted for Hill-Rom relating to its Hospital Beds, Specialty Beds, and/or Architectural Products, including, but not limited to distribution channels; Hill-Rom's relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts; markets for the products and market share; barriers to entry in such markets; demand

by customers for such products; analysis of prices, costs, and margins for such products; sales forecasts for such products; descriptions of the various patient care settings in which such products are used and the needs and/or demands for such products in each setting; competitors and their products, prices, margins, and market share.

6.    Work and projects conducted for Hill-Rom related to bundling and joint incentives programs.

7.    Work and projects conducted for Hill-Rom related to exclusivity provisions, i.e., the consideration that customer contracts and/or price incentives include provisions and/or conditions requiring the purchase/rental from Hill-Rom of a certain percentage of the customer's needs for specified products.

8.    Your relationship with Bain Capital, LLC.

9.    Communications with Bain Capital, LLC concerning Hill-Rom, including identification of the primary contact persons for you and Bain Capital, LLC concerning such communications.

10.    Communications with Hill-Rom concerning Bain Capital, LLC, including identification of the primary contact persons for you and Hill-Rom concerning such communications.

11.    Communications among you, Hill-Rom, and Bain Capital, LLC, including identification of the primary contact persons for you, Bain Capital, LLC, and Hill-Rom concerning such communications.

12.    Bain Capital, LLC's involvement with Hill-Rom, including, but not limited to, its investment(s) or consideration of investment(s) in Hill-Rom.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS AND FOR TESTIMONY PURSUANT TO FED. R. CIV. P. 30(b)(6)– Page 5**

13.    Your role in facilitating any relationship between Bain Capital, LLC and Hill-Rom or investment in Hill-Rom by Bain Capital, LLC.

14.    The value you achieved for Hill-Rom and/or its shareholders from your work/projects for Hill-Rom.

15.    Communications with Hill-Rom and/or its counsel.

16.    Your document retention policies and/or practices, including, but not limited to, your policies/practices concerning when to back-up data, the recycling, and maintenance of back-up tapes.

17.    Your efforts to search for documents to comply with the subpoena duces tecum issued to you by Spartanburg on March 28, 2005, and served on you on April 4, 2005.

18.    The documents produced by you in response to the subpoena duces tecum issued to you by Spartanburg on March 28, 2005, and served on you on April 4, 2005.

19.    Your participation, through document production and/or testimony of witnesses, in the case captioned *Kinetic Concepts, Inc. v. Hillenbrand Industries, Inc.*, docket no. SA-95-CA-0755 (W.D. Tex.).

20.    The identification of each person with knowledge or information, and the location and custody of documents, relating to the subjects set forth above.

## III.    DOCUMENTS TO BE PRODUCED

1.    All documents relating to the subjects above not previously produced to Spartanburg.

2.    All documents reviewed by the witness(es) designated by you to testify relating to the subjects listed above, in preparation for testifying.

Akin, Gump, Strauss, Hauer & Feld, L.L.P.

| | | | Check #: | 154195 |
|---|---|---|---|---|
| Vendor ID: 54303 | BAIN & COMPANY | | Check Date: | 08/23/2005 |

| Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|
| BA082305 | 8/23/2005 | 43.07 |
| | Total | 43.07 |

DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.

VOID VOID VOID VOID VOID

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
DISBURSEMENT ACCOUNT
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
1333 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20036
(877) 395-2546

Citibank, Delaware
One Penns Way, New Castle DE 19720

Check No.    154195

62-20/311

DATE  08/23/2005

AMOUNT OF CHECK

$    ********43.07

PAY ——— FORTY-THREE AND 07/100 DOLLARS

VOID AFTER 6 MONTHS

TO THE
ORDER OF

BAIN & COMPANY
131 DARTMOUTH ST
BOSTON, MA 02116

AUTHORIZED SIGNATURE

⑈154195⑈ ⑆031100209⑈ 38641612⑈

# EXHIBIT B



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

JYB / ALL
**Transmittal Number: 4144134**
**Date Processed: 08/31/2005**

| | |
|---|---|
| **Primary Contact:** | Ms. Stephany E Phelps<br>Bain & Company, Inc.<br>131 Dartmouth Street<br>Boston, MA 02116 |

**Copy of transmittal only sent to:**  Ana Sa

| | |
|---|---|
| **Entity:** | Bain & Company Nordic, Inc.<br>Entity ID Number 2131973 |
| **Entity Served:** | Bain & Company Nordic, Inc |
| **Title of Action:** | Spartanburg Regional Healthcare System vs. Hillenbrand Industries, Inc. |
| **Document(s) Type:** | Subpoena |
| **Nature of Action:** | Subpoena |
| **Court:** | United States District Court District of Massachusetts , Massachusetts |
| **Case Number:** | 7:03-2141-26 |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 08/31/2005 |
| **Answer or Appearance Due:** | September 27, 2005 at 9:30 AM |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney :** | Chad McGowan<br>(803) 328-5656 |
| **Enclosures:** | Check for $43.07 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It
does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC.**
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

SPARTANBURG REGIONAL HEALTHCARE SYSTEM,
ON BEHALF OF ITSELF AND OTHERS SIMILARLY
SITUATED,

       v.

HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC.,
AND HILL-ROM COMPANY, INC.,

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: **Civil Action 7:03-2141-26***
*Pending in the District Court for the District of South Carolina,
Spartanburg Division

TO: Darrell K. Rigby *| Bain & Company*   Reg. Agent:   **Corporation Service Company**
    c/o Bain & Company, Inc.  *Nordic, Inc*     **84 State Street**
    131 Dartmouth St.                   **Boston, MA 02109**
    Boston, MA 02116

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in
the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒    YOU ARE COMMANDED to appear at the place, date and time specified below to testify in the above case.

| PLACE OF DEPOSITION<br>Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | DATE AND TIME<br>09/27/2005<br>9:30 a.m. |
|---|---|

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place,
date and time specified below (list documents or objects):  See the Attached Exhibit 1.

| PLACE   Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | DATE AND TIME<br>09/14/2005 |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*         **ATTORNEY FOR THE PLAINTIFF** | 8-7-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Chad McGowan
McGowan, Hood, Felder & Johnson
1539 Healthcare Drive
Rock Hill, SC 29372  (803) 327-7800

(See Rule 45 Federal Rules of Civil Procedure Parts C & D on Reverse)

7134752-1

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Spartanburg Regional Healthcare System, on behalf of itself and other similarly situated,<br><br>           Plaintiff<br><br>           vs.<br><br>Hillenbrand Industries, Inc., Hill-Rom, Inc. and Hill-Rom Company, Inc.,<br><br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 7:03-2141-26<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SUBPOENA

YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, 34(c) and 45, Spartanburg Regional Healthcare System, by its counsel, will serve the attached subpoena for testimony and the production of documents upon Darrell Rigby this week.

Respectfully submitted, August 24, 2005.

_____
John G. Felder, Jr.
Fed. ID #6441
McGOWAN, HOOD, FELDER & JOHNSON
3710 Landmark Drive, Suite 114
Columbia, South Carolina 29204
Telephone:(803) 779-0100
Facsimile: (803) 787-0750
jfelder@mcgowanhood.com

AND

Chad McGowan
Fed. ID #6620
McGOWAN, HOOD, FELDER & JOHNSON
1539 Health Care Drive
Rock Hill, South Carolina 29732
Telephone:(803) 327-7800
Facsimile: (803) 328-5656
cmcgowan@mcgowanhood.com

AND

John G. Felder, Sr.
Fed. ID #784
FELDER & McGEE, LLP
Post Office Box 346
St. Matthews, South Carolina 29135
Telephone:(803) 874-2010
Facsimile: (803) 655-7167
johnfelder@sc.rr.com

AND

Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M. Stenerson, Admitted *Pro Hac Vice*
Michael L. Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:(202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R. Laurence Macon, Admitted *Pro Hac Vice*
Karen L. Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, Texas 78205-3732
Telephone:(210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball
Admitted *Pro Hac Vice*
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone:(865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com

ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Brandy Lee, paralegal at the firm of McGowan, Hood, Felder & Johnson, Attorneys for the Plaintiff in this action, did serve Plaintiff's Notice of Subpoena via Electronic Mail to the following counsel of record, and by First Class Mail to J. Theodore Gentry only, on August 24, 2005:

> J. Theodore Gentry
> Frank S. Holleman, III
> WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
> 44 E. Camperdown Way
> Post Office Box 728
> Greenville, SC 29602-0728
> tgentry@wyche.com
> fholleman@wyche.com

ATTORNEYS FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

> Donald L. Flexner
> Richard Feinstein
> Kevin R. Anthony
> BOIES, SCHILLER & FLEXNER, LLP
> 5201 Wisconsin Avenue, NW, Suite 800
> Washington, DC 20015
> dflexner@bsflp.com
> rfeinstein@bsflp.com
> kanthony@bsflp.com

> Richard B. Drubel
> Kimberly Schultz
> Matthew Henken
> BOIES, SCHILLER & FLENXER, LLP
> 26 South Main Street
> Hanover, NH 03755
> rdrubel@bsflp.com
> kschultz@bsflp.com
> mhenken@bsflp.com

> Sherab Posel
> BOIES, SCHILLER & FLEXNER, LLP
> 333 Main Street
> Armonk, New York 10501
> sposel@bsflp.com

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

_Brandy Lee_

Brandy Lee
McGowan, Hood, Felder & Johnson

## EXHIBIT 1

## SUBPOENA FOR PRODUCTION OF DOCUMENTS

### I.    DEFINITIONS

1.    "Architectural Products" means any head wall unit which is designed for use in any Patient Care Setting (as defined below) and/or any in-room furniture used in any Patient Care Setting, such as overbed tables, end tables, chairs, cabinets, or any other furniture used in Patient Care Settings.

2.    "Group Purchasing Organization" ("GPO") means any organization as well as their affiliated and/or related organizations, owners, members, and shareholders, that negotiates pricing and/or other terms and enters into agreements with manufacturers and/or distributors of medical related products and services.  Such Group Purchasing Organizations shall include, not by way of limitation, Novation, Premier, Premier Purchasing Partners, MedAssets, Amerinet, Healthtrust, Broadlane, Consorta, HealthCare Purchasing Partners International, Innovatix, AllHealth, Hospital Purchasing Service, Yankee Alliance, National Capital Area Shared Services, GNYHA Ventures, NJHA Corporate Services, Shared Services Healthcare, Coordinated Healthcare Services, Health Affiliated Services/Hendrick Medical Center, Mid-Atlantic Group Network of Shared Services and National Purchasing Alliance.

3.    "Hill-Rom" means Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., their predecessors, including but not limited to, Support Systems International, Inc. ("SSI"), Mediq, or Mediq/PRN, or successors in interest, any parent, subsidiary, affiliate and division, and any present or former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 1**

4.    "Hospital Bed" means any bed manufactured, marketed, sold, leased or rented for use in any Patient Care Setting, and all beds which compete with or are reasonably close substitutes for such beds.

5.    "Patient Care Setting" shall mean all locations which use Hospital Beds (as defined above) or Specialty Beds (as defined below), including but not limited to, acute care hospitals, subacute care hospitals, rehabilitation facilities, outpatient clinics, surgery centers, long-term care facilities, home care, or any other alternative care location.

6.    "Specialty Beds" shall mean all therapeutic support surfaces, including but not limited to, air suspension, lateral rotation air suspension, rotating tables, air fluidized, bariatric, pediatric, neo-natal, and all other beds or therapeutic support surfaces specifically designed for the prevention and/or treatment of specific medical conditions including but not limited to, burns, pressure sores, pulmonary complications or pain management, that are sold, leased or rented for use in any Patient Care Setting, and all therapeutic support surfaces which compete with or are reasonably close substitutes for such surfaces.

7.    "Documents" means any printed, typed, written, handwritten, recorded, taped, computer-generated or stored, electronic, graphic or other tangible matter from any source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original and any non-identical copy of any and all such matter (whether different from the original because of notes made or attached to such copy or otherwise). "Documents" include, but are not limited to, correspondence, letters, computer files, electronically-stored data such as documents stored on network drives, hard drives, CD-ROM, optical discs, magnetic tape, floppy discs, electronic mail files, both current and deleted, telegrams, weekly reports, notes, reports, audio and video tapes, service reports, activity reports,

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 2**

expense reports, budgets, press releases, periodicals, newsletters, notations, papers, memoranda, interoffice communications, handbooks, summary plan descriptions, agreements, contracts, books, records, minutes of meetings, memorials of any type of personal or telephone conversations, meetings or conferences, reports, evaluations, receipts, claim forms, bills, statements, affidavits, diaries, calendars, desk pads, appointment books, transcripts, worksheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, records of payments, disbursements and reimbursements, and all documents underlying, supporting or used in the preparation of any part of any other documents. "Documents" include, but are not limited to, carbon copies or blind carbon copies of documents sent to, or in Your possession, custody or control, where the correspondence or other document was addressed to some other person.

        8.    "Refer or relate to" means referring to, reflecting, or related in any manner logically, factually, indirectly or directly to the matters discussed.

        9.    "You" or "Your" means Darrell K. Rigby and/or any agents, representatives, or other persons acting on your behalf.

II.    INSTRUCTIONS

        1.    All documents within Your possession, custody or control shall be produced. A document is deemed to be in Your control if You have the right to secure the document, or a copy thereof, from another person having actual possession thereof. If You know or believe that there may be, or were, documents otherwise meeting the terms of a particular request, but which are not within Your custody, possession or control, or which no longer exist, please so state in Your response to that particular request.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 3**

2.      Any documents responsive to this request which, nonetheless, are not produced by a reason or a claim of privilege, work product, or for any other reason, shall be identified in writing by (1) date; (2) author; (3) recipient; (4) general subject matter; (5) identity of person or persons to whom the contents of the document have already been revealed; (6) the identity of the person or entity now in possession or control of the document; and (7) the basis upon which it is being withheld.

3.      Whenever appropriate, the singular form of a word should be interpreted in the plural and vice versa as to encompass all potentially responsive information.

4.      Whenever appropriate, the conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa as to encompass all potentially responsive information.

5.      Unless otherwise indicated, You should respond to these document requests for the period of January 1, 1985 through the present. However, if a document prepared or dated prior to January 1, 1985, is necessary for a complete or correct understanding of any document otherwise covered by these requests, such earlier documents shall be produced as well. If a document is undated or incorrectly dated, and the time of its preparation cannot be determined or is in doubt, the document should be produced if otherwise responsive to this request.

III.    DOCUMENTS TO BE PRODUCED

1.      All documents relating to Hill-Rom, including documents concerning its competitive strategies and tactics, its sales and marketing practices, its pricing and discount practices, and the quality of its Hospital Beds, Specialty Beds, and/or Architectural Products.

2.      All documents relating to the distribution channels for Hill-Rom's Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to Hill-Rom's

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 4**

relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

    3.    All documents relating to the competitive strategies and tactics, sales and marketing practices, pricing and discount practices, and the quality of the products of any other manufacturer or vendor of Hospital Beds, Specialty Beds, and/or Architectural Products.

    4.    All documents relating to the distribution channels of other manufacturers or vendors of Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to their relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

    5.    All documents collected and/or created in preparation of any project for which you and/or Bain & Company were retained by Hill-Rom, including all notes and summaries of interviews, all documentation of any communications related thereto, all documents collected whether or not ultimately referenced, and all drafts and final versions of any reports and/or presentation materials prepared for Hill-Rom.

    6.    All documents received by you from Hill-Rom.

    7.    All documents relating to any analysis of, definition of , or reference to the market(s) for Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to any analysis of prices for such products, demand by customers for such products, sales forecasts for such products, description of the various patient care settings in which such products are used and the needs and/or demands for such products in each setting, the identification of manufacturers of these products, and/or the market share of any manufacturer of such products.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 5**

8.    All documents relating to the actual or potential entry into, or exit from, a market involving the sale, lease, or rental of Hospital Beds, Specialty Beds, or Architectural Products of a current or potential manufacturer and/or vendor of such products, including documents relating to the impact of any competitive practices on such entry into or exit from such markets.

9.    All documents relating to any barriers to entry in any market for Hospital Beds, Specialty Beds, or Architectural Products.

10.    All documents identifying the person(s) who performed work related to any project(s) for which you were retained by Hill-Rom.

11.    All documents reflecting your document retention policies and/or practices.

12.    All documents relating to Frederick W. Rockwood, including relating to your relationship with him.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS -- Page 6**

Akin, Gump, Strauss, Hauer & Feld, L.L.P.

| | | Check #: | 154196 |
|---|---|---|---|
| Vendor ID: 54304 | DARRELL RIGBY | Check Date: | 08/23/2005 |

| Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|
| DA082305 | 8/23/2005 | 43 07 |
| | Total | 43.07 |

DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.

VOID    VOID    VOID    VOID    VOID

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
DISBURSEMENT ACCOUNT
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
1333 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20036
(877) 395-2546

Citibank, Delaware
One Penns Way, New Castle DE 19720

62-20/311

Check No.    154196

DATE  08/23/2005

AMOUNT OF CHECK

$    ********43.07

FORTY-THREE AND 07/100 DOLLARS

PAY

VOID AFTER 6 MONTHS

TO THE
ORDER OF

DARRELL RIGBY
131 DARTMOUTH ST
C/O BAIN & COMPANY
BOSTON, MA 02116

AUTHORIZED SIGNATURE

⑆154196⑆ ⑈031100209⑇ 386416 12⑆

# EXHIBIT C

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

SPARTANBURG REGIONAL HEALTHCARE SYSTEM,
ON BEHALF OF ITSELF AND OTHERS SIMILARLY
SITUATED,

<div style="margin-left:2em">v.</div>

HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC.,
AND HILL-ROM COMPANY, INC.,

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER: Civil Action 7:03-2141-26*
*Pending in the District Court for the District of South Carolina,
Spartanburg Division

TO: Darrell K. Rigby
106 Winn Street
Belmont, MA 02478

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date and time specified below to testify in the above case.

| PLACE OF DEPOSITION<br>Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | DATE AND TIME<br>09/27/2005<br>9:30 a.m. |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects): See the Attached Exhibit 1.

| PLACE    Lowrie, Lando & Anastasi, LLP<br>Riverfront Office Park<br>One Main Street, 11th Floor<br>Cambridge, MA 02142 | DATE AND TIME<br>09/14/2005 |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*    ATTORNEY FOR THE PLAINTIFF | 9-29-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Chad McGowan
McGowan, Hood, Felder & Johnson
1539 Healthcare Drive
Rock Hill, SC 29372  (803) 327-7800

(See Rule 45 Federal Rules of Civil Procedure Parts C & D on Reverse)

7134752v1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Spartanburg Regional Healthcare System,   )
on behalf of itself and other similarly   )
situated,                                  )
                                           )
          Plaintiff   )
                                           )
          vs.         )     C.A. No. 7:03-2141-26
                                           )
Hillenbrand Industries, Inc., Hill-Rom, Inc.  )
and Hill-Rom Company, Inc.,                )
                                           )
          Defendants.  )

### NOTICE OF SUBPOENA

YOU WILL PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30, 34(c) and 45, Spartanburg Regional Healthcare System, by its counsel, will serve the attached subpoena for testimony and the production of documents upon Darrell Rigby this week.

      Respectfully submitted, August 0\ , 2005.

                        John G. Felder, Jr.
                        Fed. ID #6441
                        McGOWAN, HOOD, FELDER & JOHNSON
                        3710 Landmark Drive, Suite 114
                        Columbia, South Carolina 29204
                        Telephone:(803) 779-0100
                        Facsimile: (803) 787-0750
                        jfelder@mcgowanhood.com

                        AND

                        Chad McGowan
                        Fed. ID #6620
                        McGOWAN, HOOD, FELDER & JOHNSON
                        1539 Health Care Drive
                        Rock Hill, South Carolina 29732
                        Telephone:(803) 327-7800
                        Facsimile: (803) 328-5656
                        cmcgowan@mcgowanhood.com

                        AND

John G. Felder, Sr.
Fed. ID #784
FELDER & McGEE, LLP
Post Office Box 346
St. Matthews, South Carolina 29135
Telephone:(803) 874-2010
Facsimile: (803) 655-7167
johnfelder@sc.rr.com

AND

Richard L. Wyatt, Jr., Admitted *Pro Hac Vice*
Todd M. Stenerson, Admitted *Pro Hac Vice*
Michael L. Converse, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:(202) 887-4000
Facsimile: (202) 887-4288
tstenerson@akingump.com

AND

R. Laurence Macon, Admitted *Pro Hac Vice*
Karen L. Gulde, Admitted *Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD, LLP
300 Convent Street, Suite 1500
San Antonio, Texas 78205-3732
Telephone:(210) 281-7000
Facsimile: (210) 224-2035
kgulde@akingump.com

AND

Gordon Ball
Admitted *Pro Hac Vice*
Thomas S. Scott, Jr.
BALL & SCOTT
550 West Main Street, Suite 601
Knoxville, Tennessee 37902
Telephone:(865) 525-7028
Facsimile: (865) 525-4679
gball@ballandscott.com

ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Brandy Lee, paralegal at the firm of McGowan, Hood, Felder & Johnson, Attorneys for the Plaintiff in this action, did serve Plaintiff's Notice of Subpoena via Electronic Mail to the following counsel of record, and by First Class Mail to J. Theodore Gentry only, on August 24, 2005:

> J. Theodore Gentry
> Frank S. Holleman, III
> WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
> 44 E. Camperdown Way
> Post Office Box 728
> Greenville, SC 29602-0728
> tgentry@wyche.com
> fholleman@wyche.com

ATTORNEYS FOR HILLENBRAND INDUSTRIES, INC., HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

> Donald L. Flexner
> Richard Feinstein
> Kevin R. Anthony
> BOIES, SCHILLER & FLEXNER, LLP
> 5201 Wisconsin Avenue, NW, Suite 800
> Washington, DC 20015
> dflexner@bsflp.com
> rfeinstein@bsflp.com
> kanthony@bsflp.com

> Richard B. Drubel
> Kimberly Schultz
> Matthew Henken
> BOIES, SCHILLER & FLENXER, LLP
> 26 South Main Street
> Hanover, NH 03755
> rdrubel@bsflp.com
> kschultz@bsflp.com
> mhenken@bsflp.com

> Sherab Posel
> BOIES, SCHILLER & FLEXNER, LLP
> 333 Main Street
> Armonk, New York 10501
> sposel@bsflp.com

OF COUNSEL FOR HILLENBRAND INDUSTRIES, INC.,
HILL-ROM, INC. AND HILL-ROM COMPANY, INC.

Brandy Lee
McGowan, Hood, Felder & Johnson

## EXHIBIT 1

## SUBPOENA FOR PRODUCTION OF DOCUMENTS

### I.    DEFINITIONS

1.    "Architectural Products" means any head wall unit which is designed for use in any Patient Care Setting (as defined below) and/or any in-room furniture used in any Patient Care Setting, such as overbed tables, end tables, chairs, cabinets, or any other furniture used in Patient Care Settings.

2.    "Group Purchasing Organization" ("GPO") means any organization as well as their affiliated and/or related organizations, owners, members, and shareholders, that negotiates pricing and/or other terms and enters into agreements with manufacturers and/or distributors of medical related products and services. Such Group Purchasing Organizations shall include, not by way of limitation, Novation, Premier, Premier Purchasing Partners, MedAssets, Amerinet, Healthtrust, Broadlane, Consorta, HealthCare Purchasing Partners International, Innovatix, AllHealth, Hospital Purchasing Service, Yankee Alliance, National Capital Area Shared Services, GNYHA Ventures, NJHA Corporate Services, Shared Services Healthcare, Coordinated Healthcare Services, Health Affiliated Services/Hendrick Medical Center, Mid-Atlantic Group Network of Shared Services and National Purchasing Alliance.

3.    "Hill-Rom" means Hillenbrand Industries, Inc., Hill-Rom, Inc., and Hill-Rom Company, Inc., their predecessors, including but not limited to, Support Systems International, Inc. ("SSI"), Mediq, or Mediq/PRN, or successors in interest, any parent, subsidiary, affiliate and division, and any present or former officers, directors, agents, salesmen, representatives, employees or other persons acting on their behalf.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS** – Page 1

4. "Hospital Bed" means any bed manufactured, marketed, sold, leased or rented for use in any Patient Care Setting, and all beds which compete with or are reasonably close substitutes for such beds.

5. "Patient Care Setting" shall mean all locations which use Hospital Beds (as defined above) or Specialty Beds (as defined below), including but not limited to, acute care hospitals, subacute care hospitals, rehabilitation facilities, outpatient clinics, surgery centers, long-term care facilities, home care, or any other alternative care location.

6. "Specialty Beds" shall mean all therapeutic support surfaces, including but not limited to, air suspension, lateral rotation air suspension, rotating tables, air fluidized, bariatric, pediatric, neo-natal, and all other beds or therapeutic support surfaces specifically designed for the prevention and/or treatment of specific medical conditions including but not limited to, burns, pressure sores, pulmonary complications or pain management, that are sold, leased or rented for use in any Patient Care Setting, and all therapeutic support surfaces which compete with or are reasonably close substitutes for such surfaces.

7. "Documents" means any printed, typed, written, handwritten, recorded, taped, computer-generated or stored, electronic, graphic or other tangible matter from any source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original and any non-identical copy of any and all such matter (whether different from the original because of notes made or attached to such copy or otherwise). "Documents" include, but are not limited to, correspondence, letters, computer files, electronically-stored data such as documents stored on network drives, hard drives, CD-ROM, optical discs, magnetic tape, floppy discs, electronic mail files, both current and deleted, telegrams, weekly reports, notes, reports, audio and video tapes, service reports, activity reports,

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 2**

expense reports, budgets, press releases, periodicals, newsletters, notations, papers, memoranda, interoffice communications, handbooks, summary plan descriptions, agreements, contracts, books, records, minutes of meetings, memorials of any type of personal or telephone conversations, meetings or conferences, reports, evaluations, receipts, claim forms, bills, statements, affidavits, diaries, calendars, desk pads, appointment books, transcripts, worksheets, summaries, lists, tabulations, digests, canceled or uncanceled checks or drafts, vouchers, charge slips, records of payments, disbursements and reimbursements, and all documents underlying, supporting or used in the preparation of any part of any other documents. "Documents" include, but are not limited to, carbon copies or blind carbon copies of documents sent to, or in Your possession, custody or control, where the correspondence or other document was addressed to some other person.

8.    "Refer or relate to" means referring to, reflecting, or related in any manner logically, factually, indirectly or directly to the matters discussed.

9.    "You" or "Your" means Darrell K. Rigby and/or any agents, representatives, or other persons acting on your behalf.

II.    INSTRUCTIONS

1.    All documents within Your possession, custody or control shall be produced. A document is deemed to be in Your control if You have the right to secure the document, or a copy thereof, from another person having actual possession thereof. If You know or believe that there may be, or were, documents otherwise meeting the terms of a particular request, but which are not within Your custody, possession or control, or which no longer exist, please so state in Your response to that particular request.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 3**

2.      Any documents responsive to this request which, nonetheless, are not produced by a reason or a claim of privilege, work product, or for any other reason, shall be identified in writing by (1) date; (2) author; (3) recipient; (4) general subject matter; (5) identity of person or persons to whom the contents of the document have already been revealed; (6) the identity of the person or entity now in possession or control of the document; and (7) the basis upon which it is being withheld.

3.      Whenever appropriate, the singular form of a word should be interpreted in the plural and vice versa as to encompass all potentially responsive information.

4.      Whenever appropriate, the conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa as to encompass all potentially responsive information.

5.      Unless otherwise indicated, You should respond to these document requests for the period of January 1, 1985 through the present. However, if a document prepared or dated prior to January 1, 1985, is necessary for a complete or correct understanding of any document otherwise covered by these requests, such earlier documents shall be produced as well. If a document is undated or incorrectly dated, and the time of its preparation cannot be determined or is in doubt, the document should be produced if otherwise responsive to this request.

III.    DOCUMENTS TO BE PRODUCED

1.      All documents relating to Hill-Rom, including documents concerning its competitive strategies and tactics, its sales and marketing practices, its pricing and discount practices, and the quality of its Hospital Beds, Specialty Beds, and/or Architectural Products.

2.      All documents relating to the distribution channels for Hill-Rom's Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to Hill-Rom's

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 4**

relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

3.     All documents relating to the competitive strategies and tactics, sales and marketing practices, pricing and discount practices, and the quality of the products of any other manufacturer or vendor of Hospital Beds, Specialty Beds, and/or Architectural Products.

4.     All documents relating to the distribution channels of other manufacturers or vendors of Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to their relationships with GPOs, independent delivery networks ("IDNs"), and/or other national accounts.

5.     All documents collected and/or created in preparation of any project for which you and/or Bain & Company were retained by Hill-Rom, including all notes and summaries of interviews, all documentation of any communications related thereto, all documents collected whether or not ultimately referenced, and all drafts and final versions of any reports and/or presentation materials prepared for Hill-Rom.

6.     All documents received by you from Hill-Rom.

7.     All documents relating to any analysis of, definition of , or reference to the market(s) for Hospital Beds, Specialty Beds, and/or Architectural Products, including documents relating to any analysis of prices for such products, demand by customers for such products, sales forecasts for such products, description of the various patient care settings in which such products are used and the needs and/or demands for such products in each setting, the identification of manufacturers of these products, and/or the market share of any manufacturer of such products.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS – Page 5**

8. All documents relating to the actual or potential entry into, or exit from, a market involving the sale, lease, or rental of Hospital Beds, Specialty Beds, or Architectural Products of a current or potential manufacturer and/or vendor of such products, including documents relating to the impact of any competitive practices on such entry into or exit from such markets.

9. All documents relating to any barriers to entry in any market for Hospital Beds, Specialty Beds, or Architectural Products.

10. All documents identifying the person(s) who performed work related to any project(s) for which you were retained by Hill-Rom.

11. All documents reflecting your document retention policies and/or practices.

12. All documents relating to Frederick W. Rockwood, including relating to your relationship with him.

**EXHIBIT 1 – SUBPOENA FOR PRODUCTION OF DOCUMENTS** – Page 6

DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.

VOID VOID VOID VOID

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
DISBURSEMENT ACCOUNT
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
1333 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC  20036
(877) 395-2546

Citibank, Delaware
One Penns Way  New Castle DE  19720

Check No.    154197

62-20/311

DATE   08/23/2005

AMOUNT OF CHECK

$    ********43.07

*FORTY-THREE AND 07/100 DOLLARS*

PAY

VOID AFTER 6 MONTHS

TO THE
ORDER OF

DARRELL RIGBY
106 WINN ST
BELMONT, MA  02478

AUTHORIZED SIGNATURE

⑆154197⑆ ⑈031100209⑇ 386416512⑆

# EXHIBIT D

# Join Bain:  Frequently Asked Questions

## Bain overview

Bain is distinguished by our bias for action. A commitment to analytic excellence is a given - but it's not all that's called for. We help create clear, competitive, practical strategies - strategies that are true blueprints for performance. This transition from theory to reality is not always an easy one, but for us, it's the bottom line. Every strategy comes down to what the client does differently at 8:00 am on Monday morning. Our consultants operate with a working managerial mindset: our product is not just impressive analysis, but sustainable solutions. We work with our clients to come up with breakthrough - and implementable - strategies: a breakthrough strategy is not breakthrough at all if it cannot be implemented in the client organization. Since our founding over 30 years ago, Bain has redefined the boundaries of the management consulting industry by:

- Rejecting the "old" advice model to focus on strategy and implementation
- Founding Bain Capital, one of the world's most successful private equity firms
- Accepting equity in lieu of fees to align our incentives with client results
- Sharing our client, incubated and private capital co-investments among our professional staff
- Founding The Bridgespan Group, the first major nonprofit strategy consulting firm

**How large is Bain?**
We have over 3,000 employees working in 31 offices around the world.

**How fast is Bain growing?**
Almost every Bain office across the globe experienced substantial growth over the past five years. Overall growth in the last five years has been in the double digits.

**How does business mix differ according to office location?**
There is a wide variety of work in all offices, and the mix tends to change over time. Each office focuses on developing a core client base in its local/regional area. This may, at times, skew an office toward certain industries more representative of the region (e.g. financial services in the New York office, technology in the San Francisco office). Our 2000 worldwide industry mix was:

- Technology & Telecom
- Financial Services
- Consumer Products
- Services & Retail
- Transportation & Defense
- Industrial Products & Utilities
- LBO/Private Equity
- Healthcare

**How broad is our client mix?**
Bain's client mix is very diverse. Compared to our primary competitors, we work with a greater percentage of small and medium-sized and private equity companies, which provides our consulting staff with diverse opportunities for learning.

**What type of work is done in the Private Equity Group?**
The Private Equity Group works predominantly on due diligence with private equity and leveraged buyout (LBO) firms. The work is mainly strategy-focused, similar to the work across Bain. Cases are approximately four to six weeks in duration as opposed to four to six months for a typical Bain case. Given the intense nature and shorter duration of assignments in the Private Equity Group, consultants dedicate 100% of their time to one client at a time.

**Does every office have a Private Equity Group?**
No. However, all offices do some work in this area.

**Does Bain have plans to open any new offices?**
No. We recently opened the Dusseldorf and Shanghai offices.

**What association does Bain Capital have with Bain & Company?**
Bain Capital was formed as a separate entity in 1984 by Bill Bain and former Bain consultants to further leverage Bain results creation capability. Bain Capital is a venture capital company; it is not a sister company nor a division of Bain. It is a completely separate company with no sharing of management or information. What it shares is a common approach to the challenges of our clients to deliver extraordinary results.

**What is the compensation structure like in consulting?**
Compensation is competitive with other top tier strategy firms. The compensation package includes base salary, performance bonuses and an equity compensation award. We also provide new members of the consulting staff with signing bonuses and relocation expense reimbursement.

ᐱ back to top

## Training and professional development

**What is Bain's approach to consulting?**
Bain?s focus is providing results to our clients. To achieve results, we take a very practical approach on each of our engagements. First, we provide **practical** insights ? not theoretical insights ? that are integrated across the organization. Second, we provide **customized** recommendations, and we **collaborate** with our clients at all levels to come up with the right answers. Third, we focus on **implementation**. To achieve results, one cannot focus solely on the strategy. We work alongside our clients in many cases to implement our work. The overriding objective of our work is to **drive change within an organization and achieve results**.

In order to provide our people with the skills to help make companies more valuable, we believe it is important for consultants to be exposed to a variety of business problems in companies of different sizes and in a broad range of industries. We find that the learning one receives in one industry can often be applied to other industries. As such, for the first four to five years, our people tend not to focus in a particular industry. However, if an individual is passionate about a particular industry, we work with that person from an early stage to expose that individual to as many assignments in that area. At Bain, our people can pursue their passions.

**What introductory and ongoing training programs does Bain offer?**
Formal training at Bain & Company is conducted on worldwide, regional, and local levels. On the corporate level, flagship programs grounded in Bain's "one firm" principle bring together members of the worldwide Bain community at key moments in their professional development.

Worldwide programs for Consultants include:

- Training for new Consultants and for 18-month Consultants
- Regional programs that target offices in the Asia-Pacific Rim, North America, or Europe. A typical regional curriculum may focus on analytical tools (e.g., valuation strategies) and case team management techniques, such as workplanning
- Other programs, targeting skills unique to a specific location - presentation skills coaching and business research strategies, for example - are conducted by and for each local office

Worldwide programs for Associate Consultants include:

- Associate Consultant training, an intensive two-week training course with all new Associate Consultants across the Bain network
- Regional programs for Associate Consultants that target offices in the Asia-Pacific Rim, North America, or Europe

Major training is conducted every 12-18 months as it is deemed essential to building the firm's human assets. Faculty for training programs is drawn primarily from Bain's own strategy and industry experts.

Participating in training programs as a faculty member is considered critical to a consultant's professional development.

### How do you get assigned to projects?
A staffing coordinator works closely with you to help match your interests with the staffing needs of the organization. Your ability to work on specific clients or with specific industries will depend on availability and your personal development needs. Consultants are encouraged to experience a broad spectrum of project types (e.g. corporate strategy, mergers and acquisitions) across a broad range of industries. If a consultant wants to develop a deeper experience in a given practice area, then the staffing coordinator will work to give the consultant a mix of opportunities both within the specific area of expertise and outside the area for breadth.

### What type of performance evaluation system does Bain use?
Performance evaluations are conducted every six months. As part of this process, you will receive feedback from the Managers/Partners on your team who have worked closely with you on a particular client situation. Each member of the consulting staff then selects a consensus reviewer, who consolidates all feedback received by people with whom you have worked and delivers the performance evaluation. In addition, Consultants who move into the pre-manager role of Case Team Leader, responsible for leading the case, receive monthly case team surveys, which provide ongoing feedback for areas of improvement. Finally, we encourage all members of the consultant staff at all levels to proactively solicit feedback from the Managers with whom they are working. This informal yet constructive feedback is an important component of each Consultant's professional development needs.

### Are there opportunities to transfer to other offices?
The professional development of the consulting staff is further enhanced by a managed process of cross-office transfers. As business needs change, opportunities exist for consulting staff members to transfer either temporarily or permanently to other Bain offices. Temporary transfers typically last for six months. In addition to providing professional development for the Consultant, transfers are one of many ways that Bain facilitates knowledge-sharing across offices. Transfers require language skills sufficient to work effectively in the new office.

### What other Professional Development opportunities are available at Bain?
Bain provides several other special learning opportunities. Consultants can spend six months in Bain's Private Equity Group, which focuses on LBO cases. In addition, we encourage externships at The Bridgespan Group, an innovative nonprofit firm launched by Bain to bring strategic capability to the nonprofit sector. We support and actively encourage our consultants to seek out opportunities for an externship at a client or another company which may be of interest to that consultant.

### Does Bain have a mentor program for consulting staff?
Yes. Members of the consulting staff are responsible for nominating a mentor from their office, with whom they meet to discuss professional development issues. Mentors are individuals who are senior to the Consultant nominating the mentor and should be someone with whom the Consultant feels comfortable discussing a range of professional issues.

### Where do Bain Alumni work?
We hire people who are entrepreneurial, operationally oriented, and practical (vs. academic and theoretical). We train people not only in business concepts and theories, but also in how to make change happen in an organization. People who leave Bain have amazing opportunities available: some pursue positions at Fortune 500 firms, others work in senior positions at small to medium size firms and others take leadership positions at private equity firms.

⌃ back to top

## Lifestyle issues

### How much do Bain consultants travel?
Bain?s focus is on doing what it takes to get client results. In planning client visits, as in all other aspects of our work, Bain tries to serve the client in the best way possible. As a result, travel demands vary considerably by office. Depending on where you are in the Bain system, you could be traveling very little

or pretty predictably on a weekly basis depending on the client situation. Strategy work may require relatively lower travel than, for example, change management cases in an intensive phase.

**Do all Bain consultants work on two cases at a time?**
There is not one primary staffing approach within Bain ? staffing requirements vary by office and by region. Bain?s focus is on doing what it takes to get client results. As a result, staffing approaches need to be flexible within offices and regions to accommodate the needs of our clients. Each office makes the decision about whether to staff consultants on two cases or on one case, based on the needs of the clients it is serving.

**How many hours does a consultant typically work?**
Consultants are judged by their results and the value they provide to their clients, not by ?face time? or the number of hours they work. Our focus is on doing what it takes to get client results. Given this, there is no typical work week. There may be some weeks where work load is higher given a client presentation or a particularly demanding phase of our work. Work style is driven by client need, not rigid protocol.

**Is it possible for consultants to work part-time?** For consultants who have been with Bain more than one year, there is an option to work part-time (60%). Many members of the Bain staff have chosen to go part-time for part of their career to help manage the balance between their business and family life. Most of Bain?s women managers and vice presidents have been part-time at some point in their career. In addition, many men are also taking advantage of this option.

⌃ back to top

## Recruiting process: full-time hires

**What is the best way to submit an application? What should I include when applying?**
If you are a college or university student, please follow the recruiting process in place at your college or university. Learn more on your college/university page in the at your college/university section. If your college or university is not listed, then please apply using the online application.

If you are applying from an MBA or other graduate program, please use the online application. When applying online, you will be asked to include your resume, cover letter and geographical preference(s). You do not need to submit a hard copy of your materials if you are applying online.

**I have submitted my application/resume. What is the next step?**
After your application (including resume, cover letter, and possibly transcript) is received, it is reviewed by a recruiting committee and compared to all other submissions for your desired office and position. Based on the qualifications of candidates and the specific office's hiring needs, a select number of applicants are extended an invitation to interview. If you have submitted your application online, you will be contacted if invited to interview.

**Do I need to apply to each office?**
No. Submit your application to the office for which you would most like to be considered, including other offices you may be interested in. Your application will then be forwarded to the other office(s) of your choice.

**Who is the contact person for the recruiting process?**
The recruiting coordinators are your contact people. You can find recruiting contact information for each of our offices within the People & Places section. Please note that there are coordinators for both the Associate Consultant (for college/university students) and Consultant (for MBA students) positions.

**Can the recruiting process be expedited if I already have an exploding offer?**
In certain circumstances, the recruiting process can be modified to accommodate the needs of a candidate. This is typically the exception and not the rule. If you have been selected to interview, accommodations may be made to interview earlier in the recruiting cycle. Contact the office recruiting coordinator if and when this situation occurs.

**How many Associate Consultant/Consultant hires are you looking to make?**

Hiring guidelines are generated by each office based upon the anticipated business needs for the coming year, current size of the consulting staff and office growth plans. The guidelines will be office-specific and change annually. One thing to note, these are simply guidelines that may increase or decrease depending upon the quality of candidates applying.

**What is Bain looking for in a candidate?**
We are looking for the future leaders who will continue our successful track record. Our ideal candidate has proven leadership qualities such as:

- Intellectual leadership demonstrated in the classroom and achievement tests
- Social/professional leadership demonstrated through roles on campus and in the community
- Business leadership demonstrated by achievements in the workplace

Additionally, we are looking for candidates that exhibit a high degree of enthusiasm and motivation for learning and solving difficult business issues. Finally, and equally important, we are looking for people who would enjoy and thrive in the Bain culture.

**If I am interested in applying for a position with The Bridgespan Group or Bain Capital, should I apply with Bain for positions at these firms?**
No. If you are interested in opportunities with The Bridgespan Group or Bain Capital, please contact these firms directly and follow the appropriate process established by these firms.

⌂ back to top

## Recruiting process: summer hires

**What is the recruiting process for interns?**
Each Bain office has its own requirements for internship candidates. Typically, only students between their third and fourth year of college/university study and first year MBA students are considered for summer intern positions.

- MBA students apply for Summer Associate internships
- College/university students apply for Associate Consultant internships
- All other candidates should apply for full-time positions

Usually, the recruiting season for interns is in the winter/early spring (beginning of second semester or session for Consultant candidates and mid-semester or late third quarter for Associate Consultant candidates). You should refer to your college/university page or the appropriate local office site for specific dates. Internship interviews follow the same process as full-time hire candidates with two rounds of case interviews.

**What is the best way to submit an application? What should I include when applying?**
If you are a college/university student, please follow the recruiting process in place at your college or university. Learn more on your college/university page in the at your college/university section. If your college or university is not listed, then please apply using the online application. If you are applying from an MBA or other graduate program, please use the online application. When applying online, you will be asked to include your resume, cover letter and geographical preference. You do not need to submit hard copies of your materials if you are applying online.

**Are internships paid or volunteer?**
Our internship program is typically a 10-week, paid program.

- MBA students apply for Summer Associate internships
- College/university students apply for Associate Consultant internships

Interns work on cases alongside members of the full-time consulting staff and are expected and encouraged to fulfill the same expectations.

**What is Bain looking for in a candidate?**
We are looking for the future leaders who will continue our successful track record. Our ideal candidate has proven leadership qualities such as:

- Intellectual leadership demonstrated in the classroom and achievement tests
- Social/professional leadership demonstrated through roles on campus and in the community
- Business leadership demonstrated by achievements in the workplace

Additionally, we are looking for candidates that exhibit a high degree of enthusiasm and motivation for learning and solving difficult business issues. Finally, and equally important, we are looking for people who would enjoy and thrive in the Bain culture.

**If I am interested in applying for a position with The Bridgespan Group or Bain Capital, should I apply with Bain for positions at these firms?**
No. If you are interested in opportunities with The Bridgespan Group or Bain Capital, please contact these firms directly and follow the appropriate process established by these firms.

ᴀ back to top

# EXHIBIT E

# AKIN GUMP
# STRAUSS HAUER & FELD LLP

Attorneys at Law

PAMELA ST. JOHN
210 281.7155/fax: 210 224-2035
pstjohn@akingump com

September 23, 2003

VIA FACSIMILE AND REGULAR MAIL

Amanda Metts
McDermott, Will & Emery
28 State Street
Boston, MA 02109-1775

Re: Kinetic Concepts, Inc., et al. v. Hillenbrand Industries, Inc., et al.; Civil Action No. SA-95-CA-0755-FB

Dear Ms. Metts:

We received your letter regarding documents produced by Bain & Company pursuant to subpoena issued in the above-captioned matter. This matter has settled. Upon closing the file, we corresponded with Stephany Phelps regarding these documents and were asked to return them to Bain and Company (see attached letter dated 1/31/2003). From our perspective, there is no obligation to retain these documents

Sincerely,

Pamela St John

Pamela St. John

Enclosure

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
IN RE SUBPOENA:                     )
                                    )
SPARTANBURG REGIONAL HEALTHCARE     )
SYSTEM, on behalf of itself and others )
similarly situated,                 )          Civil Action No.
                                    )          1:05-mc-10324-RWZ
            Plaintiff,              )
v.                                  )
                                    )
HILLENBRAND INDUSTRIES, INC.,       )
HILL-ROM, INC., and                 )
HILL-ROM COMPANY, INC.,             )
                                    )
            Defendants.             )
_____)
```

## AFFIDAVIT OF PAUL ROSENBERG

I, Paul Rosenberg, hereby depose and state as follows:

1.      I am a Vice President at Bain & Company ("Bain"), and have held that position since July 2000.  In the course of my employment for Bain, I have worked on several engagements for Hillenbrand Industries, Inc. ("Hillenbrand").

2.      Bain's work for Hillenbrand began in approximately May 1994.  Bain's most recent work for Hillenbrand ended in March 2002.  I am generally familiar with Bain's work for Hillenbrand.

3.      Bain Capital, LLC ("Bain Capital") is a venture capital company completely separate from Bain.  Bain and Bain Capital have no sharing of management or information.

4.    During my involvement with Bain's work for Hillenbrand, Bain Capital did not assist or
participate in any way with Bain's work for Hillenbrand. To my knowledge, Bain Capital has
not been involved in or assisted in any way with Bain's work for Hillenbrand at any time.

Signed under the pains and penalties of perjury this 12 day of September, 2005.

Paul Rosenberg
Vice President
Bain & Company, Inc.

CHI99 4524706-1 054168 0065